IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SH 130 CONCESSION COMPANY, LLC, | § | CASE NO. 16-10262 |
| ZACHRY TOLL ROAD – 56 LP | § | CASE NO. 16-10263 |
| CINTRA TX 56 LLC | § | CASE NO. 16-10264 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| 10800 N US 183 HWY | § | *JOINT ADMINISTRATION* |
| BUDA, TEXAS 78610-9460 | § | *REQUESTED* |

**DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER AUTHORIZING JOINT ADMINISTRATION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

SH 130 Concession Company, LLC (the "Concessionaire") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors" and each, a "Debtor"), submit their Motion for Entry of an Order Authorizing Joint Administration (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 1015 of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules"). In support thereof, the Debtors respectfully represent:[1]

---

[1] A description of the Debtors' businesses and the reasons for commencing these chapter 11 cases is set forth in the *Declaration of Paul Harris in Support of the Debtor's Chapter 11 Petitions and First Day Motions*, sworn to on March 2, 2016 (the "Harris Declaration"), which is incorporated herein by reference. This Motion is supported by the Harris Declaration.

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On the date hereof (the "Petition Date"), each of the Debtors commenced cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

3.  On June 28, 2006, the Debtors' investors reached a $1.3 billion agreement with the State of Texas to finance, develop, design, construct, operate, and maintain segments five and six (the "Tollway") of Texas State Highway 130 ("SH 130"). In 2007, the Debtors were formed to implement these plans with respect to the Tollway in partnership with the Texas Department of Transportation ("TxDOT"). SH 130 is a component of the Central Texas Turnpike System, and runs in a 91-mile corridor commencing north and east of Austin and ending east of San Antonio. The Tollway portion of SH 130 forms a 41-mile link from Mustang Ridge, Texas through Travis, Caldwell, and Guadalupe counties to Interstate 10 near Seguin, Texas.

4.  Construction of the Tollway began in April 2009, and created more than 3,600 jobs and engaged more than 150 Texas-based companies. The Tollway opened to traffic on October 24, 2012, and provides a fast and convenient highway for commuters and long distance travelers. The posted speed limit on the Tollway's main lanes is 85 miles per hour – the highest

2

posted speed limit in the United States. Throughout the Tollway, drivers enjoy the benefits of "open road tolling," whereby tolls are assessed electronically at certain points along the Tollway without the use of toll-booths, enabling motorists to drive the entire 41-mile Tollway at highway speeds without having to slow down or stop for payment.

5. The key driver of the Debtors' profitability is traffic volume on the Tollway, as the Tollway generates revenue by the assessment of tolls in exchange for the use of the road. Concessionaire and TxDOT are parties to that certain Facility Concession Agreement, SH 130 Segments 5 and 6 Facility, dated March 22, 2007 (the "FCA"). The FCA sets forth the terms and conditions of TxDOT's grant to the Concessionaire of the exclusive right to impose tolls. Pursuant to the FCA, the Concessionaire developed and constructed, and now operates and maintains, the Tollway. The FCA also governs the terms and conditions of the toll revenue sharing arrangement between the Concessionaire and TxDOT. Under the terms of the FCA, TxDOT has no obligation to commit any funds to the development, construction, operation, and maintenance of the Tollway. Since it began operating the Tollway, the Concessionaire has made payments to TxDOT under the FCA in the amount of $142.6 million.[2] No TxDOT funds were utilized in the construction of the Tollway.

6. Pursuant to the FCA, the Concessionaire has the exclusive right to (a) impose tolls upon the Tollway, (b) establish, modify and adjust toll rates subject to a maximum amount as set forth in the FCA, (c) receive toll amounts, and (d) subject to TxDOT's right to perform toll handling, collection, and enforcement services, to enforce and collect tolls. The Concessionaire also has exclusive rights to all Toll Revenues (as defined in the FCA but excluding Video Trip

---

[2] The breakdown of these payments is as follows: (i) $25.8 million for a concession payment, (ii) $15.3 million for payment sales tax related payment, (iii) $100 million in connection with increasing the speed limit on the Tollway to 85 miles per hour, and (iv) $1.5 million in connection with hazardous material remediation charges.

3

Toll Premiums (as defined in the FCA)), subject to TxDOT's right to share in a percentage thereof.

7. As of the Petition Date, the Debtors employ approximately 30 employees. The Debtors' prepetition capital structure consists of (a) senior secured debt consisting of (i) private loans, (ii) certain obligations arising from interest rate hedging arrangements, and (iii) loans made by the United States Department of Transportation ("USDOT") under the Transportation Infrastructure Financing and Innovation Act of 1998 ("TIFIA"), and (b) certain other miscellaneous unsecured debt. As of the Petition Date, the Debtors' total consolidated lender debt (excluding trade debt but including amounts owing to USDOT under TIFIA) consisted of an aggregate principal amount of approximately $1.272 billion, plus accrued interest, fees, expenses, charges, and other obligations (including swap obligations) incurred in connection therewith. The Debtors estimate their unsecured liabilities to be approximately $2.0 million as of the Petition Date. The Debtors' shareholders have invested approximately $345.5 million of equity in the Concessionaire.

8. Since its inception, a number of factors have coalesced that significantly strained the Concessionaire's ability to continue to service its outstanding indebtedness and, ultimately, led to the Debtors' filing of the Chapter 11 Cases. Those events include the worldwide economic crisis that commenced in 2007—which affected nearly every segment of the United States' economy—and the concomitant negative impact on projected traffic volumes has led to revenues being significantly below levels projected when construction of the Tollway was financed. Because of less-than-projected revenues generated by the Tollway, the Debtors do not have the liquidity necessary to service their prepetition senior debt, thus precipitating the filing of the Chapter 11 Cases. These circumstances, coupled with the Concessionaire's unsuccessful

4

attempts to implement an out-of-court restructuring and the Concessionaire's potential defaults under the Senior Credit Facility and Swap Agreements, resulted in the commencement of these Chapter 11 Cases to maximize the value of the Tollway for all stakeholders.

9. The Debtors commenced these Chapter 11 Cases with the goal of developing and implementing a comprehensive proposal designed to enable the Debtors to restructure their debts and realize the full value of the Tollway over time for the benefit of the Debtors' creditors and other stakeholders.

## RELIEF REQUESTED

10. The Debtors request the immediate entry of an order providing for the joint administration of the Chapter 11 Cases for procedural purposes only. In particular, the Debtors request that the Court implement the following procedures:

(a) One docket shall be maintained for the Debtors' cases under the case number assigned to SH 130 CONCESSION COMPANY, LLC.

(b) The caption of the cases shall be modified to reflect their joint administration as referenced on Exhibit A hereto.

(c) A notation substantially similar to the following notation shall be entered on the docket for all other Debtors to reflect that each Debtor's chapter 11 case shall be jointly administered under the SH 130 CONCESSION COMPANY, LLC case:

> An order has been entered in this case directing the joint administration of the chapter 11 cases of SH 130 Concession Company, LLC, CINTRA TX 56 LLC and Zachry Toll Road–56 LP; the docket for SH 130 Concession Company, LLC should be consulted for all matters affecting this case.

## BASIS FOR RELIEF REQUESTED

**A.** **The Debtors are Affiliates Under Federal Bankruptcy Rule 1015(b)**

11. Bankruptcy Rule 1015(b) provides that, if two or more petitions are pending in the same court by or against a debtor and an affiliate, "the court may order a joint administration

5

of the estates." Fed. R. Bankr. P. 1015(b). Section 101(2) of the Bankruptcy Code defines "affiliate" to mean, among other things:

> [an] entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . [or] [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . .

11 U.S.C. § 101(2).

12. Joint administration of the Debtors' cases is warranted because each Debtor, as set forth in the Harris Declaration, is an "affiliate" of one or more other Debtors under section 101(2) of the Bankruptcy Code.

13. Courts routinely, and generally without controversy, approve joint administration of interrelated chapter 11 cases in this District. *See In re UPH Holdings, Inc.*, Case No. 13-10570 (Bankr. W.D. Tex. April 2, 2013); *In re KLN Steel Products Co., LLC*, Case No. 11-12855 (Bankr. W.D. Tex. Nov. 23, 2011); *In re TXCO Resources Inc.*, Case No. 09-51807 (Bankr. W.D. Tex. May 19, 2009).

B. **Joint Administration of the Estates Will Provide Greater Ease of Administration**

14. The joint administration of the Chapter 11 Cases will permit the Clerk of the Court to utilize a single general docket for these cases and combine notices to creditors of the Debtors' respective estates and other parties in interest. Entering an order directing joint administration of the Chapter 11 Cases will avoid the need for duplicative notices, opinions, motions, applications, and orders, thereby saving time and expense that otherwise would be required to administer individual cases. Because the Chapter 11 Cases potentially involve a large number of creditors and notice parties, the entry of an order of joint administration will:

6

(a) significantly reduce the volume of pleadings that otherwise would be filed with the Clerk of the Court; (b) render the completion of various administrative tasks less costly; and (c) minimize the number of unnecessary delays associated with the administration of numerous separate chapter 11 cases. Joint administration also will enable parties in each of the Chapter 11 Cases to receive notice of the various matters pending before the Court in all of the Chapter 11 Cases.

15. Joint administration will further simplify supervision of the Chapter 11 Cases by the Office of the United States Trustee, which, absent joint administration, would be made unnecessarily burdensome.

16. In addition, no administrative or scheduling orders previously entered in these cases will require modification.

17. Notwithstanding the joint administration of the Chapter 11 Cases, each of the Debtors shall (a) not be liable for the claims against any of the other Debtors by virtue of the Order and (b) file separate bankruptcy schedules and statements of financial affairs.

C.   **No Party in Interest Will Be Prejudiced By Virtue of the Relief Requested**

18. The rights of the respective creditors of the Debtors will not be adversely affected by the proposed joint administration of the Chapter 11 Cases because the rights of each creditor against the respective estates will be preserved. The Motion seeks neither substantive consolidation of the Debtors' estates, nor modification of the relative rights and remedies of creditors against any of the individual Debtors. Thus, the substantive rights of parties in interest will not be prejudiced or otherwise negatively affected by the entry of an order directing the procedural joint administration of the Chapter 11 Cases.

19. For these reasons, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties in interest, and, therefore, should be granted.

7

## NOTICE

20. The Debtors have provided notice of the filing of the Motion either by electronic mail, facsimile, or overnight mail to: (i) the Office of the United States Trustee for the Western District of Texas; (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) counsel to the agent for the Debtors' prepetition senior credit facility; (iv) counsel to the steering committee of lenders under the Debtors' prepetition senior credit facility; (v) counsel to the TIFIA Lender; (vi) the Collateral Agent for the Debtors' prepetition loan agreements; and (vii) counsel to TxDOT. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required. A copy of the Motion is also available on the website of the Debtors' proposed Noticing and Claims Agent, Prime Clerk LLC, at https://cases.primeclerk.com/SH130.

## NO PRIOR REQUEST

21. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, PREMISES CONSIDERED, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 2, 2016

Respectfully submitted,

David M. Feldman (*pro hac vice* pending)
Matthew K. Kelsey (*pro hac vice* pending)
Alan Moskowitz (*pro hac vice* pending)
Matthew G. Bouslog (*pro hac vice* pending)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com
Email address: AMoskowitz@gibsondunn.com
Email address: MBouslog@gibsondunn.com

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX

By: /s/ Patricia B. Tomasco
    Patricia B. Tomasco
    State Bar No. 01797600
    (512) 236-2076 – Direct Phone
    (512) 691-4438 – Direct Fax
    Email address: ptomasco@jw.com

    Jennifer F. Wertz
    State Bar No. 24072822
    (512) 236-2247 – Direct Phone
    (512) 391-2147 – Direct Fax
    Email address: jwertz@jw.com

**PROPOSED COUNSEL FOR THE DEBTORS**

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SH 130 CONCESSION COMPANY, LLC, | § | CASE NO. 16-10262 |
| ZACHRY TOLL ROAD – 56 LP | § | CASE NO. 16-10263 |
| CINTRA TX 56 LLC | § | CASE NO. 16-10264 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| 10800 N US 183 HWY | § | JOINTLY ADMINISTERED UNDER |
| BUDA, TEXAS 78610-9460 | § | CASE NO. 16-10262 |