IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SH 130 CONCESSION COMPANY, LLC | § | CASE NO. 16-10262 |
| ZACHRY TOLL ROAD – 56 LP | § | CASE NO. 16-10263 |
| CINTRA TX 56 LLC | § | CASE NO. 16-10264 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| 10800 N US 183 HWY | § | JOINTLY ADMINISTERED UNDER |
| BUDA, TEXAS 78610-9460 | § | CASE NO. 16-10262 |

**DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER APPROVING THE EMPLOYMENT AND RETENTION OF
GIBSON, DUNN & CRUTCHER LLP AS COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within twenty-one (21) days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely response is necessary for a hearing to be held.**

TO THE HONORABLE TONY M. DAVIS, UNITED STATES BANKRUPTCY JUDGE:

SH 130 Concession Company, LLC (the "*Concessionaire*") and certain of its affiliates, as debtors and debtors in possession (collectively, the "*Debtors*"), submit this Application (the "*Application*") for the entry of an order, substantially in the form annexed hereto as Exhibit A, authorizing the Debtors to employ and retain Gibson, Dunn & Crutcher, LLP ("*Gibson Dunn*") as their general bankruptcy and restructuring counsel effective as of the Petition Date (as defined below), pursuant to section 327 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule

2014 of the Local Rules for the United States Bankruptcy Court for the Western District of Texas (the "**Local Rules**"), and to compensate Gibson Dunn pursuant to sections 330 and 331 of the Bankruptcy Code.  In support of this Application, the Debtors submit (i) the *Declaration of David M. Feldman in Support of the Debtors' Application to Employ and Retain Gibson, Dunn & Crutcher LLP as Counsel* (the "**Feldman Declaration**"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein and (ii) the *Declaration of Steven J. Thoreson in Support of the Debtors' Application to Employ and Retain Gibson, Dunn & Crutcher LLP as Counsel* ("**Thoreson Declaration**"), a copy of which is attached hereto as Exhibit C and incorporated by reference herein.  In further support of this Application, the Debtors respectfully represent as follows:

**BACKGROUND**

1.  On March 2, 2016 (the "**Petition Date**"), each of the Debtors commenced a case (together, the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Texas (the "**Court**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

2.  Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Paul Harris in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18], which was filed on the Petition Date.

## JURISDICTION AND VENUE

3. The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings* from the United States District Court for the Western District of Texas dated October 4, 2013. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

4. The Debtors seek entry of an order authorizing them to employ and retain Gibson Dunn as their general bankruptcy and restructuring counsel in the Chapter 11 Cases, effective as of the Petition Date, pursuant to section 327 of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014, and to compensate Gibson Dunn for all services provided to and expenses incurred on behalf of the Debtors, effective as of the Petition Date, pursuant to sections 330 and 331 of the Bankruptcy Code and upon the terms and conditions described in the Engagement Letter (defined below).

## QUALIFICATIONS OF GIBSON DUNN

5. Gibson Dunn is well qualified to represent the Debtors. Gibson Dunn is an international law firm with over 1,200 attorneys in 18 offices in major cities throughout the United States, Europe, the Middle East, Asia, and South America. The firm maintains offices in New York City, Los Angeles, Century City, Orange County, San Francisco, Palo Alto, Dallas, Denver, and Washington, D.C., as well as in London, Paris, Munich, Brussels, Dubai, Sao Paulo, Singapore, Beijing and Hong Kong. Gibson Dunn has extensive expertise and experience in virtually all aspects of the law that may arise in the Chapter 11 Cases, including substantial expertise in bankruptcy and restructuring, infrastructure, corporate, employee benefits,

environmental, finance, intellectual property, labor and employment, litigation, real estate, securities, and tax expertise.

6. The attorneys in Gibson Dunn's Business Restructuring and Reorganization Practice Group have significant experience representing debtors in large and complex cases under the Bankruptcy Code, including, without limitation, in the past several years, representing the debtors in the chapter 11 cases of Sports Authority Holdings, Inc., The Standard Register Company, Natrol, Inc., Arcapita Bank B.S.C.(c), Pacific Monarch Resorts, Inc., R.E. Loans, LLC, THQ, Inc., TBS Shipping Services, Inc., Freedom Communications, Inc., Leap Wireless, Inc., Almatis B.V., Building Materials Holding Corporation, Fleetwood Enterprises, Inc., and Scotia Pacific Company LLC.

7. In addition, Gibson Dunn's Energy and Infrastructure Practice Group regularly advises clients in every stage of the development, construction, financing, acquisition, ownership and operation of infrastructure projects, including toll roads. Given Gibson Dunn's breadth of experience in large bankruptcy matters as well as large and complex infrastructure deals, Gibson Dunn is uniquely qualified to represent the Debtors in these Chapter 11 Cases.

8. On March 4, 2013, Javier Gutierrez, then-Chief Executive Officer of the Debtors, executed an engagement letter with Gibson Dunn, a true and correct copy of which is attached to the Feldman Declaration as Exhibit 1 (together with the Terms of Retention attached thereto, the "***Engagement Letter***," and the date of such execution, the "***Retention Date***"), concerning restructuring and other services to be provided to the Debtors by Gibson Dunn. Since the Retention Date, Gibson Dunn has provided the Debtors with a wide array of legal services in connection with their business affairs and their restructuring and reorganization efforts, including assistance with prepetition restructuring negotiations with the Debtors' various stakeholders.

4

Gibson Dunn's professionals have worked closely with the Debtors' management and other professionals with regard to these matters and, given both past representations and recent work, Gibson Dunn is well-acquainted with the Debtors' corporate history, debt structure, and business operations. As a result, Gibson Dunn has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in the Chapter 11 Cases.

## **SERVICES TO BE PROVIDED**

9. The Debtors seek to employ Gibson Dunn on an hourly basis to act as the Debtors' general bankruptcy and restructuring counsel in the Chapter 11 Cases and in matters that arise with respect thereto or to the Debtors, and to provide the Debtors with general legal services in other areas, including, without limitation, legal services relating to the operation of the Debtors' businesses, securities laws, tax, and corporate governance. In particular, the Debtors anticipate that Gibson Dunn will render, among others, the following professional services:

(a) advise the Debtors of their rights, powers, and duties as debtors in possession under chapter 11 of the Bankruptcy Code;

(b) prepare, on behalf of the Debtors, all necessary and appropriate applications, motions, proposed orders, other pleadings, notices, schedules, and other documents; and review all financial and other reports to be filed in the Chapter 11 Cases;

(c) advise the Debtors concerning, and prepare responses to, applications, motions, other pleadings, notices, and other papers that may be filed and served in the Chapter 11 Cases;

(d) advise the Debtors with respect to, and assist in the negotiation and documentation of, financing agreements and related transactions;

(e) review the nature and validity of any liens asserted against the Debtors' property and advise the Debtors concerning the enforceability of such liens;

(f) advise the Debtors regarding their ability to initiate actions to collect and recover property for the benefit of their estates;

5

(g) counsel the Debtors in connection with the formulation, negotiation, and promulgation of a plan of reorganization and related documents;

(h) advise and assist the Debtors in connection with any potential property dispositions;

(i) advise the Debtors concerning executory contract and unexpired lease assumptions, assignments, and rejections as well as lease restructurings and recharacterizations;

(j) assist the Debtors in reviewing, estimating, and resolving claims asserted against the Debtors' estates;

(k) commence and conduct any and all litigation necessary or appropriate to assert rights held by the Debtors, protect assets of the Debtors' chapter 11 estates, or otherwise further the goal of completing the Debtors' successful reorganization;

(l) provide corporate, employee benefit, environmental, litigation, tax, and other general nonbankruptcy services to the Debtors to the extent requested by the Debtors and agreed to by Gibson Dunn; and

(m) perform all other necessary or appropriate legal services in connection with the Chapter 11 Cases for or on behalf of the Debtors as requested by the Debtors and agreed to by Gibson Dunn.

10. The Debtors require knowledgeable counsel to provide these essential professional services. Gibson Dunn has stated its desire and willingness to act in the Chapter 11 Cases and provide the necessary services as attorneys for the Debtors. As noted above, Gibson Dunn has substantial expertise in all of these areas, and has gained valuable knowledge of the Debtors' business and financial affairs as a result of its prepetition representation of the Debtors. For all of these reasons, the Debtors believe that Gibson Dunn is both well qualified and uniquely able to represent the Debtors' interests in the Chapter 11 Cases.

## **PREPETITION PAYMENTS TO GIBSON DUNN**

11. As stated above, the Debtors have employed Gibson Dunn since March 4, 2013 pursuant to the terms and conditions of the Engagement Letter.

12. On or around May 23, 2013, as security for payment of fees and expenses, the Debtors made an advance payment to Gibson Dunn of approximately $150,000, which advance payment has been refreshed and increased throughout the prepetition period (the "***Advance***

*Payment*"). In accordance with the Engagement Letter, throughout the prepetition period, Gibson Dunn applied fees earned and expenses incurred against the Advance Payment.

13. Shortly before the Petition Date, Gibson Dunn applied the Advance Payment to pay all then accrued and anticipated unpaid fees for services performed and expenses incurred. Due to the ordinary course and the unavoidable reconciliation of fees and submission of expenses immediately prior to the Petition Date, and a last minute decision to push the filing date by one day, Gibson Dunn incurred some fees and expenses in the days prior to filing that while covered by the Advance Payment were not applied against the remaining Advance Payment prior to the Petition Date.[1] Gibson Dunn seeks the Court's approval to apply the Advance Payment to these amounts. To the extent Gibson Dunn incurred any unbilled fees or reimbursable expenses in excess of the Advance Payment (which Gibson Dunn does not believe to be the case), Gibson Dunn will not seek payment of such amounts and agrees to waive any claim against Debtors for such amounts. Accordingly, Debtors will not owe Gibson Dunn any sums for prepetition services.

14. In the 12 months prior to the filing of the Chapter 11 Cases, Gibson Dunn received payments from the Debtors in the aggregate amount of $1,392,004.72 for professional services rendered and expenses incurred. After giving effect to the reconciliation process described in the preceding paragraph, Gibson Dunn expects the Debtors' on-account balance to be $24,779.32 (the "*Advance Payment Balance*").[2] This Advance Payment Balance will be held by Gibson Dunn as security for post-petition services and expenses.

---

[1] The aggregate amount of such fees and expenses is less than $100,000.
[2] Gibson Dunn has not yet confirmed its final reconciliation of prepetition fees and expenses. Gibson Dunn will apply the Advance Payment to those prepetition fees and expenses, and provide details confirming such final reconciliation in Gibson Dunn's first application for interim compensation.

7

**GIBSON DUNN'S FEES FOR SERVICES TO BE RENDERED
IN CONNECTION WITH THE CHAPTER 11 CASES**

15.     Except as described in this paragraph, pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, as set forth in the Feldman Declaration, Gibson Dunn intends to (a) charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, and (b) seek reimbursement of actual and necessary out-of-pocket expenses.

16.     Gibson Dunn's current hourly rates for matters related to these Chapter 11 Cases are as follows: $995 to $1,165 for partners, $585 to $855 for associates, and $410 for paraprofessionals. Gibson Dunn's hourly rates are set at a level designed to compensate Gibson Dunn fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[3] Gibson Dunn represented the Debtors during the twelve-month period before the Petition Date using the hourly rates listed above.[4] These hourly rates are consistent with the rates that Gibson Dunn charges other nonbankruptcy and chapter 11 clients, regardless of the location of the chapter 11 case. Moreover, the rate structure is appropriate and not significantly different from

---

[3] The hourly rates charged by Gibson Dunn professionals differ based on, among other things, the professional's level of experience. Like many of its peer law firms, Gibson Dunn increases the hourly billing rate of attorneys and paraprofessionals each year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (the "***U.S. Trustee Fee Guidelines***")). As set forth in the Proposed Order, Gibson Dunn will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

[4] Fees charged in calendar year 2015 were charged in accordance with then-prevailing 2015 fee rates. In accordance with its established practices, and as described in footnote 1, Gibson Dunn makes certain step increases and periodic increases on an annual basis and a particular attorney's 2015 rate may differ from his or her 2016 rate.

(a) the rates Gibson Dunn charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Gibson Dunn will perform in these Chapter 11 Cases.

17.  A list of the professionals currently expected to provide services to the Debtors and the current hourly rates for these professionals for 2016 is attached to the Feldman Declaration as <u>Schedule 1</u>.  Other attorneys and paraprofessionals may also provide services to the Debtors as well, depending on the legal issues facing the Debtors.

18.  Gibson Dunn will maintain detailed, contemporaneous records of time spent, as well as any actual and necessary expenses incurred, in connection with the rendering of the legal services described above by category and nature of the services rendered.  Notwithstanding the foregoing, Gibson Dunn acknowledges its compensation will be subject to approval by this Court.

19.  As set forth in the Feldman Declaration, Gibson Dunn intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  As specified above, Gibson Dunn will hold the Advance Payment Balance as security for post-petition services and expenses and will bill the Debtors during the pendency of the Chapter 11 Cases, subject to approval by the Court.  The Advance Payment Balance will be applied to Gibson Dunn's final fee application, as approved by the Court.  Gibson Dunn has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with the Chapter 11 Cases, other than as permitted pursuant to section 504 of the Bankruptcy Code.  Gibson Dunn also intends to make a

reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the U.S. Trustee Fee Guidelines, both in connection with this Application and the interim and final fee applications to be filed by Gibson Dunn in these Chapter 11 Cases.

20. It is Gibson Dunn's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Gibson Dunn's policy to charge its clients only the amount actually incurred by Gibson Dunn in connection with such items. Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging. In addition, Gibson Dunn professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

21. Consistent with past practice, Gibson Dunn will charge no more than $0.10 per page for standard duplication services in these Chapter 11 Cases. Gibson Dunn does not charge its clients for incoming facsimile transmissions.

22. The Debtors will be approving a prospective budget and staffing plan for Gibson Dunn's engagement for the post-petition period as appropriate. In accordance with the U.S. Trustee Fee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments. The Debtors have also approved the Gibson Dunn attorneys staffed on this engagement, subject to modification depending upon further case developments. As set forth in the Thoreson Declaration, the Debtors recognize that it is their responsibility to review the billing practices of their counsel to ensure that the fees and expenses remain consistent with

the Debtors' expectations and the exigencies of these Chapter 11 Cases. The Debtors will review the invoices of its professionals, including the invoices of Gibson Dunn.

23. By separate applications, the Debtors are seeking Court approval for the retention of: (a) Jackson Walker LLP as secondary counsel; (b) AlixPartners, LLP as financial advisor; and (c) Bracewell LLP as special counsel. The Debtors previously sought approval to retain Prime Clerk, LLC as their claims, noticing and balloting agent. The Debtors may also file motions or applications to employ additional professionals.

24. Each of the firms listed above works, and will continue to work, under the direction of the Debtors' management. The Debtors' directors and senior management are committed to minimizing duplication of services to reduce professional costs, among other things. To that end, Gibson Dunn will work closely with each professional to ensure that there is no unnecessary duplication of effort or cost.

## **GIBSON DUNN'S DISINTERESTEDNESS**

25. To the best of the Debtors' knowledge, information, and belief, (a) other than its prior representations of the Debtors and certain affiliates (as disclosed herein) and its representation in connection with the Chapter 11 Cases, Gibson Dunn has no connection with the Debtors; (b) Gibson Dunn does not represent, and has not represented, any entity other than the Debtors in the Chapter 11 Cases; (c) Gibson Dunn does not have any connection with, and has not represented in the past, the United States Trustee for the Western District of Texas, or any person employed by the Office of the United States Trustee for the Western District of Texas; and (d) Gibson Dunn does not have any connection with the Debtors' creditors, any other party in interest, or their respective attorneys and accountants, except as set forth below and in Schedule 3 to the Feldman Declaration.

26. To check and clear conflicts, and in preparing the Feldman Declaration, Gibson Dunn used a set of procedures that it has developed to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of professionals in chapter 11 cases. As set forth in the Feldman Declaration, pursuant to these procedures, Gibson Dunn performed the following actions to determine whether Gibson Dunn or any of its attorneys has any connections with, has in the past represented, or is currently representing potential parties in interest in the Chapter 11 Cases:

(a) A list of interested parties (the "*Interested Parties*") was created using information provided by the Debtors and additional information identified by Gibson Dunn. The list of Interested Parties is comprised of the following entities, whose identities are set forth in Schedule 2, attached to the Feldman Declaration:
   (i) the Debtor and certain non-debtor affiliates;
   (ii) the Debtors' prepetition and post-petition secured bank lenders, advisors and counsel;
   (iii) holders of more than 5% of the Debtors' equity securities;
   (iv) current officers and directors, board members of the Debtors and individuals who have served as officers or directors of the Debtors in the past two years;
   (v) professionals to be employed by the Debtors in the Chapter 11 Cases;
   (vi) the Debtors' 20 largest unsecured creditors as identified in their chapter 11 petitions;
   (vii) the Debtors' other professionals;
   (viii) the Debtors' landlords;
   (ix) the Debtors' utility providers;
   (x) the Debtors' insurers and insurance brokers;
   (xi) other significant trade vendors not in the Top 20;
   (xii) parties relating to significant litigation involving the Debtors;
   (xiii) parties to material executory contracts with the Debtors;
   (xiv) other interested parties;
   (xv) United States Bankruptcy Judges in the Western District of Texas;
   (xvi) employees of the Austin Division of the Office of the United States Trustee for the Western District of Texas; and

(xvii) other parties requesting notice in the Chapter 11 Cases as identified prior to the filing of this Application.

(b) Gibson Dunn compared each of the Interested Parties to the names that Gibson Dunn maintains in its master client database created from its conflict clearance and billing records. Gibson Dunn's client database includes: (i) the name of each current or former client; (ii) the names of any entities materially related to, or materially adverse to, such current or former client; (iii) the names of the Gibson Dunn attorneys responsible for such current or former clients; (iv) the status of the matter as either "active" or "inactive"; and (v) the dates on which the matter was opened and/or closed; and

(c) Any matches between the Interested Parties and the entities in Gibson Dunn's client database were identified, reviewed by an attorney and compiled for purposes of the Feldman Declaration. To the extent that Gibson Dunn currently represents, or has represented within the last three years, any of the Interested Parties, the identities of such entities are set forth in Schedule 3, attached to the Feldman Declaration. In determining whether a client is presently represented by Gibson Dunn, Gibson Dunn attorneys relied on the existence of an "active" notation on the report to reflect current representation. With respect to matters showing as "inactive," Gibson Dunn relied on the "close date" to determine whether the representation occurred within the past three years. If an "inactive" matter opened prior to January, 2013 showed no "close date," Gibson Dunn assumed for purposes of this disclosure that the matter was inactive during the past three years and did not include the client on Schedule 3, attached to the Feldman Declaration. If an "inactive" matter was opened on or after January, 2013 but showed no "close date," the client is included on Schedule 3, attached to the Feldman Declaration.

27. Based on the search of names set forth in Schedule 2, Gibson Dunn concluded it has the following connections with the Debtors and the Interested Parties:

(a) Gibson Dunn currently represents, and has formerly represented, Cintra Infraestructuras, S.E. (together with certain of its affiliates, "*Cintra*") on matters unrelated to the Debtors and the Chapter 11 Cases. Cintra, through its affiliates, is among the Debtors' equity owners and performs certain intercompany services for the Debtors. Cintra accounted for less than 0.5% of Gibson Dunn's revenues for the twelve-month period ending March 1, 2016.

(b) In addition, Gibson Dunn previously advised the Concessionaire's immediate members (the two other Debtors) and certain of their ultimate equity holders in connection with a potential global resolution to restructure the Debtors' outstanding debt outside of a court proceeding. Gibson Dunn provided advice as to the potential impact of a restructuring on these parties. The Debtors and their ultimate equity holders entered into a common interest agreement in connection with this work. No restructuring transaction was implemented prior to the Petition Date. Gibson Dunn

13

does not believe that its prior advice to such equity holders in any way presents a conflict for Gibson Dunn but is making this disclosure out of an abundance of caution. To be clear, Gibson Dunn has not, and will not, represent any party other than the Debtors in the Chapter 11 Cases. Gibson Dunn has advised the Debtors' equity holders to seek separate counsel and has been informed that such parties have, or will in the near future, retain separate counsel in connection with the Chapter 11 Cases.

(c) From time to time, Gibson Dunn has represented, and likely will continue to represent, certain creditors of the Debtors and other parties actually or potentially adverse to the Debtors in matters unrelated to the Chapter 11 Cases. As described herein, Gibson Dunn has undertaken a detailed search to determine whether it represents or has represented any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters, and all such known representations within the last three years are described in Schedule 3, attached to the Feldman Declaration. Due to the breadth of Gibson Dunn's client base, the firm is not subject to undue influence of any single client.

28. Other than as disclosed in the preceding paragraph, Gibson Dunn's connections with the Interested Parties are set forth in Schedule 3, which lists the Interested Parties that Gibson Dunn has represented in the past three years or is currently representing in matters wholly unrelated to the Debtors and the Chapter 11 Cases. These entities, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, are among the Interested Parties in these Chapter 11 Cases. Services provided to the entities disclosed on Schedule 3, and/or their affiliates or related entities as identified by Gibson Dunn's master client database, do not individually represent a material percentage of Gibson Dunn's revenue for the twelve-month period ending March 1, 2016. Moreover, Gibson Dunn has a diverse client base and does not believe that any individual entity (or in the case of affiliated entities, any such affiliate group) on the Interested Parties list represents more than 1.0% of Gibson Dunn's revenue for the twelve-month period ending March 1, 2016. Due to the breadth of Gibson Dunn's client base, the firm is not subject to the undue influence of any single client. To be

clear, Gibson Dunn does not and will not represent any of these parties in connection with the Chapter 11 Cases.

29. Gibson Dunn is confident that its diligence has resulted, to the greatest extent possible, in the disclosure of all potential conflicts. However, despite the efforts described above to identify and disclose Gibson Dunn's connections with parties in interest in the Chapter 11 Cases, as set forth in the Feldman Declaration, Gibson Dunn is unable to state with absolute certainty that every client representation or other connection has been disclosed because Gibson Dunn is an international law firm with over 1,200 attorneys in 18 offices. In this regard, if Gibson Dunn discovers additional information that requires disclosure, Gibson Dunn will file a supplemental disclosure with the Court. Additionally, to the extent that issues may arise which would cause the Debtors to be adverse to any of Gibson Dunn's clients, Gibson Dunn will obtain and disclose waivers or, to the extent that it would not be appropriate for Gibson Dunn to represent the Debtors with respect to such matters, Jackson Walker LLP, or other counsel employed by the Debtors, will represent the Debtors in connection with such matters.

30. Based upon the foregoing, to the best of the Debtors' knowledge, information, and belief, Gibson Dunn does not hold or represent an interest adverse to the Debtors or their estates. Further, the Debtors believe that Gibson Dunn is a "disinterested person" pursuant to sections 101(14) and 1107 of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

**BASIS FOR RELIEF REQUESTED**

31. Section 327(a) of the Bankruptcy Code provides that a debtor in possession may, with the court's approval, employ professionals that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as defined by section 101(14) of the Bankruptcy

Code, to represent or assist the debtor in possession in carrying out its duties under the Bankruptcy Code. *See* 11 U.S.C. § 101(14). Additionally, section 1107(b) of the Bankruptcy Code provides that a professional is not disqualified for employment by a chapter 11 debtor in possession under section 327(a) of the Bankruptcy Code solely because of its employment by or representation of the debtor before the commencement of the case. *See* 11 U.S.C. § 1107(b).

32. Gibson Dunn's services will enable the Debtors to execute faithfully their duties as debtors in possession, and are necessary to the successful functioning of the Chapter 11 Cases. Based upon both its extensive experience and expertise, and its prior representation of the Debtors, Gibson Dunn is both well-qualified and uniquely able to represent the Debtors during the Chapter 11 Cases in an efficient, cost-effective, and timely manner. As stated above, the Debtors do not believe that Gibson Dunn holds or represents any interest adverse to the Debtors' estates, and they believe that Gibson Dunn is a "disinterested person" under the Bankruptcy Code. Accordingly, the Debtors submit that the retention of Gibson Dunn is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

33. The Debtors further request approval of the employment of Gibson Dunn effective as of the Petition Date in accordance with Local Rule 2014(c).

## **NOTICE**

34. The Debtors have provided notice of filing of the Motion either by electronic mail, facsimile, or overnight mail to: (i) the Office of the United States Trustee for the Western District of Texas; (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) counsel to the agent for the Debtors' prepetition senior credit facility; (iv) counsel to the steering committee of lenders under the Debtors' prepetition senior credit facility; (v) TIFIA Lender; (vi) counsel to the Collateral Agent for the Debtors' prepetition loan agreements; (vii)

counsel to TxDOT; (viii) the Office of the Texas Attorney General and (ix) all parties listed on the Master Service List established in the Chapter 11 Cases.  Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required.  A copy of the Application is also available on the website of the Debtors' Claims, Noticing and Balloting Agent, Prime Clerk LLC, at https://cases.primeclerk.com/SH130.

## NO PRIOR REQUEST

35. No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 16, 2016.

Respectfully submitted,

SH 130 CONCESSION COMPANY, LLC,
on behalf of itself and its affiliated Debtors


/s/ *Steven J. Thoreson*
Steven J. Thoreson
General Counsel


**PROPOSED COUNSEL FOR THE DEBTORS**

GIBSON, DUNN & CRUTCHER LLP
David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com