**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**DEBTORS' MOTION FOR AN ORDER**
**(I) APPROVING THE DISCLOSURE STATEMENT,**
**(II) ESTABLISHING SOLICITATION AND TABULATION**
**PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND**
**(IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR**
**CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN**

TO THE HONORABLE TONY M. DAVIS,
UNITED STATES BANKRUPTCY JUDGE:

SH 130 Concession Company, LLC (the "***Concessionaire***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***" and each, a "***Debtor***"), submit this motion (the "***Motion***")[1] for entry of an order (the "***Proposed Order***") substantially in the form attached hereto as ***Exhibit A*** (i) approving the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 12, 2016 (including all exhibits thereto and as amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), attached hereto as ***Exhibit B***, (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to*

---

[1] Capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement (each as defined below).

*Chapter 11 of the Bankruptcy Code*, dated August 12, 2016 (including all exhibits thereto and as amended, modified, or supplemented from time to time, the "***Plan***"), (iii) scheduling a confirmation hearing with respect to the Plan, and (iv) establishing notice and objection procedures for confirmation of the Plan, pursuant to sections 105, 502, 1125, 1126, and 1128 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 3016, 3017, 3018, 3020, and 9013 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"). In support of this Motion, the Debtors respectfully state as follows:

## BACKGROUND

1.      On March 2, 2016 (the "***Petition Date***"), each of the Debtors commenced cases (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

2.      Information regarding the Debtors' history and business operations, capital structure, prepetition secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases, is set forth in the *Declaration of Paul Harris in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18], which was filed on the Petition Date.

## JURISDICTION AND VENUE

3.      The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Order of Reference of Bankruptcy Cases and Proceedings* from the United States District Court for the Western District of Texas, dated October 4, 2013. This is a

2

core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<div align="center">

**RELIEF REQUESTED**

</div>

**I.      Approval of Disclosure Statement**

4.      Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed plan of reorganization. Section 1125(a)(1) provides:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan ….

11 U.S.C. § 1125(a)(1). "The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court." *Tex. Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *see also In re Copy Crafters Quickprint Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties").

5.      Here, the Disclosure Statement provides creditors with sufficient information to make an informed decision whether to vote to accept or reject the Plan. For example, the following information is included in the Disclosure Statement:

> (a) a summary of the Plan, including classification and treatment of Claims against and Interests in the Debtors;
>
> (b) general information regarding the Debtors, including an overview of their business, their history, and their business operations;

(c) a summary of the Debtors' prepetition capital structure;

(d) certain events leading to the filing of the Chapter 11 Cases;

(e) the relief requested and granted during the course of the Chapter 11 Cases to date;

(f) administration of the Debtors' business both during the Chapter 11 Cases and post-emergence;

(g) projections relating to the Debtors' anticipated future business performance;

(h) an analysis of the value of the Debtors' assets in a hypothetical chapter 7 liquidation;

(i) the tax consequences of the Plan; and

(j) risk factors affecting the Plan.

Accordingly, the Debtors submit that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and should be approved.

## II.     Procedures for Solicitation of the Plan

### A.     The Record Date

6.      Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes on a proposed plan of reorganization, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) provides that "[a] plan may be accepted or rejected in accordance with § 1126 of the Code within the time fixed by the Court pursuant to Rule 3017." Fed. R. Bankr. P. 3018(a).

7.      Establishing a record date will benefit the Debtors by providing certainty—and, therefore, eliminate any potential disputes—in determining which creditors are entitled to receive the Confirmation Hearing Notice and/or Solicitation Packages (each as described below). For instance, the record date will eliminate any question with respect to any claims filed or

transferred on the eve of, or during, the solicitation period. Accordingly, the Debtors respectfully request that the Bankruptcy Court establish a record date of **September 21, 2016** (the "***Record Date***"), which will, among other things, permit solicitation of the Plan to begin promptly after entry of the Disclosure Statement Order.[2]

### B.    Objections to Claims

8.    The Debtors propose **September 27, 2016 at 5:00 p.m. (prevailing U.S. Central Time)** (the "***Voting Purposes Objection Deadline***") as the deadline for the filing and service of an objection, including an objection, if any, pursuant to section 502(d) of the Bankruptcy Code to claims for voting purposes ("***Claim Objection***"). The filing of a Claim Objection by the Voting Purposes Objection Deadline will mean that the Claim that is the subject of the Claim Objection will not be allowed to vote on the Plan.

9.    The Voting Purposes Objection Deadline will allow sufficient time for the Holder of any Claim that is the subject of a Claim Objection to file a motion for temporary allowance of its Claim or Interest for voting purposes pursuant to the procedures discussed below. The Debtors' election not to file an objection to a Claim prior to the Voting Purposes Objection Deadline is not an admission that any Claim shall be allowed or a waiver of any right of the Debtors' or any party in interest to object to any Claim after the Voting Purposes Objection Deadline. The Voting Purposes Objection Deadline is without prejudice to the rights of the Debtors or any other party in interest to object to the amount or allowance of any Claim (including those to which an objection is filed by the Voting Purposes Objection Deadline) or to

---

[2]  With respect to any Claim transfers before the Record Date, for each transferred Claim entitled to vote on  the Plan, the Debtors propose that the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred Claim only if (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed prior to the Record Date; or (b) the transferee files by the Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer.

later assert additional objections to Claims that are the subject of a Claim Objection filed prior to the Voting Purposes Objection Deadline.

### C. Temporary Allowance of Claims for Voting Purposes

10.     Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may temporarily allow [any] claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). The Debtors propose the procedures set forth below for the temporary allowance of Claims.

11.     If a creditor wishes to vote a claim, or portion of a claim, that (i) is subject to a Claim Objection; (ii) is otherwise not permitted to vote pursuant to the terms of the Plan, the Disclosure Statement or the Disclosure Statement Order; (iii) the creditor believes is not correctly classified by the Plan; or (iv) is in a different amount from the amount listed on the Ballot issued by the Debtors, then that creditor must obtain an order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a) entered not later than the Voting Deadline (as described below) temporarily allowing the Claim in a specific amount for voting purposes.

12.     A creditor seeking an order temporarily allowing a Claim shall file a motion ("*Temporary Allowance Motion*") according to the following procedures:

(a) Any Temporary Allowance Motion must be filed and served on or before **October 4, 2016 at 4:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Motion Deadline*");

(b) All objections and responses to Temporary Allowance Motions shall be filed and served on or before **October 11, 2016 at 4:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Objection Deadline*");

(c) A party filing a Temporary Allowance Motion may file a reply to any objection or response on or before **October 18, 2016 at 12:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Reply Deadline*"); and

(d) Any order temporarily allowing Claims or Interests must be entered on or before the Voting Deadline or as otherwise ordered by the Bankruptcy Court.

13.     Temporary Allowance Motions must (i) be made in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the Bankruptcy Court (the "***Local Rules***"); (iii) identify the name of the creditor or other moving party; (iv) identify the Debtor(s) against whom the Claim(s) is asserted; (v) state with particularity the legal and factual bases relied upon for the relief requested in the Temporary Allowance Motion; and (vi) be filed and served not later than the Temporary Allowance Motion Deadline, and in manner to be received by the Debtors. Temporary Allowance Motions not compliant with the foregoing will not be considered by the Bankruptcy Court and will be deemed denied, except as otherwise ordered by the Bankruptcy Court.

14.     Unless resolved earlier, any Temporary Allowance Motion shall be heard by the Bankruptcy Court as it shall direct. If a Temporary Allowance Motion cannot be heard by the Bankruptcy Court prior to the Voting Deadline, the moving claimant will be provided with a provisional Ballot and will be allowed to submit the Ballot on or before the Voting Deadline, which will be accepted as a provisional vote to accept or reject the Plan, pending a determination of the pending Temporary Allowance Motion by the Bankruptcy Court.

15.     Before or after the filing of a Temporary Allowance Motion, the Debtors and a creditor may stipulate to the amount or classification of its Claim(s), for voting purposes only, pursuant to a form of agreed order in lieu of filing other pleadings by the Debtors or the creditor.

**D.     The Solicitation Packages**

16.     A list of the proposed contents of the Solicitation Packages, as well as the Debtors' proposed procedures for serving the Solicitation Packages, are further set forth on ***Exhibit G*** attached hereto and incorporated herein by reference. The Debtors propose to complete service of the Solicitation Packages by the date that is four business days after entry of the order approving the Disclosure Statement (expected to be **September 27, 2016)** (the

"**Solicitation Deadline**") on the U.S. Trustee and all Holders of Claims entitled to vote on the Plan. Copies of the Confirmation Hearing Notice will also be served on all creditors by the Solicitation Deadline.

### E. Form of Ballots

17. Bankruptcy Rules 3018(c) and 3017(d) require the Debtors to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to creditors entitled to vote on the Plan one or more Ballots substantially in the forms attached hereto collectively as **Exhibits C1** and **C2** and incorporated herein by reference. The Ballots are based on Official Form No. 14, but have been modified to address the particular circumstances of these Chapter 11 Cases and the voting Classes.

18. The Ballots for Classes 3 and 4 implement the provisions of the Debtors' proposed Plan. The Debtors respectfully submit that the Ballots comply with the Bankruptcy Rules and should be approved.

### F. Non-Voting Classes

19. As noted above: Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 5 (General Unsecured Trade Claims) are unimpaired under the Plan and, therefore, are conclusively presumed to accept the Plan in accordance with section 1126(f) of the Bankruptcy Code.[3] Class 6 (Other General Unsecured Claims) and Class 7 (Existing Equity Interests) are impaired and will be not be receiving any Distribution under the Plan. Therefore, Class 6 and

---

[3] Section 1126(f) of the Bankruptcy Code provides that "a class that is not impaired under a plan, and each holder of a claim or interest of such class, is conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).

Class 7 are deemed to reject the Plan without voting pursuant to section 1126(g) of the Bankruptcy Code.[4]

20.     Thus, solicitation of Classes 1, 2, 5, 6, and 7 (collectively, the "***Non-Voting Classes***") under the Plan is not required. Accordingly, no Ballots have been proposed for Holders of Claims and Interests in the Non-Voting Classes, and the Debtors propose that they not transmit a Solicitation Package to claimants in the Non-Voting Classes.

21.     Instead, the Debtors submit that the holders in Non-Voting Classes should receive (i) the Confirmation Hearing Notice and (ii) a non-voting holder notice (the "***Non-Voting Holder Notice***") substantially in the forms attached hereto as ***Exhibits D1*** and ***D2***, which will set forth the Non-Voting Classes, identify the treatment of the Claims and/or equity Interests in those Classes, and provide direction on how to obtain a copy of the Plan and Disclosure Statement free of charge or access the material electronically.[5]

22.     As noted below, the Debtors will serve the Confirmation Hearing Notice on all claimants in the Non-Voting Classes and all parties that have filed notices of appearance in these Chapter 11 Cases. The Confirmation Hearing Notice shall, among other things (i) specify which Classes are and are not entitled to vote to accept or reject the Plan; (ii) set forth the means by which copies of the Plan and the Disclosure Statement may be obtained or reviewed; and (iii) provide notice of the Confirmation Hearing and the Plan Objection Deadline (as specified below). Accordingly, the Debtors respectfully submit that mailing the Confirmation Hearing

---

[4] Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g).

[5] Any party in interest may receive a hard copy of the Plan and Disclosure Statement upon written request to Prime Clerk LLC ("***Prime Clerk***"), the Debtors' Claims and Balloting Agent, or counsel to the Debtors. A copy is also available on Prime Clerk's website at https://cases.primeclerk.com/SH130.

Notice in lieu of Solicitation Packages to claimants in the Non-Voting Classes is appropriate under the circumstances.

### G. Voting Deadline for Receipt of Ballots

23. Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ." Fed. R. Bankr. P. 3017(c). As noted above, the Debtors anticipate commencing the Plan solicitation period by mailing Solicitation Packages, including the Ballots and other approved solicitation materials, by the Solicitation Deadline. Based on this timing, the Debtors propose that, to be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed, and delivered to Prime Clerk either by (i) regular mail (facilitated by a return envelope that the Debtors will provide with each Ballot); (ii) overnight courier; or (iii) personal delivery so that, in each case, all Ballots are received by Prime Clerk on or before the Voting Deadline, which shall be **October 26, 2016 at 5:00 p.m. (prevailing Central Time)**. No Ballots may be submitted by facsimile or electronic mail, and any such Ballots submitted by facsimile or electronic mail will be neither accepted nor counted.

24. The Debtors submit that the proposed solicitation period provides sufficient time for creditors to reach informed decisions to accept or reject the Plan and to timely submit their Ballots.

### H. Procedures for Vote Tabulation

25. The Debtors propose the tabulation and Claim allowance rules set forth on ***Exhibit H*** hereto and incorporated herein by reference (collectively, the "***Tabulation Rules***"). The Tabulation Rules seek to create clarity and efficiency in how votes to accept or reject the Plan will be counted. The Debtors believe that the Tabulation Rules will establish a fair and equitable voting process.

26.     If any creditor seeks to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Rules, the creditor shall comply with the Temporary Allowance Motion procedures set forth above.

27.     Prime Clerk will implement solicitation and balloting procedures, and it will tabulate the Ballots and certify to the Bankruptcy Court the results of the balloting by **November 1, 2016 at 4:00 p.m. (prevailing Central Time)** (the "***Ballot Certification Deadline***").

## III.    The Confirmation Hearing and Related Deadlines

### A.    The Confirmation Hearing

28.     Bankruptcy Rule 3017(c) provides that "on or before approval of the disclosure statement, the court shall fix a time within which the Holders of Claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c). In accordance with Bankruptcy Rules 2002(b) and 3017(c), the Debtors hereby request that the Confirmation Hearing be scheduled for **November 7, 2016 at 10:00 a.m. (prevailing Central Time)** or as soon thereafter as possible.

### B.    The Confirmation Hearing Notice

29.     The Debtors' proposed form of the Confirmation Hearing Notice is attached hereto as ***Exhibit E*** and incorporated herein by reference. Among other things, the Confirmation Hearing Notice sets forth (i) the time and place of the Confirmation Hearing, (ii) the procedures associated with Plan objections, including the Plan Objection Deadline, (iii) which Classes under the Plan are entitled to vote, (iv) the procedures for casting Ballots (as defined below) for voting creditors, and (v) options for obtaining and reviewing electronic or paper copies of the Plan and the Disclosure Statement, for interested parties who do not receive full Solicitation Packages.

30.     The Debtors propose to post the Confirmation Hearing Notice on the website maintained by Prime Clerk, at https://cases.primeclerk.com/SH130, and to serve the Confirmation

Hearing Notice on Holders of Claims and Interests, with such service to be completed by the Solicitation Deadline.

31.     In addition, the Debtors propose to publish, pursuant to Bankruptcy Rule 2002(l), the Confirmation Hearing Notice, in substantially the form attached hereto as ***Exhibit F***, not later than seven business days following entry of the order approving this Motion in the national edition of *USA Today* and in the *Austin American-Statesman* and *San Antonio Express News*. The Debtors respectfully submit that the proposed form of the Confirmation Hearing Notice attached hereto comports with the requirements of the Bankruptcy Rules.

32.     The Debtors further submit that service of the Confirmation Hearing Notice as proposed herein substantially complies with the time period provided by Bankruptcy Rule 2002.[6] The Debtors anticipate completing service of the Confirmation Hearing Notice and Solicitation Packages 41 days prior to the proposed date of the Confirmation Hearing and 29 days prior to the Plan Objection Deadline. Accordingly, the Debtors believe that service will comply with the time periods contemplated in the Bankruptcy Rules.

C.     **Plan Objection and Reply Deadlines**

33.     The Debtors propose that Plan objections, if any, must (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim of such party; (iii) state with particularity the basis and nature of such Plan objection (and, if practicable, a proposed modification to the Plan that would resolve such Plan objection); (iv) conform to the Bankruptcy

---

[6]  Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time set for (a) filing objections to confirmation of a chapter 11 plan and (b) the hearing to consider confirmation of a chapter 11 plan.

Rules and the Local Rules, and any orders of the Bankruptcy Court; and (v) in accordance with

Bankruptcy Rule 3020(b)(1),[7] be filed with the Bankruptcy Court and served on:

(a) Counsel to the Debtors, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166, Attn: David M. Feldman and Matthew K. Kelsey; Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com;

(b) The Office of the United States Trustee, Attn: Deborah A. Bynum and Henry Hobbs, 903 San Jacinto Blvd., Room 230, Austin TX 78701, Email: deborah.a.bynum@usdoj.gov, henry.g.hobbs@usdoj.gov;

(c) Counsel to the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP Attn: Gerard Uzzi, Jonathan Green and Mary Doheny 28 Liberty Street, New York, NY 10005-1413, Email: GUzzi@milbank.com, JGreen@milbank.com, Mdoheny@milbank.com;

(d) Counsel to the Administrative Agent, Munsch Hardt Kopf & Harr, P.C. Attn: E. Lee Morris and Kevin M. Lippman 500 N. Akard Street, Suite 3800 Dallas, TX 75201-6659 Email: lmorris@munsch.com, klippman@munsch.com;

(e) Counsel to the Collateral Agent, Drinker Biddle & Reath LLP Attn: Kristin K. Going and Heath D. Rosenblat, 1500 K Street, NW, Suite 1100 Washington DC 20005-1209 Email: Kristin.Going@dbr.com, Heath.Rosenblat@dbr.com;

(f) The U.S. Department of Justice, Civil Division, Attn: Rodney Morris, P.O. Box 875, Ben Franklin Station, Washington, DC 20044 E-mail: rodney.morris2@usdoj.gov

(g) Counsel to TIFIA Lender, Shearman & Sterling LLP Attn: Douglas P. Bartner, 559 Lexington Avenue, New York, NY 10022-6069 Email: dbartner@shearman.com; and

(h) Counsel to TxDOT, Texas Attorney General's Office Attn: Hal F. Morris & Charlie Shelton Bankruptcy & Collections Division PO Box 12548-MC 008 Austin TX, 7811-2548 Email: hal.morris@texasattorneygeneral.gov, charlie.shelton@texasattorneygeneral.gov.

---

[7] Specifically, Bankruptcy Rule 3020(b)(1) provides that "[a]n objection to confirmation of the plan shall be filed and served on the debtor, the trustee, the proponent of the plan, any committee appointed under the [Bankruptcy] Code, and any other entity designated by the court, within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

(collectively, (a) through (h), the "**Notice Parties**") so that such Plan objections are received on or before the Plan Objection Deadline, which shall be **October 26, 2016 at 5:00 p.m. (prevailing U.S. Central Time)**.

34.     The proposed Plan Objection Deadline would be 29 days following the date on which Prime Clerk completes service of the Confirmation Hearing Notice and the Solicitation Packages. This notice period complies with the Bankruptcy Rules and the Local Rules. Specifically, as noted above, Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail of the time set for filing objections to confirmation of a chapter 11 plan.

35.     If there are multiple Plan objections filed with respect to the Plan, the Debtors submit that the issues raised in any such Plan objections, and the Debtors' responses or any proposed resolutions to those issues, can be more efficiently and effectively considered by the Bankruptcy Court and parties in interest if the Debtors are permitted to file a single, consolidated reply to the Plan objections. The Debtors respectfully request that parties in interest be permitted to file replies, if any, and briefs in support of the Plan by not later than **November 2, 2016 at 5:00 p.m. (prevailing U.S. Central Time)** (the "**Plan Reply Deadline**"), assuming that the Bankruptcy Court schedules the Confirmation Hearing for **November 7, 2016**.

### D.     Procedures as to Proposed Cure Amounts and Assumption or Rejection of Executory Contracts and Unexpired Leases

36.     The Plan and section 365(b) of the Bankruptcy Code require the Debtors to cure, or provide adequate assurance that the Debtors will promptly cure, existing defaults under Executory Contracts and Unexpired Leases to be assumed under the terms of the Plan.

37.     Article V.A of the Plan provides that all executory contracts and unexpired leases shall be rejected pursuant to section 365(a) of the Bankruptcy Code as of the Effective Date of the Plan, *except* for any contract or lease (i) identified on the Assumed Executory Contract and

Unexpired Lease List (which shall be included in the Plan Supplement) as an Executory Contract or Unexpired Lease designated for assumption, (ii) which is the subject of a separate motion or notice to assume or reject filed by the Debtors and pending as of the Confirmation Hearing, (iii) that previously expired or terminated pursuant to its own terms, or (iv) that was previously assumed by any of the Debtors.

38.     The Plan requires the Debtors to cure any and all undisputed defaults in the Assumed Executory Contracts and Unexpired Leases in accordance with section 365 of the Bankruptcy Code on the Effective Date and to cure disputed monetary defaults upon entry of a Final Order resolving the dispute and approving the assumption.

39.     Liquidating the amount of cure obligations is an important element of feasibility and Plan Confirmation. The Debtors propose the following procedures to determine Cure Amounts and a deadline for objections to the assumption of Executory Contracts and Unexpired Leases pursuant to the Plan:

(a) A Notice of (i) Potential Assumption of Executory Contracts and Unexpired Leases Under the Plan, (ii) Fixing of Cure Claims Related Thereto, and (iii) Deadline to Object Thereto (the "***Cure Notice***"), in a form substantially the same as the notice attached hereto as ***Exhibit 1***, shall be served on the counterparties to all Executory Contracts and Unexpired Leases by **October 7, 2016** (the "***Cure Notice Filing Date***"). The Cure Notice will include the Cure Amount that the Debtors believe must be paid in order to cure all monetary defaults under each of the Executory Contracts and Unexpired Leases;

(b) Any party in interest who objects to the assumption of an Executory Contract or Unexpired Lease or disagrees with the Cure Amount must file and serve an objection to (i) Cure Amounts and/or (ii) potential assumption of the Executory Contract or Unexpired Lease under the Plan (a "***Cure Objection***") on or before the Plan Objection Deadline (which deadline may be extended in the sole discretion of the Debtors) ("***Cure Objection Deadline***");

(c) If, subsequent to the Cure Notice Filing Date, the Debtors amend the list of the Executory Contracts and Unexpired Leases to add an Executory Contract or Unexpired Lease or to reduce any Cure Amount, any Cure Objection to the addition or to the Cure Amount reduction must be filed by parties in interest not later than seven calendar days after service of the amended Cure Notice;

(d) Any Cure Objection must be in writing, setting forth with specificity (i) any cure obligations that the objecting party asserts must be cured or satisfied as a condition of assumption of the Executory Contract or Unexpired Lease and/or (ii) any objections to the assumption of the Executory Contracts or Unexpired Leases, together with all documentation supporting the claimed cure amount or objection;

(e) Any Cure Objection must be served upon each of the Notice Parties so that the **Cure Objection is actually received by no later than the Cure Objection Deadline**. Any reply to the Cure Objection shall be served and filed no later than the Plan Reply Deadline (the "***Cure Reply Deadline***");

(f) The Bankruptcy Court shall rule on any disputed Cure Amount(s) or objection to assumption of an Executory Contract or Unexpired Lease at the time of the Confirmation Hearing or such other date and time agreed by the parties or ordered by the Bankruptcy Court; and

(g) Any counterparty to an Executory Contract or Unexpired Lease who does not file a timely Cure Objection shall be deemed to have waived any objection and to have consented to the assumption of the Executory Contract or Unexpired Lease and the Cure Amount in the Cure Notice.

40.    For avoidance of doubt, the presence of a contract, lease, or agreement on the Cure Notice does not constitute an admission that such contract, lease, or agreement is an Executory Contract or Unexpired Lease and is not a final determination that it will, in fact, be assumed.

## IV.    Summary of Proposed Dates

41.    To summarize the dates listed above, the Debtors hereby request the Bankruptcy Court establish the following dates:

| Date | Event |
| --- | --- |
| September 27, 2016 | • Service of Solicitation Package  (anticipated date)<br>• Voting Purposes Objection Deadline |
| October 4, 2016 | • Temporary Allowance Motion Deadline |
| October 7, 2016 | • Cure Notice Filing Date |
| October 11, 2016 | • Temporary Allowance Objection Deadline |

| October 18, 2016 | • Temporary Allowance Reply Deadline |
|---|---|
| October 26, 2016 | • Voting Deadline<br>• Plan Objection Deadline<br>• Cure Objection Deadline |
| November 1, 2016 | • Ballot Certification Deadline |
| November 2, 2016 | • Plan Reply Deadline<br>• Cure Reply Deadline |
| November 7, 2016 | • Requested Confirmation Hearing date, subject to the Bankruptcy Court's availability |

**NOTICE**

42.     The Debtors have provided notice of filing of this Motion either by electronic mail, facsimile, or overnight mail to: (i) the U.S. Trustee; (ii) the Debtors' 20 largest unsecured creditors on a consolidated basis; (iii) counsel to the agent for the Debtors' prepetition senior credit facility; (iv) counsel to the steering committee of lenders under the Debtors' prepetition senior credit facility; (v) the U.S. Department of Justice; (vi) counsel to TIFIA Lender; (vii) counsel to the Collateral Agent for the Debtors' prepetition loan agreements; (viii) counsel to TxDOT; and (ix) all parties listed on the Master Service List established in the Chapter 11 Cases. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required. A copy of the Motion is also available on the website of the Debtors' Claims, Noticing, and Balloting Agent, Prime Clerk, LLC at https://cases.primeclerk.com/SH130.

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court grant the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and proper.

Dated:    August 12, 2016

Respectfully submitted,

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

JACKSON WALKER L.L.P.

100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX

By: */s/ Jennifer F. Wertz*
    Patricia B. Tomasco
    State Bar No. 01797600
    (512) 236-2076 – Direct Phone
    (512) 691-4438 – Direct Fax
    Email address: ptomasco@jw.com

    Jennifer F. Wertz
    State Bar No. 24072822
    (512) 236-2247 – Direct Phone
    (512) 391-2147 – Direct Fax
    Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

**EXHIBIT A**

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT,**
**(II) ESTABLISHING SOLICITATION AND TABULATION PROCEDURES,**
**(III) SCHEDULING A CONFIRMATION HEARING, AND**
**(IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR**
<u>**CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN**</u>

Upon the Motion (the "***Motion***")[1] of SH 130 Concession Company, LLC (the

"***Concessionaire***"), and certain of its affiliates, as debtors and debtors in possession (collectively,

the "***Debtors***") for entry of an order, pursuant to section 1121(d) of title 11 of the United States

Code, 11 U.S.C. §§101-1532 (the "***Bankruptcy Code***"), (i) approving the Disclosure Statement,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(ii) establishing solicitation and tabulation procedures, (iii) scheduling a confirmation hearing, and (iv) establishing notice and objection procedures for confirmation of the Debtors' Plan; and upon consideration of the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§157 and 1334, and the *Order of Reference of Bankruptcy Cases and Proceeding*s from the United States District Court for the Western District of Texas, dated October 4, 2013; and in consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b)(2); and venue of this proceeding and the Motion being proper in this Court pursuant to 28 U.S.C. §§1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and having considered statements in support of the Motion at the hearing held before this Court (the "***Hearing***"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and the Bankruptcy Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

**I.      Approval of Disclosure Statement**

2.      The Disclosure Statement is approved as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, and any objections to the Disclosure Statement not otherwise consensually resolved are overruled.

## II.    Procedures for Solicitation of the Plan

### A.    Record Date

3.    The date of the entry of this Order shall be the record date (the "***Record Date***") as provided in Bankruptcy Rule 3017(d) for the purposes of determining the creditors entitled to receive the Solicitation Package.

4.    With respect to any transferred Claim, the transferee will be entitled to receive a Solicitation Package and cast a Ballot on account of such transferred Claim only if (i) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed prior to the Record Date or (ii) the transferee files by the Record Date (a) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.

### B.    Objections to Claims

5.    The deadline for the filing and serving of objections, if any, to Claims ("***Claim Objections***"), the filing of which means that the Claim that is the subject of the Claim Objection will not be allowed to vote on the Plan, shall be **September 27, 2016 at 5:00 p.m. (prevailing U.S. Central Time)** (the "***Voting Purposes Objection Deadline***").  The Debtors' election not to file an objection to a Claim prior to the Voting Purposes Objection Deadline shall not constitute an admission that any Claim shall be allowed or a waiver of any right of the Debtors or any party in interest to object to any Claim after the Voting Purposes Objection Deadline.  The Voting Purposes Objection Deadline is without prejudice to the rights of the Debtors or any other party in interest to object to the amount or allowance of any Claim (including those to which an objection is filed by the Voting Purposes Objection Deadline) for purposes other than voting or to later assert additional objections to Claims that are the subject of a Claim Objection filed prior to the Voting Purposes Objection Deadline.

### C. Temporary Allowance of Claims for Voting Purposes

6.      If a creditor wishes to vote a claim, or portion of a claim, that (i) is subject to a Claim Objection; (ii) is otherwise not permitted to vote pursuant to the terms of the Plan, the Disclosure Statement, or this Order; (iii) the creditor believes is not correctly classified by the Plan; or (iv) is in a different amount from the amount listed on the Ballot issued by the Debtors, then the creditor shall obtain an order of the Bankruptcy Court pursuant to Bankruptcy Rule 3018(a) entered not later than the Voting Deadline (as described below) temporarily allowing the Claim in a specific amount for voting purposes, unless otherwise directed by the Bankruptcy Court.

7.      Any motion for an order temporarily allowing a Claim for voting purposes (a "*Temporary Allowance Motion*") pursuant to Bankruptcy Rule 3018(a) shall be filed according to the following procedures:

(a)     Any Temporary Allowance Motion shall be filed and served on or before **October 4, 2016 at 4:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Motion Deadline*");

(b)     All objections and responses to any Temporary Allowance Motion shall be filed and served on or before **October 11, 2016 at 4:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Objection Deadline*");

(c)     A party filing a Temporary Allowance Motion may file a reply to any objection or response on or before **October 18, 2016 at 12:00 p.m. (prevailing Central Time)** (the "*Temporary Allowance Reply Deadline*"); and

(d)     Any order temporarily allowing Claims or Interests shall be entered on or before the Voting Deadline or as otherwise ordered by the Bankruptcy Court.

8.      Temporary Allowance Motions shall (i) be made in writing; (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; (iii) identify the name of the creditor or other moving party; (iv) identify the Debtor(s) against whom the Claim(s) is asserted; (v) state with particularity the legal and factual bases relied upon for the relief requested in the

Temporary Allowance Motion; and (vi) be filed and served not later than the Temporary Allowance Motion Deadline, and in a manner to be received by the Debtors. Temporary Allowance Motions not compliant with the foregoing shall not be considered by the Bankruptcy Court and shall be deemed denied, except as otherwise ordered by the Bankruptcy Court.

9.      Unless resolved earlier, any Temporary Allowance Motion shall be heard by the Bankruptcy Court as it shall direct. If a Temporary Allowance Motion cannot be heard by the Bankruptcy Court prior to the Voting Deadline, the moving claimant shall be provided with a provisional Ballot and shall be allowed to submit the Ballot on or before the Voting Deadline, which shall be accepted as a provisional vote to accept or reject the Plan, pending a determination of the pending Temporary Allowance Motion by the Bankruptcy Court.

10.     Before or after the filing of a Temporary Allowance Motion, the Debtors and a creditor may stipulate to the amount or classification of its Claim(s), for voting purposes only, pursuant to a stipulation and order in lieu of filing other pleadings by the Debtors or the creditor.

### D.      The Solicitation Packages

11.     The form, content and manner of service of the Solicitation Packages, as set forth in *Exhibit G* to the Motion, are APPROVED in all respects. The Debtors may make conforming and non-substantive changes to the Solicitation Packages at any time.

12.     The Debtors shall complete service of Solicitation Packages by regular U.S. mail solely on Holders of Claims in the Classes entitled to vote on the Plan and the U.S. Trustee within four business days of the entry of this Order on the docket.

13.     The Plan and the Disclosure Statement shall be available at https://cases.primeclerk.com/SH130, where they can be reviewed and/or downloaded without charge.  Moreover, the Debtors shall provide a copy of the Solicitation Package to any party upon request to the Debtors' Claims and Balloting Agent, Prime Clerk LLC ("*Prime Clerk*"), at

4

the following address, telephone number or email address:  SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; sh130ballots@primeclerk.com.

14.      The Debtors are excused from any requirement to re-serve Solicitation Packages to those entities for which the Debtors have only undeliverable addresses.  Failure to attempt to resend Solicitation Packages to entities for which the Debtors have only undeliverable addresses shall not constitute inadequate notice of the Objection Deadline, the Confirmation Hearing, the Voting Deadline or any other matter.

15.      The Debtors shall not be required to provide Solicitation Packages to Non-Voting Classes except upon express request to do so.

### E.      Form of Ballots

16.      The Ballots, substantially in the forms attached to the Motion collectively as *Exhibit C*, including the instructions attached to each Ballot, are APPROVED in all respects. The Debtors may make conforming and non-substantive changes to the Ballots at any time.

### F.      Non-Voting Classes

17.      The Non-Voting Holder Notices, substantially in the forms attached to the Motion collectively as *Exhibit D* are APPROVED in all respects.  The Debtors may make conforming and non-substantive changes to the Non-Voting Holder Notices at any time.

### G.      Voting Deadline for Receipt of Ballots

18.      To be counted as votes to accept or reject the Plan, all Ballots must be properly executed, completed and delivered to Prime Clerk either by (i) regular mail (facilitated by a return envelope provided with each Ballot), (ii) overnight courier or (iii) personal delivery so that, in each case, all Ballots are received by Prime Clerk on or before the Voting Deadline, which shall be **October 26, 2016 at 5:00 p.m. (prevailing Central Time)**. No Ballots may be

submitted by facsimile or electronic mail, and any such Ballots submitted by facsimile or electronic mail shall be neither accepted nor counted.

> **H.**      **Procedures for Vote Tabulation**

19.     The Tabulation Rules, as set forth on ***Exhibit H*** to the Motion, are APPROVED in all respects, and the Debtors are authorized to apply them.

20.     Any creditor seeking to challenge the allowance of its Claim for voting purposes in accordance with the Tabulation Rules shall comply with the Temporary Allowance Motion procedures set forth above.

21.     The Debtors shall certify the voting results by the Ballot Certification Deadline, which shall be **November 1, 2016 at 4:00 p.m. (prevailing Central Time)**.

**III.      The Confirmation Hearing and Related Deadlines**

> **A.**      **The Confirmation Hearing**

22.     The Confirmation Hearing shall be held before this Court, in Courtroom No. 1, at the United States Bankruptcy Court for the Western District of Texas, Austin Division, Homer J. Thornberry Federal Judiciary Building, 903 San Jacinto Blvd., Austin Texas 78701, on **November 7, 2016 at 11:00 a.m. (prevailing Central Time)** or as soon thereafter as possible. The Confirmation Hearing may be continued from time to time without further notice other than a notice filed on the Court's docket or the announcement of the continued date at the Confirmation Hearing or any continued hearing.

> **B.**      **The Confirmation Hearing Notice**

23.     The Confirmation Hearing Notice in substantially the form attached to the Motion as ***Exhibit E*** is hereby APPROVED.   The publication version of the Confirmation Hearing Notice in the form attached to the Motion as ***Exhibit F*** is hereby APPROVED.   The Debtors

may make conforming and non-substantive changes to either version of the Confirmation Hearing Notice at any time.

24. Except as otherwise provided herein with respect to service of the Solicitation Packages, the Debtors shall serve the Confirmation Hearing Notice, by regular U.S. mail, on all claimants and other parties that have filed a notice of appearance in the Chapter 11 Cases.

25. The Debtors shall publish the Confirmation Hearing Notice not later than seven business days following entry of this Order in the national edition of *USA Today* and in the *Austin American-Statesman* and *San Antonio Express News*.

### C.    Plan Objection and Reply Deadlines

26. Plan Objections, if any, must (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim of such party; (iii) state with particularity the basis and nature of such Plan Objection (and, if practicable, a proposed modification to the Plan that would resolve such Plan Objection); (iv) conform to the Bankruptcy Rules and the Local Bankruptcy Rules, and any orders of the Bankruptcy Court; and (v) in accordance with Bankruptcy Rule 3020(b)(1),[1] be filed with the Bankruptcy Court and served on:

(i)    Counsel to the Debtors, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166, Attn: David M. Feldman and Matthew K. Kelsey, Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com;

(ii)    The Office of the United States Trustee, Attn: Deborah A. Bynum and Henry Hobbs, 903 San Jacinto Blvd., Room 230, Austin TX 78701, Email: deborah.a.bynum@usdoj.gov, henry.g.hobbs@usdoj.gov;

(iii)    Counsel to the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP Attn: Gerard Uzzi, Jonathan Green and Mary Doheny 28 Liberty Street, New York, NY 10005-1413, Email: GUzzi@milbank.com, JGreen@milbank.com, MDoheny@milbank.com;

---

[1]    Specifically, Bankruptcy Rule 3020(b)(1) provides that "[a]n objection to confirmation of the plan shall be filed and served on the debtor, the trustee, the proponent of the plan, any committee appointed under the [Bankruptcy] Code, and any other entity designated by the court, within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

(iv)    Counsel to the Administrative Agent, Munsch Hardt Kopf & Harr, P.C. Attn: E. Lee Morris and Kevin M. Lippman 500 N. Akard Street, Suite 3800 Dallas, TX 75201-6659 Email: lmorris@munsch.com, klippman@munsch.com;

(v)    Counsel to the Collateral Agent, Drinker Biddle & Reath LLP Attn: Kristin K. Going and Heath D. Rosenblat, 1500 K Street, NW, Sutie 1100 Washington DC 20005-1209 Email: Kristin.Going@dbr.com, Heath.Rosenblat@dbr.com;

(vi)    The U.S. Department of Justice, Civil Division, Attn: Rodney Morris, P.O. Box 875, Ben Franklin Station, Washington, DC 20044 E-mail: rodney.morris2@usdoj.gov

(vii)    Counsel to TIFIA Lender, Shearman & Sterling LLP Attn: Douglas P. Bartner, 559 Lexington Avenue, New York, NY 10022-6069 Email: dbartner@shearman.com; and

(viii) Counsel to TxDOT, Texas Attorney General's Office Attn: Hal F. Morris & Charlie Shelton Bankruptcy & Collections Division PO Box 12548-MC 008 Austin TX, 7811-2548 Email: hal.morris@texasattorneygeneral.gov, charlie.shelton@texasattorneygeneral.gov.

(collectively, the "***Notice Parties***") so that such Plan Objections are received on or before the Plan Objection Deadline, which shall be **October 26, 2016 at 5:00 p.m. (prevailing U.S. Central Time)**.

27.    Parties in interest shall be permitted to file a brief in support of confirmation of the Plan and reply to any Plan Objections, either separately or by a single, consolidated reply, by not later than the Plan Reply Deadline, which shall be **November 2, 2016 at 5:00 p.m. (prevailing U.S. Central Time)**.

**D.    Procedures as to Proposed Cure Amounts and Assumption or Rejection of Executory Contracts and Unexpired Leases**

28.    The Cure Notice in substantially the form attached to the Motion as ***Exhibit I*** is hereby APPROVED.  The Debtors may make conforming and non-substantive changes to the Cure Notice at any time.

29.     The following procedures are approved for establishing the Cure Amounts for the

Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan:

(a)  A Cure Notice shall be served on the counterparties to all Executory Contracts and Unexpired Leases by **October 7, 2016** (the "***Cure Notice Filing Date***"). The Cure Notice shall include the Cure Amount that the Debtors believe must be paid in order to cure all monetary defaults under each of the Executory Contracts and Unexpired Leases;

(b)  Any party in interest who objects to the assumption of an Executory Contract or Unexpired Lease or disagrees with the Cure Amount must file and serve an objection to (i) Cure Amounts and/or (ii) potential assumption of the Executory Contract or Unexpired Lease under the Plan (a "***Cure Objection***") on or before the Plan Objection Deadline (which deadline may be extended in the sole discretion of the Debtors) ("***Cure Objection Deadline***");

(c)  If, subsequent to the Cure Notice Filing Date, the Debtors amend the list of the Executory Contracts and Unexpired Leases to add an Executory Contract or Unexpired Lease or to reduce any Cure Amount, any Cure Objection to the addition or to the Cure Amount reduction must be filed by parties in interest not later than seven calendar days after service of the amended Cure Notice;

(d)  Any Cure Objection shall be in writing, setting forth with specificity (i) any cure obligations that the objecting party asserts must be cured or satisfied as a condition of assumption of the Executory Contract or Unexpired Lease and/or (ii) any objections to the assumption of the Executory Contracts or Unexpired Leases, together with all documentation supporting the claimed cure amount or objection;

(e)  Any Cure Objection shall be served upon each of the Notice Parties so that the **Cure Objection is actually received by no later than the Cure Objection Deadline**. Any reply to the Cure Objection shall be served and filed no later than the Plan Reply Deadline (the "***Cure Reply Deadline***");

(f)  The Bankruptcy Court shall rule on any disputed Cure Amount(s) or objection to assumption of an Executory Contract or Unexpired Lease at the time of the Confirmation Hearing or such other date and time agreed by the parties or ordered by the Bankruptcy Court; and

(g)  Any counterparty to an Executory Contract or Unexpired Lease who does not file a timely Cure Objection shall be deemed to have waived any objection and to have consented to the assumption of the Executory Contract or Unexpired Lease and the Cure Amount in the Cure Notice.

30.     The Debtors are authorized to take (or refrain from taking) any action and as necessary or appropriate to implement the terms of, and the relief granted in, this Order without seeking further Order of the Bankruptcy Court.

31.     The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

<div align="center">###</div>

PREPARED AND SUBMITTED BY:

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

Patricia B. Tomasco
State Bar No. 01797600
Jennifer F. Wertz
State Bar No. 24072822
Jackson Walker LLP
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000 – Main Phone
(512) 236-2000 – Main Fax
Email address: ptomasco@jw.com
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

## **EXHIBIT B**

## **(Disclosure Statement)**

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL TO THE BANKRUPTCY COURT BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AT THIS TIME.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION OF
SH 130 CONCESSION COMPANY, LLC, *ET AL.*, PURSUANT TO CHAPTER 11
OF THE BANKRUPTCY CODE**

**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
Alan Moskowitz (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com
Email address: AMoskowitz@gibsondunn.com

**JACKSON WALKER L.L.P.**
Patricia B. Tomasco
State Bar No. 01797600
Jennifer F. Wertz
State Bar No. 24072822
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX
Email address: ptomasco@jw.com
Email address: jwertz@jw.com

Dated: August 12, 2016

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY PROVIDE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

THIS DISCLOSURE STATEMENT AND THE RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING OR REJECTING THE PLAN. NO OTHER REPRESENTATIONS ARE AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING THE DEBTORS, THEIR BUSINESS OPERATIONS, THE VALUE OF THEIR ASSETS OR THE VALUES OF THE SECURITIES AND INSTRUMENTS DESCRIBED HEREIN TO BE ISSUED OR BENEFITS OFFERED PURSUANT TO THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, APPENDICES, AND/OR SCHEDULES ATTACHED HERETO, INCORPORATED BY REFERENCE OR REFERRED TO HEREIN, OR ANY OTHER DISCLOSURE STATEMENT OR OTHER DOCUMENT APPROVED FOR DISTRIBUTION BY THE BANKRUPTCY COURT. HOLDERS OF CLAIMS AND/OR INTERESTS SHOULD NOT RELY UPON ANY REPRESENTATIONS MADE OR INDUCEMENTS OFFERED TO SECURE ACCEPTANCE OF THE PLAN OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT.

EACH HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE SHOULD CAREFULLY REVIEW THE PLAN, THIS DISCLOSURE STATEMENT AND THE EXHIBITS TO BOTH DOCUMENTS IN THEIR ENTIRETY BEFORE CASTING A BALLOT. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT ASSUME THAT THERE HAVE BEEN NO CHANGES IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE HEREOF UNLESS SO SPECIFIED.  THE DEBTORS AND THEIR PROFESSIONALS DO NOT UNDERTAKE ANY OBLIGATION, EXPRESS OR IMPLIED, TO UPDATE OR OTHERWISE REVISE ANY PROJECTIONS OR INFORMATION DISCLOSED HEREIN TO REFLECT ANY CHANGES ARISING AFTER THE DATE HEREOF OR TO REFLECT FUTURE EVENTS, EVEN IF ANY ASSUMPTIONS CONTAINED HEREIN ARE SHOWN TO BE IN ERROR.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125(g) OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. ALL PERSONS HOLDING CLAIMS

AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN, THE TERMS OF THE PLAN WILL GOVERN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT WILL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE REORGANIZED DEBTORS, OR ANY OTHER PERSON. EACH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS WITH RESPECT TO ANY MATTERS CONCERNING THIS DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES TO ACCEPT THE PLAN, THE PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY.

**THE DEBTORS' BOARDS OF DIRECTORS HAVE APPROVED THE PLAN AND RECOMMEND THAT THE HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES ENTITLED TO VOTE (CLASSES 3 AND 4) VOTE TO ACCEPT THE PLAN.**

THE DEBTORS INTEND TO OBTAIN CONFIRMATION OF THE PLAN BY THE BANKRUPTCY COURT AND TO CAUSE THE EFFECTIVE DATE TO OCCUR PROMPTLY AFTER CONFIRMATION OF THE PLAN. THERE CAN BE NO ASSURANCE, HOWEVER, AS TO WHEN AND WHETHER CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ACTUALLY WILL OCCUR. THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO MATERIAL CONDITIONS PRECEDENT, SOME OF WHICH MAY NOT BE SATISFIED. THERE IS NO ASSURANCE THAT THESE CONDITIONS WILL BE SATISFIED OR WAIVED.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS AND INTERESTS THAT DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR THAT ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

IF THE RESTRUCTURING OF INDEBTEDNESS CONTEMPLATED BY THE PLAN IS NOT APPROVED AND CONSUMMATED, THERE CAN BE NO ASSURANCE THAT THE DEBTORS WILL BE ABLE TO EFFECTUATE AN ALTERNATIVE FINANCIAL RESTRUCTURING OR SUCCESSFULLY EMERGE FROM THE CHAPTER 11 CASES, AND SOME OR ALL OF THE DEBTORS MAY BE FORCED INTO A LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. AS REFLECTED IN

THE LIQUIDATION ANALYSIS, THE DEBTORS BELIEVE THAT IF THEY ARE LIQUIDATED UNDER CHAPTER 7, THE VALUE OF THE ASSETS AVAILABLE FOR PAYMENT OF CREDITORS WOULD BE SIGNIFICANTLY LOWER THAN THE VALUE OF THE DISTRIBUTIONS CONTEMPLATED BY AND UNDER THE PLAN.

**THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED WITH OR REVIEWED BY, AND THE SECURITIES TO BE ISSUED UNDER THE PLAN WILL NOT HAVE BEEN THE SUBJECT OF A REGISTRATION STATEMENT FILED WITH, THE SECURITIES AND EXCHANGE COMMISSION (THE "*SEC*") UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "*SECURITIES ACT*"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OR FOREIGN COUNTRY UNDER ANY STATE SECURITIES OR "BLUE SKY" LAWS OR UNDER THE LAWS OF ANY FOREIGN COUNTRY. THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SEC OR ANY STATE OR FOREIGN SECURITIES REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY STATE OR FOREIGN SECURITIES REGULATORY AUTHORITY HAS REVIEWED OR APPROVED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY STATE OR OTHER JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.**

THIS DISCLOSURE STATEMENT CONTAINS PROJECTED FINANCIAL INFORMATION REGARDING THE REORGANIZED DEBTORS AND CERTAIN OTHER FORWARD-LOOKING STATEMENTS, ALL OF WHICH ARE BASED ON VARIOUS ESTIMATES AND ASSUMPTIONS. THE DEBTORS' MANAGEMENT PREPARED THE PROJECTIONS WITH THE ASSISTANCE OF THEIR PROFESSIONALS. THE DEBTORS' MANAGEMENT DID NOT PREPARE THE PROJECTIONS IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES ("*GAAP*") OR INTERNATIONAL FINANCIAL REPORTING STANDARDS ("*IFRS*") OR TO COMPLY WITH THE RULES AND REGULATIONS OF THE SEC OR ANY FOREIGN REGULATORY AUTHORITY.

THE PROJECTIONS AND FORWARD-LOOKING STATEMENTS HEREIN ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS, INCLUDING, AMONG OTHERS, THOSE SUMMARIZED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS, AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN. THEREFORE, THE PROJECTED FINANCIAL AND OTHER FORWARD-LOOKING STATEMENTS ARE NOT NECESSARILY INDICATIVE OF THE FUTURE FINANCIAL CONDITION OR RESULTS OF OPERATIONS OF THE REORGANIZED DEBTORS AND SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTORS, THE REORGANIZED DEBTORS, THEIR ADVISORS, OR ANY OTHER

PERSONS THAT THE PROJECTED FINANCIAL CONDITION OR RESULTS CAN OR WILL BE ACHIEVED.

NEITHER THE DEBTORS' INDEPENDENT AUDITORS NOR ANY OTHER INDEPENDENT ACCOUNTANTS HAVE COMPILED, REVIEWED, EXAMINED, OR PERFORMED ANY PROCEDURES WITH RESPECT TO THE FINANCIAL PROJECTIONS AND THE LIQUIDATION ANALYSIS CONTAINED HEREIN, NOR HAVE THEY EXPRESSED ANY OPINION OR ANY OTHER FORM OF ASSURANCE AS TO SUCH INFORMATION OR ITS ACHIEVABILITY.

THE PROJECTIONS SET FORTH HEREIN ARE PUBLISHED SOLELY FOR PURPOSES OF THIS DISCLOSURE STATEMENT. THE PROJECTIONS ARE QUALIFIED IN THEIR ENTIRETY BY THE DESCRIPTION THEREOF CONTAINED IN THIS DISCLOSURE STATEMENT. THERE CAN BE NO ASSURANCE THAT THE ASSUMPTIONS UNDERLYING THE FINANCIAL PROJECTIONS WILL PROVE CORRECT OR THAT THE DEBTORS' OR REORGANIZED DEBTORS' ACTUAL RESULTS WILL NOT DIFFER MATERIALLY FROM THE RESULTS PROJECTED IN THIS DISCLOSURE STATEMENT. SOME ASSUMPTIONS INEVITABLY WILL BE INCORRECT; MOREOVER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE DEBTORS PREPARED THE PROJECTIONS MAY BE DIFFERENT FROM THOSE ASSUMED, OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND THUS THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE PROJECTIONS MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN, HOLDERS OF CLAIMS AND INTERESTS MUST MAKE THEIR OWN DETERMINATIONS AS TO THE REASONABLENESS OF SUCH ASSUMPTIONS AND THE RELIABILITY OF THE PROJECTIONS AND SHOULD CONSULT WITH THEIR OWN ADVISORS.

THE FORWARD-LOOKING STATEMENTS ARE PROVIDED IN THIS DISCLOSURE STATEMENT PURSUANT TO THE SAFE HARBOR ESTABLISHED UNDER THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND SHOULD BE EVALUATED IN THE CONTEXT OF THE ESTIMATES, ASSUMPTIONS, UNCERTAINTIES, AND RISKS DESCRIBED HEREIN.

# TABLE OF CONTENTS

**PAGE**

**I. INTRODUCTION AND SUMMARY OF THE PLAN** ................................................ 1

    A.    Overview of the Plan ................................................ 3

         1.    Overview of the Restructuring ................................................ 3

    B.    Summary of Treatment of Claims and Interests under the Plan ........................... 4

    C.    Voting on the Plan ................................................ 7

    D.    Confirmation and Consummation of the Plan ................................................ 8

         1.    Confirmation Hearing ................................................ 8

         2.    Plan Objection Deadline ................................................ 8

    E.    Plan Supplement ................................................ 9

**II. GENERAL INFORMATION** ................................................ 9

    A.    The Debtors' Prepetition Corporate Structure ................................................ 9

    B.    The Debtors' Business Operations ................................................ 9

    C.    The Debtors' Prepetition Capital Structure ................................................ 10

         1.    Senior Loans ................................................ 10

         2.    Hedging Agreements ................................................ 11

         3.    TIFIA Loans ................................................ 12

         4.    Security Agreement, Pledge Agreement and Collateral Agency Agreement ................................................ 12

         5.    Intercreditor Agreement ................................................ 13

         6.    Trade Debt and Other Unsecured Claims ................................................ 13

**III. EVENTS LEADING TO DECISION TO COMMENCE CHAPTER 11 CASES** ................................................ 13

**IV. THE CHAPTER 11 CASES** ................................................ 14

    A.    The Commencement of the Chapter 11 Cases ................................................ 14

    B.    First Day Relief ................................................ 14

    C.    Use of Cash Collateral ................................................ 14

    D.    Retention of Professionals ................................................ 15

    E.    Bar Date and Schedules ................................................ 15

    F.    Motion to Extend Exclusivity ................................................ 15

    G.    Motion to Extend Time to Assume/Reject Nonresidential Leases ................................................ 16

i

# TABLE OF CONTENTS
## (Cont'd.)

PAGE

H.   DIP Facility ........................................................................................... 16

V.   **SUMMARY OF THE PLAN** ............................................................... **16**

A.   Classification and Treatment under the Bankruptcy Code .................. 17

B.   Treatment of Administrative Claims, Professional Compensation Claims, and Priority Tax Claims Against the Debtors ...................................... 18

    1.   Administrative Claims ................................................................ 18

    2.   Professional Compensation ........................................................ 18

    3.   Priority Tax Claims .................................................................... 19

    4.   Claims in Connection with Debtor-in-Possession Financing .................. 19

    5.   Secured Party Fees ..................................................................... 19

C.   Classification and Treatment of Claims Against and Interests in Debtors .......... 19

    1.   Classification of Claims and Interests ....................................... 19

    2.   Treatment of Claims and Interests ............................................ 20

D.   Special Provision Governing Unimpaired Claims ............................... 23

E.   Acceptance or Rejection of the Plan .................................................. 23

F.   Elimination of Vacant Classes ........................................................... 24

G.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .............................................................................. 24

H.   Controversy Concerning Impairment .................................................. 24

I.   Subordinated Claims .......................................................................... 24

VI.   **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................................................................ **25**

A.   Assumption, Assumption and Assignment and Rejection of Contracts and Unexpired Leases .................................................................. 25

B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases .......... 26

C.   Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 26

D.   Insurance Policies .............................................................................. 27

E.   Modifications, Amendments, Supplements, Restatements, or Other Agreements ....................................................................................... 27

F.   Reservation of Rights ......................................................................... 27

G.   Nonoccurrence of Effective Date ....................................................... 28

H.   Contracts and Leases Entered Into After the Petition Date ................. 28

## TABLE OF CONTENTS
### *(Cont'd.)*

**PAGE**

**VII.   MEANS FOR IMPLEMENTATION OF THE PLAN** ................................................. **28**

 A. Sources Of Consideration For Plan Distributions ................................................. 28

 B. No Substantive Consolidation ................................................................................. 29

 C. Formation of New Holdco; Issuance of Equity Interests ....................................... 29

 D. Continued Organizational Existence and Vesting of Assets in the Reorganized Debtors; Continued Operations ........................................................ 30

 E. Restructuring Transactions ..................................................................................... 31

 F. New Debt Documents .............................................................................................. 32

 G. Sources of Cash for Plan Distributions .................................................................. 32

 H. Governance, Directors and Officers; Employment-Related Agreements and Compensation Programs; Other Agreements ................................................... 33

 I. Section 1145 Exemption ......................................................................................... 35

 J. General Settlement of Claims and Interests ........................................................... 35

 K. Cancellation of Existing Securities and Agreements ............................................. 35

 L. Corporate, Limited Liability Company and Partnership Action ............................ 36

 M. Effectuating Documents; Further Transactions ..................................................... 36

 N. Section 1146 Exemption ......................................................................................... 37

 O. Preservation of Causes of Action ........................................................................... 37

 P. Payment of Certain Fees and Expenses ................................................................. 38

**VIII.   PROVISIONS GOVERNING DISTRIUBTIONS** ..................................................... **38**

 A. Disbursing Agent .................................................................................................... 38

 B. Rights and Powers of Disbursing Agent ................................................................ 38

 C. Delivery of Distributions and Undeliverable or Unclaimed Distributions. .......... 39

 D. Compliance with Tax Requirements ....................................................................... 39

 E. Allocations .............................................................................................................. 39

 F. No Post-Petition Interest on Claims ....................................................................... 40

 G. Setoffs and Recoupment ......................................................................................... 40

 H. Applicability of Insurance Policies ......................................................................... 40

**IX.   SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .................................................................................................................. **40**

 A. Discharge of Claims and Termination of Interests ................................................ 40

 B. Release .................................................................................................................... 41

# TABLE OF CONTENTS
## (*Cont'd.*)

|  |  |  | PAGE |
|---|---|---|---|
| C. | Exculpation | | 42 |
| D. | Injunction | | 43 |
| E. | Protections Against Discriminatory Treatment | | 44 |
| F. | Setoffs | | 44 |
| G. | Recoupment | | 44 |
| H. | Subordination Rights | | 44 |
| I. | Document Retention | | 45 |
| **X.** | **EFFECT OF CONFIRMATION OF THE PLAN** | | **45** |
| **XI.** | **CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN** | | **45** |
| A. | Conditions Precedent to the Confirmation Date | | 45 |
| B. | Conditions Precedent to the Effective Date | | 45 |
| C. | Waiver of Conditions | | 46 |
| D. | Effect of Failure of Conditions | | 46 |
| **XII.** | **RETENTION OF JURISDICTION** | | **47** |
| **XIII.** | **MISCELLANEOUS PROVISIONS** | | **48** |
| A. | Immediate Binding Effect | | 48 |
| B. | Additional Documents | | 48 |
| C. | Payment of Statutory Fees | | 48 |
| D. | Reservation of Rights | | 49 |
| E. | Successors and Assigns | | 49 |
| F. | Disallowed Claims | | 49 |
| G. | Notices | | 49 |
| H. | Term of Injunctions or Stays | | 51 |
| I. | Entire Agreement | | 51 |
| J. | Exhibits | | 51 |
| K. | Nonseverability of Plan Provisions | | 51 |
| L. | Votes Solicited in Good Faith | | 52 |
| M. | Closing of Chapter 11 Cases | | 52 |
| N. | Waiver or Estoppel | | 52 |
| O. | Conflicts | | 52 |
| **XIV.** | **CAUSES OF ACTION** | | **53** |

iv

## TABLE OF CONTENTS
### (Cont'd.)

PAGE

**XV.   FINANCIAL INFORMATION AND DISCLOSURES** ............................................... 53

**XVI.  SOLICITATION AND VOTING PROCEDURES** ...................................................... 53

  A.   The Solicitation Package .............................................................................. 53

  B.   Voting Instructions ....................................................................................... 54

  C.   Voting Tabulation ......................................................................................... 55

**XVII. CONFIRMATION PROCEDURES** ................................................................................ 56

  A.   Confirmation Hearing ................................................................................... 56

  B.   Statutory Requirements for Confirmation of the Plan ................................. 57

    1.   Requirements of Section 1129(a) of the Bankruptcy Code ..................... 57

    2.   Best Interests of Creditors Test/Liquidation Analysis ............................ 58

    3.   Feasibility ................................................................................................ 58

    4.   Acceptance by Impaired Classes ............................................................ 59

    5.   Confirmation Without Acceptance by All Impaired Classes ................... 59

**XVIII. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ................................. 61

  A.   Risk Factors Related to Confirmation, Effectiveness, and Implementation ......... 61

    1.   Parties in Interest May Object to the Debtors' Classification of Claims and Interests ................................................................................ 61

    2.   Failure to Satisfy Vote Requirement ...................................................... 61

    3.   The Debtors May Not Be Able to Secure Confirmation of the Plan ........ 61

    4.   Parties in Interest May Object to the Releases Contained in the Plan ......................................................................................................... 62

    5.   Nonconsensual Confirmation .................................................................. 62

    6.   A Party in Interest May Object to the Amount or Classification of a Claim ....................................................................................................... 63

    7.   Risk of Non-Occurrence of the Effective Date ....................................... 63

    8.   Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan .................................................................................... 63

  B.   Risk Factors Related to the Securities to be Issued under the Plan and Recoveries under the Plan .......................................................................... 63

    1.   The Debtors May Not Be Able to Achieve Their Projected Financial Results or Meet Their Post-Restructuring Debt Obligations ................................................................................................ 64

# TABLE OF CONTENTS
## (Cont'd.)

2.  Estimated Recoveries Are Not Intended to Represent Potential Market Values ............................................................................ 64

3.  Certain Tax Implications Of The Debtors' Bankruptcy And Reorganization May Increase The Tax Liability Of The Reorganized Debtors ...................................................................... 64

4.  Uncertain Trading Market and Uncertain Value ...................... 64

5.  Restrictions on Transfer ........................................................... 65

C.  Risk Factors Related to the Business of SH 130 ................................. 65

1.  Liquidity Risk .......................................................................... 65

2.  Retention of Key Management/employees ............................... 65

3.  Economic Conditions That Are Beyond the Debtors' Control ................. 66

4.  Toll Road Maintenance Risks ................................................... 66

5.  Traffic Risk .............................................................................. 66

6.  Catastrophic Events ................................................................. 66

7.  Information System Risks ......................................................... 66

8.  Extreme Weather Events .......................................................... 66

D.  Miscellaneous Risk Factors and Disclaimers ..................................... 67

E.  Liquidation under Chapter 7 ............................................................... 68

XIX.  **CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES** ............................. **69**

A.  Certain U.S. Federal Income Tax Consequences to U.S. Holders ....................... 70

B.  Certain U.S. Federal Income Tax Consequences to Non-U.S. Holders ............... 70

XX.  **CONCLUSION AND RECOMMENDATION** ............................................. **70**

**PLEASE REVIEW THIS DOCUMENT FOR IMPORTANT INFORMATION REGARDING:**
  * **Description of the Debtors, their Estates, and Background of the Chapter 11 Cases**
  * **Classification and Treatment of Claims and Interests**
  * **Distributions to Holders of Allowed Claims**
  * **Implementation and Execution of the Plan**
  * **Treatment of Contracts and Leases and Procedures to Assert Rejection Claims**

**AND IMPORTANT DATES:**
  * **Date to Determine Record Holders of Claims and Equity Interests: [__]**
  * **Deadline to Submit Ballots: [__]**
  * **Deadline to Object to Plan Confirmation: [__]**
  * **Hearing on Plan Confirmation: [__]**
  * **Cure Notice Filing Date: [__]**

## I.   INTRODUCTION AND SUMMARY OF THE PLAN

SH 130 Concession Company, LLC ("***SH 130***") operates and maintains segments five and six (the "***Toll Road***") of Texas State Highway 130 ("***State Highway 130***") in partnership with the Texas Department of Transportation ("***TxDOT***"). The Concession Agreement, SH 130 Segments 5 and 6 Facility, dated March 22, 2007, between SH 130 and TxDOT governs SH 130's operation of the Toll Road. The Concession Agreement, together with the Toll Road Lease, dated March 22, 2007 (the "***Toll Road Lease***"), and other concession documents with TxDOT represent SH 130's most substantial asset.

SH 130 together with its affiliated debtors, Zachry Toll Road – 56 LP, and Cintra TX 56 LLC (collectively, the "***Debtors***") submit this disclosure statement (including all exhibits thereto, as may be amended, supplemented, or modified, the "***Disclosure Statement***") pursuant to section 1125(b) of the Bankruptcy Code, to Holders of Claims and Interests for the purpose of soliciting acceptances of the *Joint Plan of Reorganization of SH 130 Concession Company, LLC et al. Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of August 12, 2016 (including all exhibits thereto, as may be amended, supplemented, or modified, the "***Plan***"). The purpose of this Disclosure Statement is to disclose information adequate to enable Holders of Claims and Interests to arrive at a reasonably informed decision in exercising the right to vote on the Plan. The Plan has been Filed with the United States Bankruptcy Court for the Western District of Texas (the "***Bankruptcy Court***"), and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan. A copy of the Plan is attached hereto as <u>Exhibit A</u>. All capitalized terms used within this Disclosure Statement which are not defined herein shall have the meanings set forth in the Plan.

Attached as exhibits to this Disclosure Statement are copies of the following documents: (i) the Plan (<u>Exhibit A</u>); (ii) the Liquidation Analysis (<u>Exhibit B</u>), which sets forth estimated recoveries in a chapter 7 liquidation of the Debtors, on a consolidated basis, as compared to

estimated recoveries under the Plan; (iii) the Projections (<u>Exhibit C</u>), which set forth the analysis and related financial projections showing that, after the Effective Date, the Debtors will be able to fund their ongoing business and debt service obligations and will likely not require further financial reorganization; (iv) the Monthly Operating Report for _____ 2016 (<u>Exhibit D</u>); and (v) a non-final form of the implementation memorandum (<u>Exhibit E</u>), describing the restructurings, transfers, or other corporate transactions that the Debtors determine to be necessary or appropriate to effect the restructuring contemplated by the Plan in compliance with the Bankruptcy Code and applicable law and, to the maximum extent possible, in a tax efficient manner. In addition, for those Holders of Claims entitled to vote under the Plan, a Ballot (together with voting instructions) for the acceptance or rejection of the Plan is separately enclosed.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history, the rationale for the Debtors' decision to seek chapter 11 protection, significant events that have occurred or that are expected to occur during the Chapter 11 Cases, and the anticipated organization, operations, and liquidity of the Reorganized Debtors upon successful emergence from chapter 11. This Disclosure Statement also describes (i) certain terms and provisions of the Plan, (ii) certain alternatives to the Plan, (iii) certain effects of confirmation of the Plan, (iv) certain risk factors associated with the Plan, (v) the securities to be issued in connection with the Plan, and (vi) the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders entitled to vote under the Plan must follow for their votes to be counted.

FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS, APPENDICES, AND SCHEDULES HERETO AND THERETO IN THEIR ENTIRETY. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN IS CONTROLLING. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE TERMS OF THE CONFIRMATION ORDER, THE CONFIRMATION ORDER IS CONTROLLING.

THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERIES TO THE DEBTORS' CREDITORS AND THE BEST POSSIBLE PROSPECT FOR THE DEBTORS' SUCCESSFUL REORGANIZATION. THE DEBTORS THEREFORE BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF EACH AND EVERY CLASS OF CREDITORS AND URGE ALL HOLDERS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.

A. **OVERVIEW OF THE PLAN**

1.      **Overview of the Restructuring**

As described in more detail below, the Plan provides for, among other things, (i) a comprehensive restructuring of the Debtors' pre-bankruptcy financial debt obligations, (ii) payment in full or reinstatement of unsecured trade creditors' claims, (iii) the cancellation of all existing equity of SH 130, and (iv) the entry into the Exit Facility. The key components of the Plan are as follows:

- Payment in full, in Cash, of all Administrative Claims, Professional Compensation Claims and Priority Tax Claims.

- Holders of Allowed Other Priority Claims, which include Claims entitled to priority payment under section 507(a) of the Bankruptcy Code, will each receive Cash in an amount equal to the unpaid portion of their Claims.

- Holders of Allowed Other Secured Claims, which include Claims that are Secured, other than the Pre-Petition Secured Claims, will receive the following treatment at the option of the Reorganized Debtors: (i) such Allowed Other Secured Claim shall be Reinstated; (ii) payment in full in Cash; (iii) satisfaction of such Allowed Other Secured Claim by delivering the collateral securing such Claim and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

- Holders of Allowed Priority Lender Claims, which means collectively: (i) all fees due and payable to the First Lien Lenders, the Hedging Banks, and TIFIA, other than the Secured Party Fees, (ii) all accrued and unpaid interest due and payable in respect of the Senior Loans and the TIFIA Loans, and (iii) all Hedging Obligations due and payable to the Hedging Banks, will receive, on the Effective Date, New Senior Debt in the face amount equal to the Allowed amount of such Holders' Priority Lender Claim.

- Holders of Allowed Senior Secured Claims, which means the Allowed Claims of (i) the First Lien Lenders, including any and all unreimbursed letter of credit disbursements related to the Senior Loans; (ii) the Hedging Banks; (iii) TIFIA; (iv) the Collateral Agent; and (v) the Administrative Agent, to the extent these are not Priority Lender Claims, will receive on the Effective Date their Pro Rata share (based on the face amount of the Allowed amount of such Holder's Senior Secured Claim) of the following: (i) the New Senior Debt (remaining after the amounts allocated to the Holders of the Priority Lender Claims); (ii) 100% of the New PIK Notes; and (iii) 100% of the New Equity Interests.

- Holders of Allowed General Unsecured Trade Claims will receive, at the option of the Reorganized Debtors: (i) payment in full in Cash of the Allowed amount of such Allowed General Unsecured Trade Claim; (ii) Reinstatement of such Allowed General Unsecured Trade Claim; or (iii) such other treatment rendering such Allowed General Unsecured Trade Claim Unimpaired.

- Holders of Other General Unsecured Claims will not receive any distributions or retain any property and such Claims will be cancelled and extinguished.

- Holders of Equity Interests will not receive any distributions or retain any property, and such Interests will be cancelled.

As noted above, the Plan provides for the entry into the Exit Facility. The Exit Facility will provide the necessary liquidity on the Effective Date to: (i) make payments under the Plan, including repayment of the DIP Facility, (ii) make payments required by TxDOT pursuant to the Concession Agreement under the Plan, and (iii) satisfy working capital needs.

Under the Plan, SH 130 seeks to assume on the current terms the Concession Agreement, the Toll Road Lease, and all other concession agreements with TxDOT relating to operation of the Toll Road. In connection with such assumption, SH 130 will pay all required cure costs agreed to by the parties or as determined by the Court.

The Debtors believe that the proposed restructuring under the Plan is favorable for all creditors because it achieves a comprehensive restructuring of the Debtors' pre-bankruptcy financial debt obligations and eliminates potential deterioration of value that could otherwise result from a protracted and contentious bankruptcy case. The restructuring under the Plan provides a fair and reasonable path for an expeditious emergence from bankruptcy and the preservation of the ongoing business.

## B.  SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Plan organizes the Debtors' creditor and equity constituencies into groups called "Classes." For each Class, the Plan describes: (i) the underlying Claim or Interest; (ii) the recovery available to the Holders of Claims or Interests in that Class under the Plan; (iii) whether the Class is Impaired or Unimpaired under the Plan; (iv) the form of consideration, if any, that such Holders will receive on account of their respective Claims or Interests, and (v) whether each Class is entitled to vote to accept or reject the Plan.

THE FOLLOWING TABLE PROVIDES A SUMMARY OF THE CLASSIFICATION, DESCRIPTION, AND TREATMENT OF CLAIMS AND INTERESTS AND THE PROJECTED RECOVERIES UNDER THE PLAN. THIS INFORMATION IS PROVIDED IN SUMMARY FORM BELOW FOR ILLUSTRATIVE PURPOSES ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS OF THE PLAN. **THE PROJECTED RECOVERIES SET FORTH BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.** REFERENCE SHOULD BE MADE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS. ACTUAL ALLOWED CLAIM AMOUNTS MAY DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS.

**SUMMARY OF TREATMENT AND PROJECTED RECOVERIES**

| Class | Type of Claim or Interest | Treatment of Claim/Interest | Projected Recovery |
|---|---|---|---|
| **Unclassified** | Administrative Claims | Each Allowed Administrative Claim shall be paid in full in Cash. | 100% |
| **Unclassified** | Priority Tax Claims | Each Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code, or, at the Debtors' election, upon notice to the Holder of an Allowed Priority Tax Claim no later than five days before the Plan Objection Deadline, in accordance with the terms set forth in section 1129(a)(9)(A) or 1129(a)(9)(B) of the Bankruptcy Code. | 100% |
| **Class 1** | Other Priority Claims | Class 1 is Unimpaired by the Plan.  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Other Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full in Cash of the amount of such Holder's Allowed Other Priority Claim either: (i) on the Effective Date, or as soon as reasonably practicable thereafter, or (ii) if the Other Priority Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Other Priority Claim is Allowed by Final Order, or as soon as reasonably practicable thereafter. | 100% |
| **Class 2** | Other Secured Claims | Class 2 is Unimpaired by the Plan. Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Other Secured Claim, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive the following treatment at the option of the Reorganized Debtors:  (i) such Allowed Other Secured Claim shall be Reinstated; (ii) payment in full (in Cash) of such Allowed Other Secured Claim; (iii) satisfaction of such Allowed Other Secured Claim by delivering the collateral securing such Allowed Other Secured Claim and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code. | 100% |

| Class | Type of Claim or Interest | Treatment of Claim/Interest | Projected Recovery |
|-------|---------------------------|------------------------------|--------------------|
| **Class 3** | Priority Lender Claims | Class 3 is Impaired by the Plan. Except to the extent that a Holder of an Allowed Priority Lender Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Lender Claim, each such Holder shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV of the Plan, New Senior Debt in the face amount equal to the Allowed amount of such Holders' Priority Lender Claim. | [__]% |
| **Class 4** | Senior Secured Claims | Class 4 is Impaired by the Plan.  Except to the extent that a Holder of an Allowed Senior Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Secured Claim, each such Holder thereof shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV of the Plan, its Pro Rata share (based on the face amount of the Allowed amount of such Holder's Senior Secured Claim) of the following: (i) the New Senior Debt (remaining after the amounts allocated to the Holders of the Priority Lender Claims, as described in Class 3 above); (ii) 100% of the New PIK Notes; and (iii) 100% of the New Equity Interests. | [__]% |
| **Class 5** | General Unsecured Trade Claims | Class 5 is Unimpaired by the Plan. Except to the extent that a Holder of an Allowed General Unsecured Trade Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Trade Claim, each such Holder shall receive, at the option of the Reorganized Debtors: (i) payment in full in Cash of the Allowed amount of such Allowed General Unsecured Trade Claim; (ii) Reinstatement of such Allowed General Unsecured Trade Claim; or (iii) such other treatment rendering such Allowed General Unsecured Trade Claim Unimpaired. | 100% |
| **Class 6** | Other General Unsecured Claims | Class 6 is Impaired by the Plan. On the Effective Date, all Other General Unsecured Claims shall be cancelled and extinguished.  Holders of Other General Unsecured Claims shall not receive any distribution pursuant to the Plan | 0% |

| Class | Type of Claim or Interest | Treatment of Claim/Interest | Projected Recovery |
|-------|---------------------------|------------------------------|--------------------|
| **Class 7** | Existing Equity Interests | Class 7 is Impaired by the Plan.  On the Effective Date, subject to the provisions of Article IV of the Plan, all Existing Equity Interests shall be cancelled and extinguished.  Holders of Existing Equity Interests shall not receive any distribution or retain any property pursuant to the Plan. | 0% |

## C.   VOTING ON THE PLAN

Certain procedures will be used to collect and tabulate votes on the Plan (the "***Voting Instructions***"), as set forth on each ballot (a "***Ballot***") and as summarized in Section XVI.B. of this Disclosure Statement, entitled "Voting Instructions." Readers should carefully read the Voting Instructions on each Ballot as well as the summary in Section XVI.B. Only Holders of Claims in Classes 3 and 4 of the Plan (together, the "***Voting Classes***"), are entitled to vote on the Plan. Holders of all other Classes of Claims and Interests are either conclusively presumed to accept the Plan because they are Unimpaired or deemed to reject.

**The Voting Deadline is [].00 [].m., prevailing Central Time, on [_____], 2016**. To be counted as votes to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered such that it is actually received on or before the Voting Deadline by Prime Clerk LLC (the "***Claims and Balloting Agent***") as follows:

---

**DELIVERY OF BALLOTS**

**IF YOU ARE A HOLDER OF A CLAIM IN CLASS 3 OR 4 YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND BALLOTING AGENT BY THE VOTING DEADLINE, WHICH IS [_]:00 P.M., PREVAILING CENTRAL TIME, ON [_____, 2016], AS FOLLOWS:**

**SH 130 Ballot Processing**
**c/o Prime Clerk LLC**
**830 Third Avenue, 3rd Floor, New York, NY 10022**

---

**PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT REGARDING ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS.**

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINES DETAILED HEREIN WILL NOT BE COUNTED EXCEPT IN THE DEBTORS' DISCRETION**

**ANY BALLOT RECEIVED BY THE APPLICABLE VOTING DEADLINE BUT OTHERWISE NOT IN COMPLIANCE WITH THE VOTING INSTRUCTIONS WILL**

---

---
**NOT BE COUNTED EXCEPT IN THE DEBTORS' SOLE DISCRETION**
---

**D.      CONFIRMATION AND CONSUMMATION OF THE PLAN**

Section 1128(a) of the Bankruptcy Code requires a bankruptcy court, after notice, to hold a hearing on confirmation of a plan filed under chapter 11 of the Bankruptcy Code. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

### 1.      Confirmation Hearing

**The Confirmation Hearing will commence on [_____], 2016 at [___]:00 [_].m. (Prevailing U.S. Central Time)**, in the United States Bankruptcy Court for the Western District of Texas, Homer J. Thornberry Federal Building, 903 San Jacinto Blvd., Austin, Texas 78701. The Confirmation Hearing may be continued from time to time without further notice other than a continuation announced in open court or a notice of continuation filed with the Bankruptcy Court and served on the Persons specified in Bankruptcy Rule 2002, all Persons who have requested notice in these Chapter 11 Cases, and the Persons who have filed objections to the Plan ("*Plan Objections*"), without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

### 2.      Plan Objection Deadline

**The Plan Objection Deadline is [_]:00 [].m. (Prevailing U.S. Central Time) on [_____], 2016**. All Plan Objections must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the confirmation hearing notice that was approved by the Disclosure Statement Approval Order (the "*Confirmation Hearing Notice*"), so as to be received on or before the Plan Objection Deadline. The Debtors believe that the Plan Objection Deadline will afford the Bankruptcy Court, the Debtors and other parties in interest reasonable time to consider the Plan Objections prior to the Confirmation Hearing.

THE BANKRUPTCY COURT MAY NOT CONSIDER PLAN OBJECTIONS UNLESS THEY ARE TIMELY SERVED AND FILED BY THE PLAN OBJECTION DEADLINE IN COMPLIANCE WITH THE DISCLOSURE STATEMENT APPROVAL ORDER.

Any questions regarding (i) voting procedures, (ii) the Solicitation Package, (iii) the amount of a Claim, or (iv) a request for an additional copy of the Plan, Disclosure Statement, or any exhibits to such documents should be directed to:

**Prime Clerk LLC**
**Telephone: (855) 252-4068**
**Email: sh130ballots@primeclerk.com**

**Plan and Disclosure Statement can also be accessed online at
https://cases.primeclerk.com/sh130**

### E.    PLAN SUPPLEMENT

The Debtors will file certain documents that provide more details about implementation of the Plan in the Plan Supplement, which will be filed with the Bankruptcy Court no later than 10 days before the commencement of the Confirmation Hearing (or such later date as may be approved by the Bankruptcy Court). The Debtors will serve a notice that will inform all parties that the Plan Supplement was filed, list the information included therein, and explain how copies of the Plan Supplement may be obtained. The Plan Supplement will be subject to the consent of the Required Consenting Senior Lenders. Holders of Claims entitled to vote to accept or reject the Plan shall not be entitled to change their vote based on the contents of the Plan Supplement after the Voting Deadline. The Plan Supplement will include:

a) Corporate Structure and governance documents for Reorganized SH 130
b) The New PIK Notes
c) The Exit Facility
d) The New Senior Debt
e) Definitive documents with respect to the New Equity Interests

## II.    GENERAL INFORMATION

### A.    THE DEBTORS' PREPETITION CORPORATE STRUCTURE

SH 130, a Delaware limited liability company, was formed in 2007 by affiliates of Cintra Infraestructuras, S.A. (f/k/a Cintra Concesiones de Infraestructuras de Transporte, S.A.) and Zachry American Infrastructure – 56 LLC. SH 130 was formed to finance, develop, design, construct, operate, and maintain the Toll Road in partnership TxDOT. SH 130's headquarters are located in Buda, Texas.

SH 130's affiliated debtors, Zachry Toll Road – 56 LP and Cintra TX 56 LLC, are holding companies that collectively hold the equity interests in SH 130. Pursuant to that certain Members Pledge Agreement, dated as of March 7, 2008, among SH 130, as borrower, Zachry Toll Road – 56 LP and Cintra TX 56 LLC, as members, and Wells Fargo Bank, National Association, as collateral agent (subsequently assigned to Deutsche Bank Trust Company Americas) (the "*Pledge Agreement*"), Zachry Toll Road – 56 LP and Cintra TX 56 LLC pledged a continuing first priority lien and security interest in their equity of SH 130. Zachry Toll Road – 56 LP and Cintra TX 56 LLC have no operations.

### B.    THE DEBTORS' BUSINESS OPERATIONS

On June 28, 2006, SH 130's investors reached a $1.3 billion agreement with the State of Texas to finance, develop, design, construct, operate, and maintain the Toll Road, at no cost to the State of Texas. In 2007, the Debtors were formed to implement these plans with respect to the Toll Road in partnership with TxDOT. State Highway 130 is a component of the Central Texas Turnpike System, and runs in a 91-mile corridor commencing north and east of Austin and

ending east of San Antonio. The Toll Road portion of State Highway 130 forms a 41-mile link from Mustang Ridge, Texas through Travis, Caldwell, and Guadalupe counties to Interstate 10 near Seguin, Texas.

Construction of the Toll Road began in April 2009, and created more than 3,600 jobs and engaged more than 150 Texas-based companies. The Toll Road opened to traffic on October 24, 2012, and provides a fast and convenient highway for commuters and long distance travelers. The posted speed limit on the Toll Road's main lanes, as decided by the State of Texas, is 85 miles per hour–the highest posted speed limit in the United States. Throughout the Toll Road, drivers enjoy the benefits of "open road tolling," whereby tolls are assessed electronically at certain points along the Toll Road without the use of toll-booths, enabling motorists to drive the entire 41-mile Toll Road at highway speeds without having to slow down or stop for payment.

The key driver of SH 130's profitability is traffic volume on the Toll Road, as the Toll Road generates revenue by the assessment of tolls in exchange for the use of the road. SH 130 and TxDOT are parties to the Concession Agreement. Pursuant to the Concession Agreement, SH 130 has the exclusive right to (i) impose tolls upon the Toll Road, (ii) establish, modify and adjust toll rates subject to a maximum amount as set forth in the Concession Agreement, (iii) receive toll amounts, and (iv) subject to TxDOT's right to perform toll handling, collection, and enforcement services, enforce and collect tolls. SH 130 also has exclusive rights to all Toll Revenues (as defined in the Concession Agreement but excluding Video Trip Toll Premiums (as defined in the Concession Agreement)), subject to TxDOT's right to share in a percentage thereof.

## C.  THE DEBTORS' PREPETITION CAPITAL STRUCTURE

SH 130's capital structure consists of (i) senior secured debt in the form of (a) private loans, (b) certain obligations arising from interest rate hedging arrangements, and (c) loans made by the United States Department of Transportation ("*USDOT*") under the Transportation Infrastructure Finance and Innovation Act of 1998 ("*TIFIA*"), and (ii) other miscellaneous unsecured debt. As of the Petition Date, SH 130's total consolidated lender debt (excluding trade debt but including amounts owing to USDOT under TIFIA) consisted of an aggregate principal amount of approximately $1.272 billion, plus accrued interest, fees, expenses, charges, and other obligations (including swap obligations) incurred in connection therewith. SH 130 is indebted under the following prepetition credit arrangements:

### 1.  Senior Loans

Pursuant to that certain Initial Senior Loan Agreement, dated as of March 7, 2008 (as amended, the "*Senior Loan Agreement*"), among SH 130, as borrower, lenders from time-to-time party thereto (collectively, the "First Lien Lenders"), BNP Paribas (f/k/a Fortis Bank S.A./N.V., UK Branch) ("*BNP Paribas*"), as Administrative Agent (in such capacity, the "*Administrative Agent*") for the First Lien Lenders, Banco Santander, S.A., New York Branch as Fronting Bank, and the mandated lead arrangers party thereto, the First Lien Lenders provided to SH 130 a first lien secured credit facility of up to $720,750,000 in aggregate principal amount of term loan commitments (the "*Senior Loans*"). The Senior Loans consist of three tranches, each with a different availability period: (i) Facility A, totaling $685,750,000 in aggregate

commitments, was available to SH 130 through the Toll Road construction period; (ii) Facility B, totaling $35,000,000 in aggregate commitments, is available from the service commencement date to the 10th anniversary of the effective date of the Senior Loan Agreement; and (iii) Facility C, totaling $29,100,000 in aggregate commitments, is available based on certain events relating to the letter of credit issued in favor of TxDOT in connection with the project until the 10th anniversary of the effective date of the Senior Loan Agreement. The Senior Loans mature on the last business day of February, 2038 and interest thereunder is paid semi-annually, currently at a rate of LIBOR plus 1.65% per annum.

As of the Petition Date, SH 130 was indebted and liable to the Administrative Agent and First Lien Lenders in the aggregate principal amount of approximately $720,750,000, plus accrued interest, fees, expenses, charges, and all other obligations incurred in connection therewith to the extent provided in the Senior Loan Agreement (the "***Senior Lender Secured Claims***").

## 2. Hedging Agreements

To hedge interest rate risk, SH 130 is party to the following swap agreements: (i) that certain ISDA Master Agreement between Caixa – Banco de Investimento, S.A. (in such capacity, the "***Caixa Hedging Bank***") and SH 130 dated as of March 7, 2008 (together with its Schedule and Confirmation thereto (as each such term is defined therein), the "***Caixa Swap Agreement***"), (ii) that certain ISDA Master Agreement between Espírito Santo, plc, as successor to Banco Espírito Santo, S.A., New York Branch (in such capacity, the "***Banco Espírito Hedging Bank***") and SH 130 dated as of March 7, 2008 (together with its Schedule and Confirmation thereto (as each such term is defined therein), the "***Banco Espírito Swap Agreement***"), (iii) that certain ISDA Master Agreement between Bankia S.A., as successor to Caja de Ahorros y Monte de Piedad de Madrid Miami Agency (in such capacity, the "***Bankia Hedging Bank***") and SH 130 dated as of March 7, 2008 (together with its Schedule and Confirmation thereto (as each such term is defined therein), the "***Bankia Swap Agreement***"), (iv) that certain ISDA Master Agreement between Fortis Bank SA Sucursal en España (in such capacity, the "***Fortis Hedging Bank***") and SH 130 dated as of March 7, 2008 (together with its Schedule and Confirmation thereto (as each such term is defined therein), the "***Fortis Swap Agreement***"), and (v) that certain ISDA Master Agreement between Banco Santander, S.A. (in such capacity, the "***Santander Hedging Bank***," and together with the Caixa Hedging Bank, the Banco Espirito Hedging Bank, the Bankia Hedging Bank, and the Fortis Hedging Bank, the "***Hedging Banks***," and collectively with the First Lien Lenders, the "***Senior Lenders***") and SH 130 dated as of March 7, 2008 (together with its Schedule and Confirmation thereto (as each such term is defined therein), the "***Santander Swap Agreement***," and together with the Caixa Swap Agreement, the Banco Espirito Swap Agreement, the Bankia Swap Agreement and the Fortis Swap Agreement, the "***Hedging Agreements***").

The Hedging Banks exercised their early termination rights under their respective Hedging Agreements on March 9, 2016. The Hedging Banks have claims against SH 130 arising from the Hedging Agreement Obligations collectively in the amount of approximately $376,875,000 (the "***Hedging Agreement Obligations***").

11

### 3.  TIFIA Loans

The Transportation Infrastructure Finance and Innovation Act (TIFIA) program provides Federal credit assistance in the form of direct loans, loan guarantees, and standby lines of credit to finance surface transportation projects of national and regional significance. TIFIA credit assistance provides improved access to capital markets, flexible repayment terms, and potentially more favorable interest rates than can be found in private capital markets for similar instruments. TIFIA can help advance qualified, large-scale projects that otherwise might be delayed or deferred because of size, complexity, or uncertainty over the timing of revenues.  Pursuant to that certain TIFIA Loan Agreement, dated as of March 7, 2008 (the "***TIFIA Agreement***," and together with the Senior Loan Agreement, the "***Prepetition Loan Agreements***"), between SH 130 and the USDOT, acting by and through the Federal Highway Administrator ("***TIFIA*** ," and together with the Senior Lenders, the "***Prepetition Lenders***"), TIFIA provided a subordinated term loan credit facility of up to $430,000,000 (the "***TIFIA Loans***"). The TIFIA Loans mature on June 30, 2047, and interest is payable semi-annually at a rate of 4.46% per annum. Under the TIFIA Agreement, the first interest payment is scheduled for June 2017 and principal repayments are scheduled to begin in June 2018.

As of the Petition Date, SH 130 was indebted and liable to TIFIA in the principal amount, including interest capitalized through December 31, 2015, of approximately $550,875,000, plus accrued interest, fees, expenses, charges, and all other obligations incurred in connection therewith to the extent provided in the TIFIA Agreement (the "***TIFIA Claims***," and together with the Senior Lender Secured Claims, the "***Prepetition Obligations***").

### 4.  Security Agreement, Pledge Agreement and Collateral Agency Agreement

To secure the obligations under the Prepetition Loan Agreements, SH 130 granted Deutsche Bank Trust Company Americas (as successor to Wells Fargo Bank, National Association), as collateral agent (in such capacity, the "***Collateral Agent***"), first-priority liens (the "***Prepetition Liens***") upon and in the "Collateral" (the "***Security Agreement Collateral***") as defined in that certain Security Agreement between SH 130, as borrower, and the Collateral Agent, dated as of March 7, 2008 (the "***Security Agreement***").

As stated above, pursuant to the Pledge Agreement, SH 130's affiliated debtors, Cintra TX 56 LLC and Zachry Toll Road–56 LP pledged, in support of SH 130's secured obligations under the Prepetition Loan Agreements, all Member Collateral (as defined therein) to the Collateral Agent (the "***Pledge Agreement Collateral***," and together with the Security Agreement Collateral, the "***Prepetition Collateral***").

Pursuant to that certain Collateral Agency and Account Agreement by and among the Collateral Agent, SH 130, the Administrative Agent, the Hedging Banks, and TIFIA (the "***Collateral Agency Agreement***"), the Collateral Agent acts as the secured party under the Secured Financing Documents (as defined in the Collateral Agency Agreement) for the benefit of the Administrative Agent and the Prepetition Lenders (collectively with the Collateral Agent, the "***Senior Secured Parties***").

12

### 5. Intercreditor Agreement

Prior to the Petition Date, BNP Paribas, as instructing agent, TIFIA, and the Collateral Agent entered into that certain Subordination and Intercreditor Agreement, dated as of March 7, 2008 (the "*ICA*"), which addresses the respective rights, interests, obligations, priority, and positions of the Senior Lenders and TIFIA with respect to the Prepetition Collateral. Pursuant to the ICA, the liens securing the TIFIA Agreement were originally subordinated to the liens securing the Senior Loan Agreement. However, as a result of the commencement of the Chapter 11 Cases, by operation of applicable non-bankruptcy law and the ICA, the lien and payment priority of the obligations arising under the TIFIA Agreement were *pari passu* with the obligations arising under the Senior Loan Agreement as of the Petition Date.

### 6. Trade Debt and Other Unsecured Claims

SH 130 has approximately $1.3 million in scheduled, unsecured trade debt and other general unsecured debt as of the date hereof. The unsecured trade debt arose from the provision of goods and services necessary for the operation of SH 130's business.

### III. EVENTS LEADING TO DECISION TO COMMENCE CHAPTER 11 CASES

Since its inception, a number of factors have coalesced that significantly strained SH 130's ability to continue to service its outstanding indebtedness and, ultimately, led to the Debtors' filing of the Chapter 11 Cases. Those events include the worldwide economic crisis that commenced in 2007—which affected nearly every segment of the United States' economy—and the concomitant negative impact on projected traffic volumes has led to revenues being significantly below levels projected when construction of the Toll Road was financed. These circumstances, coupled with SH 130's unsuccessful attempts to implement an out-of-court restructuring and SH 130's potential defaults under the Senior Loans and Hedging Agreements, resulted in the commencement of these Chapter 11 Cases to maximize the value of the Toll Road for all stakeholders.

The key driver of profitability of the Toll Road is traffic volume, as the Toll Road generates revenue for SH 130 by the collection of tolls in exchange for the use of the road. The general slowdown of the global economy resulted in, among other things, substantially less traffic through the Toll Road than SH 130 had initially projected. The Toll Road was designed to alleviate traffic congestion on the Interstate 35 corridor between San Antonio and Austin. A sharp decrease in economic activity—and corresponding decrease in commercial traffic resulting therefrom—reduced traffic congestion on Interstate 35 (which does not charge tolls), thereby reducing the need for motorists to pay to use the Toll Road as a traffic by-pass.

As a result of the unexpectedly low traffic volumes, the Toll Road's revenue projections are also significantly below the original levels projected when the Debtors financed the construction of the Toll Road. SH 130 spent significant time and resources in an effort to increase the number of users of the Toll Road. While such efforts have yielded some dividends and SH 130 is able to meet its day-to-day operational costs, absent a restructuring of SH 130's obligations under the Senior Loans, the Hedging Agreement, and TIFIA Loans, SH 130's revenue will not generate sufficient liquidity to satisfy its debt servicing obligations.

Prior to the filing, the Debtors negotiated in good faith with the Senior Secured Parties regarding a global resolution to restructure the outstanding debt. Additionally since the commencement of the Chapter 11 Cases, the Debtors have continued to coordinate with all their key creditor constituencies regarding a consensual resolution and restructuring of the outstanding debt.

## IV.    THE CHAPTER 11 CASES

### A.    THE COMMENCEMENT OF THE CHAPTER 11 CASES

On March 2, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court (the "***Chapter 11 Cases***"). The Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b), for administrative purposes only, under Case No. 16-10262 in the Bankruptcy Court for the Western District of Texas, before the Honorable Tony M. Davis, United States Bankruptcy Judge. The Debtors are continuing to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

### B.    FIRST DAY RELIEF

Concurrent with the filing of their chapter 11 petitions, the Debtors Filed several "first-day" applications and motions (collectively, the "***First Day Pleadings***") with the Bankruptcy Court. The First Day Pleadings, as set forth more fully therein, were intended to minimize the adverse effects of the Chapter 11 Cases on the Debtors and were necessary to enable them to operate effectively as chapter 11 debtors in possession. Pursuant to the First Day Pleadings, the Debtors sought and obtained the approval of the Bankruptcy Court to, among other things, (i) jointly administer the Chapter 11 Cases for procedural purposes only; (ii) establish adequate assurance procedures with respect to their utility providers; (iii) maintain prepetition insurance policies and pay or honor prepetition obligations related thereto; (iv) pay certain prepetition wages, salaries, commissions, and other accrued compensation and continue certain employee benefits and programs; (v) continue using their prepetition centralized cash management system and bank accounts and business forms; and (vi) pay certain materialmen and mechanic contractors. For additional information with respect to the First Day Pleadings and related relief sought by the Debtors at the beginning of the Chapter 11 Cases, please consult the *Declaration of Paul Harris in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18].

### C.    USE OF CASH COLLATERAL

On the Petition Date, the Debtors Filed, along with the other First Day Pleadings, the Debtors' Emergency Motion For Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing [Docket No. 16] (the "***Cash Collateral Motion***"). The Bankruptcy Court approved the relief requested in the Cash Collateral Motion initially on an interim basis [Docket No. 69] and thereafter on a final basis [Docket No. 142] (the "***Final Cash Collateral***

*Order*"). Pursuant to the Final Cash Collateral Order, the Debtors obtained authorization to use Senior Secured Parties' cash collateral. In exchange, the Senior Secured Parties received the following adequate protection for any diminution in value of the Senior Secured Parties' interests in the Prepetition Collateral: adequate protection liens, superpriority claims, and payment of professional fees.

## D. RETENTION OF PROFESSIONALS

The Debtors retained the following professionals in the Chapter 11 Cases: (i) Gibson, Dunn & Crutcher LLP, as lead bankruptcy counsel [Docket No. 181]; (ii) Jackson Walker L.L.P., as Texas bankruptcy local counsel [Docket No. 180]; (iii) AlixPartners, LLP, as financial advisor [Docket No. 160]; (iv) Bracewell LLP, as special counsel [Docket No. 1179]; and (v) Prime Clerk LLC, as claims, noticing and balloting agent [Docket No. 38]. The Bankruptcy Court also entered orders (i) authorizing implementation of orderly procedures for interim compensation and reimbursement of expenses of restructuring professionals [Docket No. 177], and (ii) authorizing the employment of ordinary course professionals and setting forth procedures for their compensation [Docket No. 156].

## E. BAR DATE AND SCHEDULES

On March 9, 2016, the Clerk of Court filed a *Notice of Chapter 11 Bankruptcy Case* [Docket No. 75] setting **July 5, 2016** as the deadline to file proofs of claim and indicating that such deadline for a governmental unit is no later than 180 days after the Petition Date. On April 1, 2016, the Debtors Filed their Schedules and statements of financial affairs.

## F. MOTION TO EXTEND EXCLUSIVITY

Section 1121 of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "***Exclusive Filing Period***"), and a period of 180 days from the commencement of a chapter 11 case during which a debtor has the exclusive right to obtain acceptances of its plan (the "***Exclusive Solicitation Period***" and together with the Exclusive Filing Period, the "***Exclusive Periods***"). With respect to the Debtors, the Exclusive Filing Period was initially set to expire on June 30, 2016, and the Exclusive Solicitation Period was initially set to expire on August 29, 2016.

Despite substantial progress made during the initial Exclusive Periods toward developing a plan, due to the size and complexity of the Chapter 11 Cases and the relatively small size of the Debtors' management teams, the initial Exclusive Periods did not afford sufficient time to formulate a plan of reorganization.

On May 31, 2016, the Debtors filed a motion to extend the Exclusive Periods (the "***Exclusivity Extension Motion***") requesting the extension of the Exclusive Filing Period to September 28, 2016, and the Exclusive Solicitation Period to November 27, 2016 [Docket No. 238]. After discussions with various constituents, on June 22, 2016, the Debtors submitted a revised order that provided for an extension of the Exclusive Periods to and including the "Extension Date," with a hearing to be conducted on September 7, 2016 to determine if the Exclusive Periods should be further extended, as requested in the Exclusivity Extension Motion.

The "Extension Date" in the revised order is the date upon which a further order shall be entered by the Bankruptcy Court with respect to an extension of the Exclusive Periods. As an alternative to a hearing on September 7, 2016, the revised order provides for the parties to agree on a further extension of the Exclusive Periods, by no later than August 22, 2016, which shall be deemed a further extension of the Exclusive Periods to the date agreed. The revised order was entered on June 28, 2016 [Docket No. 261].

**G.      MOTION TO EXTEND TIME TO ASSUME/REJECT NONRESIDENTIAL LEASES**

Section 365(d)(4)(A) of the Bankruptcy Code provides that an unexpired lease of non-residential real property under which a debtor is a lessee shall be deemed rejected if the debtor does not assume or reject the unexpired lease within 120 days after the petition date or before the date of entry of an order confirming a plan (the "***Lease Rejection Period***"). The Lease Rejection Period was initially set to expire on June 30, 2016.

On May 31, 2016, the Debtors filed a motion to extend the Lease Rejection Period (the "***Lease Rejection Extension Motion***") requesting the extension of the Lease Rejection Period by 90 days to September 28, 2016 [Docket No. 239]. No parties objected to the Lease Rejection Extension Motion and the order was entered on June 27, 2016 [Docket No. 260], extending the Lease Rejection Period to September 28, 2016.

**H.      DIP FACILITY**

The Plan contemplates that the Debtors may enter into a DIP Facility. The Debtors may be faced with liquidity issues prior to the Effective Date. To the extent the Debtors are able to identify a DIP Facility which can be entered into on favorable terms, the Debtors may seek court authority to enter into such DIP Facility.

On the Effective Date, all advances, fees and expenses in connection with any DIP Facility provided to the Debtors and approved by the Bankruptcy Court shall be paid in Cash and any remaining Claims arising in connection with such debtor-in-possession financing shall be paid with the proceeds of the Exit Facility pursuant to the terms of the Exit Facility Credit Agreement.

## V.      SUMMARY OF THE PLAN

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT, TO THE EXHIBITS ATTACHED HERETO AND THERETO, AND THE DOCUMENTS FILED IN THE PLAN SUPPLEMENT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN THE DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR

DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN WILL CONTROL THE TREATMENT OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS, THE REORGANIZED DEBTORS, AND OTHER PARTIES IN INTEREST.  IN THE EVENT OF ANY CONFLICTS BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.  IN THE EVENT OF ANY CONFLICTS BETWEEN THE CONFIRMATION ORDER AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, THE TERMS OF THE CONFIRMATION ORDER WILL CONTROL.

## A.  CLASSIFICATION AND TREATMENT UNDER THE BANKRUPTCY CODE

Section 1122 of the Bankruptcy Code provides that a plan of reorganization must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1122 of the Bankruptcy Code, the Plan divides the Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Claims, Professional Compensation Claims and Priority Tax Claims, which, pursuant to section 1123(a)(1) are not required to be classified). The Debtors also are required, under section 1122 of the Bankruptcy Code, to classify Claims against and Interests in the Debtors into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.

The fact that a particular Class of Claims is designated for a Debtor does not necessarily mean there are any Allowed Claims in such Class against such Debtor. The Plan constitutes a separate chapter 11 Subplan for each of the Debtors.

The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law, but it is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In that event, the Debtors intend, to the extent permitted by the Bankruptcy Code, the Plan, and the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan as are necessary to permit Confirmation and to use the Plan acceptances received for purposes of obtaining the approval of the reconstituted Class or Classes of which each accepting Holder ultimately is deemed to be a member. Any such reclassification could adversely affect the Class in which such Holder initially was a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.

At the Confirmation Hearing, the Debtors will seek a ruling that if no Holder of a Claim eligible to vote in a particular Class timely votes to accept or reject the Plan, the Plan will be deemed accepted by the Holders of such Claims in such Class for the purposes of section 1129(b) of the Bankruptcy Code. Subject to section 1127 of the Bankruptcy Code and

17

Bankruptcy Rule 3019, the Debtors reserve the right to modify the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, *provided*, such modifications are consistent with Section 12.5 of the Plan.

**B.   TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL COMPENSATION CLAIMS, AND PRIORITY TAX CLAIMS AGAINST THE DEBTORS**

**1.   Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment of its Allowed Claim, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (1) on the Effective Date, or as soon as practicable thereafter, (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Administrative Claim is Allowed by a Final Order, or as soon as reasonably practicable thereafter, or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims.

**2.   Professional Compensation**

**a.   Final Fee Applications and Payment of Accrued Professional Compensation Claims**

All final requests for the allowance and payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Effective Date, shall be Filed no later than 30 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of each Accrued Professional Compensation Claim that is Allowed and owing to a Professional shall be paid in Cash to such Professional from funds held by the Debtors' Estates or the Reorganized Debtors, as applicable, when such Claim is Allowed by a Final Order.

**b.   Post-Effective Date Fees and Expenses**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking compensation for services rendered after such date shall terminate, and the Reorganized Debtors may pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

18

### 3. Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, the Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### 4. Claims in Connection with Debtor-in-Possession Financing

On the Effective Date, all advances, fees and expenses in connection with the DIP Facility provided to the Debtors and approved by the Bankruptcy Court shall be paid in Cash and any remaining Claims arising in connection with such debtor-in-possession financing shall be paid with the proceeds of the Exit Facility pursuant to the terms of the Exit Facility Credit Agreement.

### 5. Secured Party Fees

On the Effective Date, the Reorganized Debtors shall pay in Cash in full the Secured Party Fees to the extent not already paid.

### C. CLASSIFICATION AND TREATMENT OF CLAIMS AGAINST AND INTERESTS IN DEBTORS

### 1. Classification of Claims and Interests

Claims and Interests, except for Administrative Claims, Priority Tax Claims, and Accrued Professional Compensation Claims, are classified in the Classes set forth in Article III of the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| **Class 1** | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| **Class 2** | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

| Class 3 | Priority Lender Claims | Impaired | Entitled to Vote |
|---------|------------------------|----------|------------------|
| Class 4 | Senior Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Trade Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Other General Unsecured Claims | Impaired | Not Entitled to Vote (Presumed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Presumed to Reject) |

### 2. Treatment of Claims and Interests

To the extent a Class contains Allowed Claims or Allowed Interests with respect to the Debtors, the treatment provided to each Class for distribution purposes is specified below:

**a. Class 1—Other Priority Claims**

    i. **Classification**. Class 1 consists of all Other Priority Claims.

    ii. **Treatment**. Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Other Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full in Cash of the amount of such Holder's Allowed Other Priority Claim either: (i) on the Effective Date, or as soon as reasonably practicable thereafter, or (ii) if the Other Priority Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Other Priority Claim is Allowed by Final Order, or as soon as reasonably practicable thereafter.

    iii. **Voting**. Class 1 is Unimpaired under the Plan. Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**b. Class 2—Other Secured Claims**

    i. **Classification**. Class 2 consists of all Other Secured Claims.

    ii. **Treatment**. Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed

Other Secured Claim, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive the following treatment at the option of the Reorganized Debtors: (i) such Allowed Other Secured Claim shall be Reinstated; (ii) payment in full (in Cash) of such Allowed Other Secured Claim; (iii) satisfaction of such Allowed Other Secured Claim by delivering the collateral securing such Allowed Other Secured Claim and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

iii.     **Voting**. Class 2 is Unimpaired under the Plan. Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

**c.     Class 3—Priority Lender Claims**

i.     **Classification**. Class 3 consists of the Priority Lender Claims.

ii.     **Allowance**. The Priority Lender Claims shall be Allowed in the aggregate amount of $[94,799,000]. For the avoidance of doubt, the Holders of the Priority Lender Claims shall not be required to File Proofs of Claim to assert or otherwise evidence their respective Priority Lender Claims.

iii.     **Treatment**. Except to the extent that a Holder of an Allowed Priority Lender Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Lender Claim, each such Holder shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV of the Plan, New Senior Debt in the face amount equal to the Allowed amount of such Holders' Priority Lender Claim.

iv.     **Voting**. Class 3 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

**d.     Class 4—Senior Secured Claims**

i.     **Classification**. Class 4 consists of all Senior Secured Claims.

ii.     **Allowance**. The Senior Secured Claims shall be Allowed in the aggregate principal amount of $[1,587,599,000]. For the avoidance of doubt, the Holders of the Senior Secured Claims shall

21

not be required to File Proofs of Claim to assert or otherwise evidence their respective Senior Secured Claims.

iii.  **Treatment**.  Except to the extent that a Holder of an Allowed Senior Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Secured Claim, each such Holder thereof shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV of the Plan, its Pro Rata share (based on the face amount of the Allowed amount of such Holder's Senior Secured Claim) of the following:

(a)  The New Senior Debt (remaining after the amounts allocated to the Holders of the Priority Lender Claims, as described in Class 3 above);

(b)  100% of the New PIK Notes; and

(c)  100% of the New Equity Interests.

iv.  **Voting**.  Class 4 is Impaired under the Plan.  Therefore, Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

e.  **Class 5—General Unsecured Trade Claims**

i.  **Classification**.  Class 5 consists of all General Unsecured Trade Claims.

ii.  **Treatment**.  Except to the extent that a Holder of an Allowed General Unsecured Trade Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Trade Claim, each such Holder shall receive, at the option of the Reorganized Debtors.

(a)  payment in full in Cash of the Allowed amount of such Allowed General Unsecured Trade Claim;

(b)  Reinstatement of such Allowed General Unsecured Trade Claim; or

(c)  such other treatment rendering such Allowed General Unsecured Trade Claim Unimpaired.

iii.  **Voting**.  Class 5 is Unimpaired under the Plan.  Holders of Claims in Class 5 are conclusively presumed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

### f.  Class 6—Other General Unsecured Claims

i.  **Classification**.  Class 6 consists of all Other General Unsecured Claims.

ii.  **Treatment**.  On the Effective Date, all Other General Unsecured Claims shall be cancelled and extinguished.  Holders of Other General Unsecured Claims shall not receive any distribution pursuant to the Plan.

iii.  **Voting**.  Class 6 is Impaired under the Plan.  Each Holder of a Claim in Class 6 is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

### g.  Class 7—Existing Equity Interests

i.  **Classification**.  Class 7 consists of all Existing Equity Interests.

ii.  **Treatment**.  On the Effective Date, subject to the provisions of Article IV of the Plan, all Existing Equity Interests shall be cancelled and extinguished.  Holders of Existing Equity Interests shall not receive any distribution or retain any property pursuant to the Plan.

iii.  **Voting**.  Class 7 is Impaired under the Plan.  Each Holder of an Allowed Interest in Class 7 is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

## D.  SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

## E.  ACCEPTANCE OR REJECTION OF THE PLAN

1.  **Voting Classes.**  Classes 3 and 4 are Impaired under the Plan.  The Holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

2.  **Presumed Acceptance of the Plan.**  Classes 1, 2, and 5 are Unimpaired under the Plan.  The Holders of Claims in such Classes are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3. **Presumed Rejection of the Plan.** Classes 6 and 7 are Impaired under the Plan. The Holders of Claims and Interests in such Classes are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## F. ELIMINATION OF VACANT CLASSES

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

## G. CONFIRMATION PURSUANT TO SECTIONS 1129(A)(10) AND 1129(B) OF THE BANKRUPTCY CODE

Provided Classes 3 and/or 4 votes to accept the Plan, the Debtors request Confirmation pursuant to section 1129(b) of the Bankruptcy Code.

## H. CONTROVERSY CONCERNING IMPAIRMENT

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy at or before the hearing conducted by the Bankruptcy Court to consider confirmation of the Plan. Any dispute with respect to Impairment that is not raised in sufficient time to enable the Bankruptcy Court to determine such dispute on or prior to the Confirmation Date shall be deemed waived.

## I. SUBORDINATED CLAIMS

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and Reorganized Debtors, as applicable, reserve the right to reclassify any Allowed Claim or Allowed Interest, other than the Pre-Petition Secured Claims, in accordance with any contractual, legal, or equitable subordination relating thereto; *provided*, *however*, that any such reclassification must be approved by the Required Consenting Senior Lenders.

## VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. ASSUMPTION, ASSUMPTION AND ASSIGNMENT AND REJECTION OF CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except any Executory Contract or Unexpired Lease (1) identified on the Assumed Executory Contract and Unexpired Lease List (which shall be included in the Plan Supplement) as an Executory Contract or Unexpired Lease designated for assumption, (2) which is the subject of a separate motion or notice to assume or reject Filed by the Debtors and pending as of the Confirmation Hearing, (3) that previously expired or terminated pursuant to its own terms or (4) that was previously assumed by any of the Debtors. Any objection to the assumption, assumption and assignment, or rejection of an Executory Contract or Unexpired Lease, as applicable, must be Filed, served, and actually received by the counsel to the Debtors, counsel to the Steering Committee, the clerk of the Bankruptcy Court, and the United States Trustee on or before the later of (i) the commencement of the Confirmation Hearing and (ii) ten (10) Business Days following receipt of notice of such proposed assumption, assumption and assignment, or rejection. Any such objection will be scheduled to be heard by the Bankruptcy Court as soon as reasonably practicable after such objection is Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or rejection will be deemed to have assented to such assumption, assumption and assignment, or rejection, as applicable.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumption of Executory Contracts identified on the Assumed Executory Contract and Unexpired Lease List and rejection of all other Executory Contracts and Unexpired Leases, subject to the exceptions noted above, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease List prior to the Confirmation Date on no less than three (3) days' notice to any counterparty to an Executory Contract or Unexpired Lease affected thereby.

Pursuant to the Plan, SH 130 seeks to assume on the current terms the Concession Agreement, the Toll Road Lease, and all other concession agreements with TxDOT relating to the operation of the Tollway. In connection with such assumption, SH 130 will pay all required cure costs agreed to by the parties or as determined by the Court.

## B. CLAIMS BASED ON REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be Filed with the Claims and Balloting Agent no later than the later of 30 days after the Effective Date or the effective date of rejection. Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be classified as a General Unsecured Trade Claim and shall be treated in accordance with Article III, as applicable.

## C. CURE OF DEFAULTS FOR ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned, as applicable, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

No later than twenty (20) Business Days prior to the Confirmation Hearing, the Debtors shall serve notices of proposed assumption or (if applicable) assumption and assignment and the proposed cure amounts to the applicable counterparties to Executory Contracts and Unexpired Leases, and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection to a proposed cure amount by a counterparty to an Executory Contract or Unexpired Lease must be Filed, served, and actually received by the counsel to the Debtors, counsel to the Steering Committee, the clerk of the Bankruptcy Court, and the U.S. Trustee on or before the later of (1) the commencement of the Confirmation Hearing and (2) ten (10) Business Days following receipt of notice of such proposed assumption or assumption and assignment and the proposed cure amounts. Any such objection will be scheduled to be heard by the Bankruptcy Court as soon as reasonably practicable after such objection is Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount applicable to an Executory Contract or Unexpired Lease to be assumed or assumed and assigned will be deemed to have assented to such cure amount. **Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

In the event of a dispute regarding: (1) the amount of any payments to cure a default in connection with a proposed assumption or assumption and assignment of an Executory Contract or Unexpired Lease; (2) the ability of the Debtors, the Reorganized Debtors, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or to be assumed and assigned; or (3) any other matter pertaining to assumption or assumption and assignment, as applicable, the cure payments required by section 365(b)(1) of the Bankruptcy

Code shall be made following the entry of a Final Order or Final Orders resolving the dispute and approving the assumption or assumption and assignment, as applicable.

Assumption, rejection, or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

## D.    INSURANCE POLICIES

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

## E.    MODIFICATIONS, AMENDMENTS, SUPPLEMENTS, RESTATEMENTS, OR OTHER AGREEMENTS

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned, as applicable, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to pre-petition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the pre-petition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## F.    RESERVATION OF RIGHTS

Nothing contained in the Plan, including identification in the Assumed Executory Contract and Unexpired Lease List, shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease subject to assumption or rejection pursuant to section 365(a) of the Bankruptcy Code, or that any of the Reorganized Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, if necessary.

### G.   NONOCCURRENCE OF EFFECTIVE DATE

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

### H.   CONTRACTS AND LEASES ENTERED INTO AFTER THE PETITION DATE

Contracts and leases entered into after the Petition Date by any Debtor shall be assumed or assumed and assigned by such Debtor in accordance with the Plan.

## VII.   MEANS FOR IMPLEMENTATION OF THE PLAN

### A.   SOURCES OF CONSIDERATION FOR PLAN DISTRIBUTIONS

1.   **Exit Facility**. On the Effective Date, the Reorganized Concessionaire shall enter into the Exit Facility. Confirmation of the Plan shall be deemed approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Concessionaire in connection therewith) and authorization and direction for the Reorganized Concessionaire to enter into and execute the Exit Facility, subject to such modifications as they may deem to be reasonably necessary to consummate its entry into the Exit Facility.

The Exit Facility will be a new money senior capital expenditure facility, pursuant to the Exit Facility Documents, which shall be used, among other things, to refinance the DIP Facility and for any extraordinary capital expenditures, including any amounts necessary for pavement remediation, as necessary or required. The Exit Facility (i) will be provided by [_____], (ii) will be in an amount of up to $[__] million, (iii) will have an interest rate of [_____].

The Exit Facility, together with the Debtors' cash on hand as of the Effective Date, will be used to pay, on the Effective Date, Administrative Claims, Professional Compensation Claims, Priority Tax Claims and the DIP Facility. In addition, the Exit Facility will provide sufficient working capital to satisfy all of the Debtors' obligations, including capital expenditures and all required cure costs, as well as to provide any required "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code).

For a more detailed description of the terms of the Exit Facility, please see Exhibit 2 to the Plan. The Exit Facility will be substantially in the form filed in the Plan Supplement prior to the Confirmation Hearing.

2.   **New Senior Debt**. On the Effective Date, the Reorganized Concessionaire shall enter into the New Senior Debt. Confirmation shall be deemed approval of such New Senior Debt (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Concessionaire in connection therewith) and authorization and direction for the Reorganized Concessionaire to enter into and execute all instruments, documents and agreements in connection therewith, subject to such modification as may be necessary to consummate its entry into the New Senior Debt.

For a more detailed description of the terms of the New Senior Debt, please see Exhibit 2 to the Plan. The New Senior Debt will be substantially in the form filed in the Plan Supplement prior to the Confirmation Hearing.

3. **New PIK Notes**. On the Effective Date, the Reorganized Concessionaire shall issue the New PIK Notes. Confirmation shall be deemed approval of the New PIK Notes (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Concessionaire in connection therewith) and authorization and direction for the Reorganized Concessionaire to enter into and execute all instruments, documents and agreements in connection therewith, subject to such modification as may be necessary to consummate issuance of the New PIK Notes.

For a more detailed description of the terms of the New PIK Notes, please see Exhibit 2 to the Plan. The New PIK Notes will be substantially in the form filed in the Plan Supplement prior to the Confirmation Hearing.

4. **Issuance of New Equity Interests**. The New Equity Interests shall be issued as provided in Articles IV and VII of the Plan. All of the New Equity Interests shall be duly authorized and validly issued.

For a more detailed description of the terms of the New Equity Interests, please see Exhibit 1 to the Plan. Definitive documents with respect to the New Equity Interests will be substantially in the form filed in the Plan Supplement prior to the Confirmation Hearing.

B. **NO SUBSTANTIVE CONSOLIDATION**

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

C. **FORMATION OF NEW HOLDCO; ISSUANCE OF NEW EQUITY INTERESTS**

On or after the Confirmation Date and on or prior to the Effective Date, New Holdco will be formed as a new Delaware limited liability company, by filing the New Holdco Certificate with the Secretary of State of the State of Delaware.  As of the Effective Date, among other things, (a) the Concessionaire shall be converted, merged or otherwise reorganized into Reorganized Concessionaire, (b) 100% of the membership interests in Reorganized Concessionaire will be issued to New Holdco, and (c) the New Equity Interests will be issued and distributed to Holders of Senior Secured Claims in Class 4, pursuant to and in accordance with the Plan, in each case, as provided in the Implementation Memorandum.  Each such issuance and distribution of New Equity Interests shall be authorized without the need for any further limited liability company action and without the need for any further consent, approval or action by any Holders of Claims or Interests or any other Entity.

Each issuance and distribution of the New Equity Interests under the Plan shall be governed by the applicable terms and conditions set forth in the Plan and the Implementation

Memorandum and by the terms and conditions of the New Holdco LLC Agreement, which terms and conditions shall bind each such recipient of New Equity Interests.

On the Effective Date, New Holdco and Reorganized Concessionaire will be authorized to and shall issue or execute and deliver, as applicable, in accordance with the Implementation Memorandum, the New Equity Interests and the New Concessionaire LLC Agreement, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

**D.    CONTINUED ORGANIZATIONAL EXISTENCE AND VESTING OF ASSETS IN THE REORGANIZED DEBTORS; CONTINUED OPERATIONS**

**1.  Continued Organizational Existence and Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein:  (1) as of the Effective Date, New Holdco shall exist as a separate legal entity, with all powers in accordance with the laws of the state of Delaware and the New Holdco LLC Agreement; (2) as of the Effective Date, Reorganized Concessionaire shall exist as a separate legal entity, with all powers in accordance with the laws of the state of Delaware and the New Concessionaire LLC Agreement; and (3) on the Effective Date, all property of the Estate of a Debtor, and any property acquired by a Debtor or Reorganized Debtor under the Plan, shall vest, subject to the Restructuring Transactions, in Reorganized Concessionaire, free and clear of all Claims, Liens, charges, other encumbrances, Interests and other interests.  On and after the Effective Date, Reorganized Concessionaire may operate its business and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, each of New Holdco and Reorganized Concessionaire may pay the respective charges that it incurs on or after the Effective Date for appropriate Professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Bankruptcy Court.

**2.  Continued Operations**

If a New Operator Agreement has not been entered into prior to the Effective Date, the Operator shall continue to perform its roles operating and maintaining the Toll Road after the Effective Date, under the contractual arrangements in effect as of the Confirmation Date; *provided, however*, that the Operator shall only continue to perform the Operator Services for a maximum of 18 months following the Effective Date, unless otherwise agreed to among the applicable parties. Notwithstanding anything to the contrary in the Plan, to the extent the Required Consenting Senior Lenders seek to enter into a New Operator Agreement prior to the Effective Date, such agreement will be subject to any rights of TxDOT under the Concession Agreement.

3.  [**Survival of Certain Indemnification Obligations**

The obligations of the Debtors, pursuant to the Debtors' operating agreements, certificates of incorporation or formation, articles of association, by-laws, or equivalent corporate governance documents, applicable statutes, or employment agreements to indemnify their respective current and former directors, officers, managers, agents, employees, representatives, and professionals, in respect of all present and future actions, suits, and proceedings against any of such officers, directors, managers, agents, employees, representatives, and professionals, based upon any act or omission related to service with, for, or on behalf of the Debtors on or before the Effective Date, as such obligations were in effect at the time of any such act or omission, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Reorganized Entities regardless of such confirmation, consummation, and reorganization.]

E.  RESTRUCTURING TRANSACTIONS

On or after the Confirmation Date and on or prior to the Effective Date, New Holdco will be formed as a new Delaware limited liability company by filing the New Holdco Certificate with the Secretary of State of the State of Delaware, absent an alternative structure determined by the Debtors and the Required Consenting Senior Lenders.  On the Effective Date, among other things, (a) 100% of the membership interests in Reorganized Concessionaire will be issued to New Holdco, (b) the New Equity Interests, the New PIK Notes, and New Senior Debt will be issued and distributed to Holders of Claims in Classes 3 and 4 as provided in the Implementation Memorandum and (c) Reorganized Concessionaire will enter into the Exit Facility and repay the DIP Facility pursuant to and in accordance with the Plan and the Implementation Memorandum. Certain other Restructuring Transactions may be undertaken as necessary or appropriate to effect, in accordance with applicable non-bankruptcy law, a corporate restructuring of the Debtors' or the Reorganized Debtors' respective businesses or simplify the overall corporate structure of the Reorganized Debtors, all to the extent not inconsistent with any other terms of the Plan and in accordance with the Implementation Memorandum, including the dissolution of CINTRA TX and Zachry Toll Road.  Notwithstanding anything to the contrary in the Plan, the means and timing for implementation of the Plan, including the formation of New Holdco, will be subject, in all respects, to the provisions of the Implementation Memorandum.  The Implementation Memorandum will specify the sequence and timing of steps undertaken to effectuate the Plan, and will supersede any timing of events and structuring aspects noted in the Plan.

Without limiting the foregoing, unless otherwise provided by the terms of a Restructuring Transaction or the Implementation Memorandum, all such Restructuring Transactions will be deemed to occur on the Effective Date and may include one or more mergers, conversions, consolidations, restructurings, dispositions, liquidations or dissolutions, as may be determined by the Debtors or the Reorganized Debtors and the Required Consenting Senior Lenders to be necessary or appropriate.  Subject to the immediately preceding sentence, the actions to effect these transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, conversion, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the

requirements of applicable state law and such other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree; (c) the filing of appropriate certificates or articles of merger, conversion, consolidation, dissolution or change in corporate form pursuant to applicable state law; and (d) the taking of all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.  Any such transactions may be effected on or subsequent to the Effective Date without any further action by the members, partners, stockholders, directors or managers of any of the Debtors or the Reorganized Debtors.  All documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan shall become and shall remain effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

## F.   NEW DEBT DOCUMENTS

On the Effective Date, Reorganized Concessionaire shall be authorized to incur or issue, as applicable, the indebtedness under the Exit Facility, the New Senior Debt, and the New PIK Notes, and to execute, deliver and enter into the New Debt Documents, and any related agreements or filings without the need for any further corporate, limited liability company or partnership action and without further action by or approval of the Bankruptcy Court, and the New Debt Documents and any related agreements or filings shall be executed and delivered and the applicable Reorganized Debtors may incur or issue the indebtedness available thereunder in accordance with the Implementation Memorandum.

## G.   SOURCES OF CASH FOR PLAN DISTRIBUTIONS

The Debtors or Reorganized Debtors, as applicable, are authorized to execute and deliver any documents necessary or appropriate to obtain Cash for funding the Plan, including pursuant and subject to the Exit Facility Credit Agreement.  All consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained through a combination of one or more of the following:  (a) Cash on hand of the Debtors and their Estates, including Cash from business operations; (b) proceeds of the Exit Facility; (c) the proceeds of any tax refunds; (d) the proceeds of any Causes of Action; and (e) any other means of financing or funding that the Debtors or the Reorganized Debtors determine is necessary or appropriate, subject to the terms of the New Debt Documents.

H.   GOVERNANCE, DIRECTORS AND OFFICERS; EMPLOYMENT-RELATED AGREEMENTS AND COMPENSATION PROGRAMS; OTHER AGREEMENTS

1.   **The New Holdco LLC Agreement and Other New Organizational Documents**

Forms of the New Holdco LLC Agreement, the New Concessionaire LLC Agreement and the other New Organizational Documents will be included in the Plan Supplement and shall be in form and substance consistent in all material respects with the Governance Term Sheet. The New Holdco LLC Agreement, the New Concessionaire LLC Agreement and the certificate of incorporation and bylaws, limited liability company agreement or comparable constituent documents of the other Reorganized Debtors shall, among other things, prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the limited liability company agreement of Concessionaire will be amended and restated as the New Concessionaire LLC Agreement of Reorganized Concessionaire, and the New Holdco LLC Agreement will be executed by New Holdco and become effective as the limited liability company agreement of New Holdco. As of the Effective Date, New Holdco and all recipients of New Equity Interests issued pursuant to the Plan shall be deemed to be parties to and bound by the New Holdco LLC Agreement, without the need for execution by any such Entity other than New Holdco. In addition, the New Holdco LLC Agreement shall be binding on all transferees and other holders of New Equity Interests, regardless of whether they execute the New Holdco LLC Agreement. Notwithstanding the foregoing, a Holder of an Allowed Senior Secured Claim will not be entitled to receive their respective distribution of New Equity Interests pursuant to the Plan unless and until such Holder delivers to New Holdco a duly executed counterpart signature page to the New Holdco LLC Agreement.

At any time after the Effective Date, any one or more of the Reorganized Debtors may amend its respective certificate of formation, limited liability company agreement, certificate of incorporation, bylaws or comparable constituent documents, as applicable, to the extent permitted by applicable non-bankruptcy law and subject to the terms and conditions set forth in the applicable constituent documents. On the Effective Date, or as soon thereafter as is practicable, each Reorganized Debtor shall file any such certificate of formation or certificate of incorporation (or comparable constituent documents) with the secretary of state or jurisdiction or similar office of the state or jurisdiction in which such Reorganized Debtor is incorporated or organized, to the extent required by and in accordance with the applicable corporate, limited liability company or partnership law, as applicable, of such state or jurisdiction.

2.   **Directors and Officers of the Reorganized Debtors**

In accordance with section 1129(a)(5) of the Bankruptcy Code, to the extent known, the initial members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors, as of the Effective Date and subject to the rights of TxDOT under the Concession Agreement, shall be identified in a disclosure to be included in the Plan Supplement.

### 3.  Employment-Related Agreements and Compensation Programs

Except as otherwise provided herein, as of the Effective Date, the Reorganized Debtors shall have authority to:  (i) maintain, Reinstate, amend or revise existing employment, retirement, welfare, incentive, severance, indemnification and other agreements with its active and retired directors, officers and employees, subject to the terms and conditions of any such agreement and applicable non-bankruptcy law; and (ii) enter into new employment, retirement, welfare, incentive, severance, indemnification and other agreements for active and retired employees, including the Key Employee Incentive Plan and the Key Employee Retention Plan; *provided*, *however*, that any amendments or revisions to employment or related agreements of any employees seconded to the Debtors by Cintra, whether such employment or related agreements were entered into prior to or after the Effective Date, shall be subject to the consent of the applicable Cintra affiliate.

### 4.  Other Matters

Notwithstanding anything to the contrary in the Plan, no provision in any contract, agreement or other document with the Debtors that is rendered unenforceable against the Debtors or the Reorganized Debtors pursuant to sections 541(c), 363(*l*) or 365(e)(1) of the Bankruptcy Code, or any analogous decisional law, shall be enforceable against the Debtors or Reorganized Debtors as a result of the Plan.

### 5.  Transactions Effective as of the Effective Date

Pursuant to section 1142 of the Bankruptcy Code and section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other applicable jurisdiction, the following shall occur and be effective as of the Effective Date, if no such other date is specified in such other documents, including the Implementation Memorandum, and shall be authorized and approved in all respects and for all purposes without any requirement of further action by the stockholders, members, managers or directors of the Debtors or any of the Reorganized Debtors: (a) the Restructuring Transactions; (b) the adoption of the New Organizational Documents; (c) the election or appointment, as applicable, of the initial members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors as of the Effective Date; (d) the distribution of Cash and other property pursuant to the Plan, subject to Article VI; (e) the authorization and issuance of the Exit Facility, the New Senior Debt and the New PIK Notes pursuant to the Plan; (f) the authorization and issuance of New Equity Interests pursuant to the Plan; (g) the entry into and performance under the New Debt Documents; (h) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to any of the foregoing; (i) the adoption, execution and implementation of employment, retirement and indemnification agreements, incentive compensation programs, including the Key Employee Incentive Plan and the Key Employee Retention Plan, retirement income plans, welfare benefit plans and other employee plans and related agreements; and (j) any other matters provided for under the Plan involving the corporate structure of the Debtors or Reorganized Debtors or any corporate, limited liability company or partnership action to be taken by or required of a Debtor or Reorganized Debtor.

**I.     SECTION 1145 EXEMPTION**

To the maximum extent provided by section 1145(a) of the Bankruptcy Code, the offering, issuance and distribution under the Plan of the New Equity Interests and the New PIK Notes (collectively, the "New Securities") shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable federal, state or local law requiring the registration of any offering, issuance, distribution or sale of securities.  The exemptions provided for in section 1145 of the Bankruptcy Code do not apply to an entity that is deemed an "underwriter" as such term is defined in section 1145(b) of the Bankruptcy Code. To the extent that such exemption under section 1145(a) is not available with respect to the offering, issuance and distribution of any of the New Securities, the offering, issuance and/or distribution, as applicable, of such New Securities will be made pursuant to the exemption set forth in section 4(a)(2) of the Securities Act or another exemption thereunder.  The New Securities issued and distributed under the Plan shall be authorized without the need for further limited liability company action with respect to New Holdco or any of the Reorganized Debtors or without any further action by any Entity, and once issued, all such New Securities shall be duly authorized and validly issued.

Resales of the New Securities issued and distributed under the Plan will be subject to (i)  the contractual restrictions on transfer contained in the New Holdco LLC Agreement (with respect to the New Equity Interests) and the New Debt Documents (with respect to the New PIK Notes); and (iii) applicable regulatory approval, if any.  In addition, to the extent that any New Securities distributed under the Plan are not covered by section 1145(a), such New Securities will be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and may not be transferred or resold except as permitted under the Securities Act and other applicable securities laws, pursuant to registration or exemption therefrom.

**J.     GENERAL SETTLEMENT OF CLAIMS AND INTERESTS**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

**K.     CANCELLATION OF EXISTING SECURITIES AND AGREEMENTS**

On the Effective Date, except to the extent otherwise provided in the Plan or the Implementation Memorandum, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including the Pre-Petition Secured Claims and the Existing Equity Interests, shall be deemed cancelled and surrendered without any need for a Holder to take further action with respect thereto and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the

Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable. Notwithstanding anything to the contrary in the Plan, including this paragraph, the Liens of the Senior Secured Parties shall be deemed to become Liens under the New Security Documents and New Debt Documents, and shall not be discharged hereby.

## L. CORPORATE, LIMITED LIABILITY COMPANY AND PARTNERSHIP ACTION

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including: (1) selection of the members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors; (2) implementation of the Restructuring Transactions; (3) the entry by the applicable Reorganized Debtors into the New Debt Documents, and, to the extent applicable, the New Operator Agreement; (4) the issuance of the New Equity Interests, the New PIK Notes and the New Senior Debt and the incurrence of the Exit Facility; (5) the dissolution of CINTRA TX and Zachry Toll Road, as necessary and in the discretion of the Debtors and the Senior Secured Parties; (6) with respect to all intercompany obligations among the Debtors, the Debtors, with the consent of the Required Consenting Senior Lenders, shall either (a) extinguish, (b) compromise by distribution, contribution or otherwise, or (c) Reinstate such intercompany obligations; and (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date), without the need for any further corporate, limited liability company or partnership action and without the need for any further consent, approval or action by any Holders of Claims or Interests or any other Entity. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate, limited liability company or partnership action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Debt Documents and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article IV.K of the Plan shall be effective notwithstanding any requirements that would otherwise apply under applicable nonbankruptcy law.

## M. EFFECTUATING DOCUMENTS; FURTHER TRANSACTIONS

From and after the Effective Date, the Debtors and the Reorganized Debtors and the officers and members of the boards of managers thereof, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan in the name of and on behalf of the Debtors and the Reorganized Debtors, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

N.    SECTION 1146 EXEMPTION

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or interests pursuant to the Plan, including the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

O.    PRESERVATION OF CAUSES OF ACTION

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Debtors and the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement and any actions related to claims in connection with the design, construction, operation, maintenance, reconstruction or remediation of the Toll Road (including, for the avoidance of doubt, any actions against the Contractor), and the rights of the Debtors and Reorganized Debtors, as applicable, to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date[, other than the following Causes of Action, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date:  all Causes of Action that arise under (a) sections 544, 547, and 548 of the Bankruptcy Code and (b) state fraudulent conveyance law, in each case, solely related to payments made in the 90 days prior to the Petition Date].  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Final Order, the Debtors and Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors and the Reorganized Debtors, as applicable, reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, any Causes of Action that a Debtor or its Estate may hold against any Entity shall vest in the Debtors or the Reorganized Debtors, as applicable.  The applicable

Debtors or the Reorganized Debtors through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. On or after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### P.    PAYMENT OF CERTAIN FEES AND EXPENSES

On the Effective Date, the Reorganized Debtors shall pay in Cash in full the Secured Party Fees to the extent not already paid.

## VIII.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    DISBURSING AGENT

All distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date, except as otherwise provided in the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

### B.    RIGHTS AND POWERS OF DISBURSING AGENT

#### 1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary or appropriate to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

#### 2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

## C.    DELIVERY OF DISTRIBUTIONS AND UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS.

### 1.   Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on such Holder's Proof of Claim, or if no Proof of Claim has been filed, as reflected in the Debtors' books and records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the sole discretion of the Reorganized Debtors.

### 2.   Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

## D.    COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

## E.    ALLOCATIONS

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

### F.  No Post-Petition Interest on Claims

Post-petition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

### G.  Setoffs and Recoupment

The Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the Holder of any such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors, as applicable, of any such Claim it may have against the Holder of such Claim.

### H.  Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, their Estates or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## IX.  SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.  Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims and Interests of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, or whether asserted or unasserted, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  Notwithstanding anything to the contrary in the Plan, including this

paragraph, (a) the Liens of the Senior Secured Lenders and TIFIA shall be retained and supplemented by Liens granted by Reorganized Concessionaire under the New Security Documents and the New Debt Documents, and such retained and granted Liens shall not be discharged under the Plan, and (b) the terms of the Plan shall not discharge, release or otherwise adversely affect the New Equity Interests, or the membership interests in Reorganized Concessionaire that are issued to New Holdco.

## B.  RELEASES

### 1.  Releases by the Debtors

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacities and as debtors in possession will be deemed to release and forever waive and discharge the Released Parties from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Entities, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, including, without limitation, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtors or their Estates at any time on or prior to the Effective Date against the Released Parties, except that the Debtors will not be deemed to release, waive, or discharge the Released Parties from and against any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.**

### 2.  Releases by Certain Third Parties

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Senior Secured Parties in their individual capacities will be deemed to have released and forever waived and discharged each Debtor, each Reorganized Entity, each Estate, and each Released Party from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and**

liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Entities, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, the Reorganized Entities, and any Released Party, including, without limitation, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Senior Secured Parties at any time on or prior to the Effective Date against each Debtor, each Estate, or each Released Party, except that the Senior Secured Parties will not be deemed to release, waive, or discharge a Debtor, a Reorganized Entity, an Estate, or a Released Party, as applicable, from and against any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities arising out of or relating to any act or omission of a Debtor, a Reorganized Entity, an Estate, or a Released Party, as applicable, that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

3. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Reorganized Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns in accordance with the Plan.

C.   EXCULPATION

Except as otherwise specifically provided in the Plan, each Debtor, each Reorganized Entity, each Estate, and each Released Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any Exculpated Claim, except to the extent such claim, obligation, Cause of Action, or liability arises from willful misconduct or gross negligence or the breach of the Plan Support Agreement, but in all respects (other than with respect to any breach of the Plan Support Agreement) such released Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Debtors, the Reorganized

Entities, the Estates, and the Released Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the restructuring and treatment of Claims and Interests in the Chapter 11 Cases and in connection with the Restructuring Transactions, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments, or other documents (including the New Debt Documents and documents and instruments related thereto, and any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Plan, and the distribution of and the solicitation of votes on the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Without limiting the generality of the foregoing, each Debtor, each Reorganized Entity, each Estate, and each Released Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

### D. INJUNCTION

Except as otherwise expressly provided in the Plan, the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan (including any obligations under the Plan, the New Debt Documents and documents and instruments related thereto), all Entities who have held, hold, or may hold any claims, Causes of Action or interests that have been discharged pursuant to Article VIII.A of the Plan or are subject to exculpation pursuant to Article VIII.C of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Entities or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Entities or the Released Parties on account of or in connection with or with respect to any such claims, Causes of Action or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Entities, the Released Parties, or their respective property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Reorganized Entities or the Released Parties or against their respective property or estates on account of or in connection with or with respect to any such claims, Causes of Action or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim, Cause of Action or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff

pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action or interests released or settled pursuant to the Plan.

## E.    PROTECTIONS AGAINST DISCRIMINATORY TREATMENT

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## F.    SETOFFS

Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Debtor or Reorganized Debtor may possess against such Holder.

## G.    RECOUPMENT

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless (1) such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date or (2) such Claim is Reinstated under the Plan.

## H.    SUBORDINATION RIGHTS

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and, subject to the provisions of Article III.H. of the Plan, any such subordination rights shall be settled, compromised, and released pursuant to the Plan.

I.     **DOCUMENT RETENTION**

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## X.     EFFECT OF CONFIRMATION OF THE PLAN

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, the Confirmation Order Findings of Fact and Conclusions of Law. Upon entry of the Confirmation Order, the Confirmation Order Findings of Fact and Conclusions of Law shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

## XI.     CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.     **CONDITIONS PRECEDENT TO THE CONFIRMATION DATE**

It shall be a condition to the Confirmation Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C of the Plan:

1.     The Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders;

2.     All documents to be provided in the Plan Supplement are in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders and have been filed with the Bankruptcy Court;

3.     The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders and must provide for the confirmation of the Plan with respect to each Debtor; and

4.     The Debtors shall have received a binding commitment for the Exit Facility, in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, in an amount sufficient to satisfy (i) all Effective Date Cash requirements, including, without limitation, satisfaction of all Allowed Cure Claims and (ii) feasibility requirements as required pursuant to section 1129 of the Bankruptcy Code.

B.     **CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C of the Plan:

1. all Restructuring Documents shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders;

2. the Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, in full force and effect, and not be subject to any stay or injunction;

3. all actions, documents, Certificates, and agreements necessary or appropriate to implement the Plan, including documents contained in the Plan Supplement, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws;

4. all authorizations, consents, regulatory approvals (including approvals and consents from TxDOT), rulings, or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received;

5. the Concession Agreement, Toll Road Lease and all operation and maintenance contracts and services contracts, as agreed to by the Required Consenting Senior Lenders, shall have been assumed by the Debtors;

6. the Exit Facility shall have been consummated; and

7. all Secured Party Fees shall have been paid.

## C.    WAIVER OF CONDITIONS

The conditions set forth in Article X.A. and X.B of the Plan may be waived only by written consent of the Debtors and the Required Consenting Senior Lenders.  Such waiver may be effectuated without notice to or entry of an order of the Bankruptcy Court and without notice to any other parties in interest.

## D.    EFFECT OF FAILURE OF CONDITIONS

If Consummation does not occur on or prior to [December 31, 2016], the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by the Debtors, Holders of Claims, or Holders of Interests or any Causes of Action; (2) prejudice in any manner the rights of the Debtors, any Holders, the Required Consenting Senior Lenders, TIFIA or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, the Required Consenting Senior Lenders, TIFIA or any other Entity in any respect, including with respect to substantive consolidation and similar arguments.

## XII.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

6.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

7.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

8.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

9.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

10.    determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

11.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

12.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII of the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

13.    enforce all orders previously entered by the Bankruptcy Court; and

14.    hear any other matter not inconsistent with the Bankruptcy Code.

## XIII.    MISCELLANEOUS PROVISIONS

### A.    IMMEDIATE BINDING EFFECT

Subject to Article X.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, as of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests, as applicable, have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.    ADDITIONAL DOCUMENTS

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents, which agreements and other documents shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    PAYMENT OF STATUTORY FEES

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) on the Effective Date, and following the Effective Date, the Reorganized Debtors (or

the Disbursing Agent on behalf of each of the Reorganized Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

### D.  RESERVATION OF RIGHTS

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

### E.  SUCCESSORS AND ASSIGNS

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

### F.  DISALLOWED CLAIMS

No distribution shall be made under this Plan on account of or in relation to Disallowed Claims.

### G.  NOTICES

All notices, requests, and demands to or upon the Debtors, the Administrative Agent, or the Steering Committee to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtors, to:

SH 130 Concession Company, LLC
10800 N US 183 Highway NB, Buda, TX 78610
Attn: Alfonso Orol, Steven J. Thoreson, and Paul Harris
Email: aorol@sh130cc.com, sthoreson@sh130cc.com, and pharris@SH130cc.com

with copies to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Matthew K. Kelsey, and Alan Moskowitz

Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com, and AMoskowitz@gibsondunn.com

if to the Administrative Agent, to:

BNP Paribas
787 Seventh Avenue
New York, NY 10019
Attn: Barbara Eppolito
Email: Barbara.eppolito@us.bnpparibas.com

with copies to:

Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Attn: E. Lee Morris and Kevin M. Lippman
Email: lmorris@munsch.com and klippman@munsch.com

and:

Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, New York 10005
Facsimile: (212) 530-5219
Attn.: Gerard Uzzi and Mary Doheny
Email: guzzi@milbank.com and mdoheny@milbank.com

if to TIFIA, to:

Build America Bureau Credit Office
United States Department of Transportation
Room W12-447
1200 New Jersey Avenue, SE
Washington, DC 20590
Attn: Duane Callender
Email: BureauOversight@dot.gov

with copies to:

U.S. Department of Justice
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Attn: Rodney A. Morris
Email: Rodney.Morris2@usdoj.gov

<u>and</u>:

Shearman & Sterling LLP
599 Lexington Ave # 16
New York, NY 10022
Attn: Douglas P. Bartner and Cynthia Urda Kassis
Email: dbartner@shearman.com and curdakassis@shearman.com

After the Effective Date, the Reorganized Debtors shall have authority to send a notice to Entities providing that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

### H.    TERM OF INJUNCTIONS OR STAYS

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### I.    ENTIRE AGREEMENT

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Plan Supplement.

### J.    EXHIBITS

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://cases.primeclerk.com/sh130/ or the Bankruptcy Court's website at http://www.txwb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### K.    NONSEVERABILITY OF PLAN PROVISIONS

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent

practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

### L. VOTES SOLICITED IN GOOD FAITH

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

### M. CLOSING OF CHAPTER 11 CASES

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### N. WAIVER OR ESTOPPEL

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

### O. CONFLICTS

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of a conflict between the terms of the Plan, Disclosure Statement, Plan Supplement and, in each case, all documents, attachments, and

exhibits thereto, on the one hand, and the terms of the Confirmation Order, on the other hand, the terms of the Confirmation Order shall control.

## XIV. CAUSES OF ACTION

### A. Litigation By the Debtor

Prior to the Chapter 11 Cases, the Toll Road began experiencing certain non-safety related pavement and slope problems (e.g., cracks, heaves, dips and rills) that have required road repair work at significant extra expense to SH 130. The Toll Road remains safe for all travelers. SH 130 believes that the pavement and slope issues are a result of flaws in the design and construction of the Toll Road and have so advised the contractor that designed and built the Toll Road pursuant to that certain Design and Construction Contract, dated March 22, 2007, between SH 130 and Central Texas Highway Constructors, LLC (the "***Contractor***"). The Contractor has taken issue with SH 130's assertion regarding the design and construction. The Debtors reserve the right to pursue possible causes of action against the Contractor and its predecessors, successors, and assigns. The Debtors also continue to ensure that the road remains safe for travel at all times.

## XV. FINANCIAL INFORMATION AND DISCLOSURES

Attached hereto as <u>Exhibit D</u> is the most recent Monthly Operating Report filed by the Debtors for the month of _____ 2016. Currently, the Debtors have cash on hand of $[_____]. Administrative claims of Professionals, through and including August 31, 2016, were approximately $[_____]. Administrative claims of Professionals are anticipated to be, on average, approximately $[_____] per month, through the Effective Date.

## XVI. SOLICITATION AND VOTING PROCEDURES

The following briefly summarizes procedures to accept and confirm the Plan:

### A. THE SOLICITATION PACKAGE

The following materials, among other things, constitute the Solicitation Package:

- A cover letter describing the contents of the Solicitation Package;

- The Confirmation Hearing Notice;

- A copy of the Disclosure Statement together with the exhibits thereto, including the Plan;

- The Disclosure Statement Order (excluding the exhibits thereto); and

- The appropriate Ballot, Ballot Instructions, and Ballot return envelope.

The Classes entitled to vote to accept or reject the Plan shall be served the Solicitation Package. The Debtors shall send to each Impaired creditor entitled to vote on the Plan (i) only the Solicitation Package appropriate for the Class(es) applicable to such creditor, and (ii) only one Solicitation Package even if such creditor has Claims against more than one of the Debtors. The Solicitation Package can be obtained by requesting a copy from the Balloting and Claims Agent by calling the following telephone numbers: Toll Free: (855) 252-4068.

**B.     VOTING INSTRUCTIONS**

Claimants who hold Claims against the Debtors on the Record Date in the Voting Classes may vote by completing the Ballot and returning it in accordance with the instructions set forth on the Ballot to the Balloting and Claims Agent so that it is *actually received* by the Voting Deadline. Voting Instructions are attached to each Ballot.

The Balloting and Claims Agent will, among other things, answer questions, provide additional copies of all Solicitation Package materials, and generally oversee the solicitation process. The Balloting and Claims Agent will also process and tabulate Ballots for each Class entitled to vote to accept or reject the Plan and will File a ballot summary (the "***Ballot Summary***") as soon as practicable before the Confirmation Hearing. Additional copies of the Solicitation Package (except Ballots) can be obtained from the Balloting and Claims Agent as follows:

<div align="center">

By writing to:

**SH 130 Ballot Processing**
**c/o Prime Clerk LLC**
**830 Third Avenue, 3rd Floor, New York, NY 10022**

By emailing: sh130ballots@primeclerk.com

By calling: (855) 252-4068

</div>

All Ballots must be properly executed, completed and delivered to the Balloting and Claims Agent in accordance with the instructions set forth on the Ballot, so as to actually be received on or before the Voting Deadline.

If you have any questions on the procedures for voting on the Plan, please call the Balloting and Claims Agent at the following telephone numbers: Toll Free: (855) 252-4068.

<div align="center">

**VOTING INFORMATION AND**
**INSTRUCTIONS FOR COMPLETING THE BALLOT**

</div>

1.  In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.

2.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to the Balloting and Claims Agent in accordance with the instructions set forth on the Ballot.

3. Ballots must be received by the Balloting and Claims Agent by 5:00 p.m., Central Time, on [_____], 2016 (the "***Voting Deadline***"). If a Ballot is received after the Voting Deadline, it will not be counted. An envelope addressed to the Balloting and Claims Agent is enclosed for your convenience. Ballots submitted by email or facsimile transmission will not be accepted. Ballots should not be sent to the Debtors or their attorneys.

4. You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots will not be counted.

5. The Ballot does not constitute and shall not be deemed a Proof of Claim or an assertion of a Claim.

6. If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot received by the Balloting and Claims Agent before the Voting Deadline (as determined by the Balloting and Claims Agent) will be deemed to reflect your intent either to accept or reject the Plan.

7. If you wish to withdraw a Ballot after you have delivered it to the Balloting and Claims Agent, you may do so by delivering a notice of written withdrawal to the Balloting and Claims Agent at the address above so that the Balloting and Claims Agent receives the notice prior to the Voting Deadline. In order to be valid, a notice of withdrawal must (a) specify the name of the Creditor who submitted the Ballot to be withdrawn, (b) contain a description of the Claim(s) to which it relates and (c) be signed by the Creditor in the same manner as on the Ballot.

## PLEASE RETURN YOUR BALLOT PROMPTLY.

## BALLOTS SHOULD NOT BE SENT TO THE DEBTORS OR THEIR ATTORNEYS.

## THE BALLOTING AND CLAIMS AGENT
## WILL NOT ACCEPT BALLOTS BY EMAIL OR FACSIMILE TRANSMISSION.

## IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE INSTRUCTIONS ATTACHED THERETO.

C. **VOTING TABULATION**

To ensure that a vote is counted, the Holder of a Claim should: (i) complete a Ballot; (ii) indicate the Holder's decision either to accept or reject the Plan in the applicable boxes provided in the Ballot; and (iii) sign and timely return the Ballot in the manner and to the addresses set forth in the Ballot Instructions by the Voting Deadline.

The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of a Claim.

Ballots received after the Voting Deadline will not be counted, unless the Debtors, in their sole discretion, elect to accept the Ballot. The method of delivery of the Ballots to be sent to the Balloting and Claims Agent is at the election and risk of each Holder of a Claim. A Ballot will be deemed delivered only when the Balloting and Claims Agent actually receives the executed Ballot. Delivery of a Ballot to the Balloting and Claims Agent by electronic mail or facsimile will not be accepted. No Ballot should be sent to the Debtors, the Debtors' agents (other than the Balloting and Claims Agent), or the Debtors' financial or legal advisors. The Debtors expressly reserve the right to amend from time to time the terms of the Plan (subject to compliance with the requirements of section 1127 of the Bankruptcy Code and the terms of the Plan regarding modifications). The Bankruptcy Code requires the Debtors to disseminate additional solicitation materials if the Debtors make material changes to the terms of the Plan or if the Debtors waive a material condition to Plan Confirmation. In that event, the solicitation will be extended to the extent directed by the Bankruptcy Court.

In the event a designation of lack of good faith with respect to a Claim is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Bankruptcy Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Ballot Summary, nor will any of them incur any liability for failure to provide such notification.

The Balloting and Claims Agent will file the Ballot Summary with the Bankruptcy Court. The Ballot Summary shall, among other things, delineate every Ballot that does not conform to the Voting Instructions or that contains any form of irregularity (each an "***Irregular Ballot***") including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via facsimile, or damaged. The Ballot Summary also shall indicate the Debtors' intentions with regard to such Irregular Ballots.

## XVII.   CONFIRMATION PROCEDURES

### A.   CONFIRMATION HEARING

As described above, the Confirmation Hearing shall occur on [_____], 2016 at [__]:00 [_].m. (Prevailing U.S. Central Time), or as soon thereafter as counsel may be heard, before The Honorable Tony M. Davis, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Western District of Texas, Homer J. Thornberry Federal Building, 903 San Jacinto Blvd., Austin, Texas 78701. Notice of the Confirmation Hearing will be provided in the manner prescribed by the Bankruptcy Court, and will also be available on the internet at https://cases.primeclerk.com/SH130. The Plan may be modified in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan, other applicable law or as ordered by the Bankruptcy Court, without further notice, prior to or as a result of the Confirmation Hearing.

## B.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

### 1.    Requirements of Section 1129(a) of the Bankruptcy Code

The Bankruptcy Court will confirm the Plan only if it finds that all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the Plan: (i) is accepted by all impaired Classes of Claims and Equity Interests or, if rejected or deemed rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to each rejecting Class; (ii) is feasible; and (iii) is in the "best interest" of creditors and Holders of Equity Interests impaired under the Plan.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) they have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as the Plan proponents, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment: (i) made before the Confirmation of the Plan is reasonable; or (ii) subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after the Confirmation of the Plan.

- Either each Holder of an Impaired Claim against or Interest in the Debtors will accept the Plan, or each non-accepting Holder will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan of reorganization if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class.

## 2. Best Interests of Creditors Test/Liquidation Analysis

Pursuant to section 1129(a)(7) of the Bankruptcy Code, often called the "best interests test," holders of impaired allowed claims or interests must either (i) accept the plan of reorganization, or (ii) receive or retain under the plan property of a value, as of the plan's assumed effective date, that is not less than the value such non-accepting holders would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

The Debtors believe that the Plan provides the same or a greater recovery for Holders of Allowed Claims and Interests as would be achieved in a liquidation under chapter 7 of the Bankruptcy Code. This belief is based on a number of considerations, including: (i) SH 130's primary asset is a government concession that would have a substantially reduced value in a chapter 7 liquidation; (ii) the additional Administrative Claims generated by conversion to a chapter 7 case; (iii) the administrative costs of liquidation and associated delays in connection with a chapter 7 liquidation; and (iv) the negative impact on the market for the Debtors' assets caused by attempting to sell such assets in a short time frame, each of which likely would also diminish the value of the Debtors' assets available for distributions.

The Debtors have prepared an unaudited liquidation analysis, attached hereto as Exhibit B, to assist Holders of Claims and Interests in evaluating the Plan. The liquidation analysis compares the projected creditor recoveries that would result from the liquidation of the Debtors in a hypothetical case under chapter 7 of the Bankruptcy Code with the estimated distributions to Holders of Allowed Claims and Interests under the Plan. The liquidation analysis is based on the value of the Debtors' assets and liabilities as of a certain date and incorporates various estimates and assumptions, including a hypothetical conversion to a chapter 7 liquidation as of a certain date. Further, the analysis is subject to potentially material changes, including with respect to economic and business conditions and legal rulings. Therefore, the actual liquidation value of the Debtors could vary materially from the estimate provided in the liquidation analysis.

## 3. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan of reorganization). To determine whether the Plan meets the feasibility requirement, the Debtors have analyzed their ability to meet their respective

obligations under the Plan. As part of this analysis, the Debtors have prepared certain unaudited pro forma financial statements (the "***Financial Projections***") with regard to the Reorganized Debtors, which projections and the assumptions upon which they are based are attached hereto as <u>Exhibit C</u>. Based upon the Financial Projections, the Debtors believe that the comprehensive restructuring contemplated by the Plan will enable their business to be viable following the Effective Date of the Plan. Moreover, the Debtors believe that sufficient funds will exist to make all payments required by the Plan. Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

### 4.      Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan of reorganization, accept the plan. A class that is not "impaired" under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (ii) cures any default and reinstates the original terms of such obligation; or (iii) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the Debtors may redeem the security.

Section 1126(c) of the Bankruptcy Code defines "acceptance of a plan by a class of impaired claims" as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those claims that actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

### 5.      Confirmation Without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan of reorganization even if all impaired classes entitled to vote on the plan have not accepted it, *provided* that the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

### a.      No Unfair Discrimination

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under a plan of reorganization.  The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of

equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### b.    Fair and Equitable Test

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.

Section 1129(b) of the Bankruptcy Code does not apply to Classes 1, 2, and 5 because those Classes are conclusively presumed to accept the Plan. As to Classes 6 and 7, which are deemed to reject the Plan and, to the extent that Classes 3 and 4 (which are entitled to vote to accept or reject the Plan) vote to reject the Plan, the fair and equitable test sets different standards for confirming the Plan notwithstanding such rejection thereof depending upon the type of Claims or Interests in each such Class.

*Secured Claims*: The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that the Plan provides (i) both that (a) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (b) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a value, as of the effective date, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the claimant's liens; (ii) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) above or (iii) below; or (iii) for the realization by such holders of the indubitable equivalent of such claims.

*Unsecured Claims*: The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of such claim; or (ii) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest, subject to certain exceptions.

*Interests*: The condition that a plan be "fair and equitable" to a non-accepting class of interests, includes the requirements that either: (i) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the effective date, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled; (b) any fixed redemption price to which such holder is entitled; or (c) the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

*Cram-Down*: The Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code to the extent applicable, in view of the deemed rejection by Classes 6 and 7. The votes of Holders of Claims and Interests in Classes 6 and 7 are not being solicited because, under Article II of the Plan such Interests will receive no distribution and, therefore, such Holders are deemed to have rejected the Plan pursuant to section 1129(b) of the Bankruptcy Code. Notwithstanding the deemed rejection by Classes 6 and 7, or any Class that votes to reject the Plan, the Debtors do not believe that the Plan discriminates unfairly against any Impaired Class of Claims or Interests. The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## XVIII. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

*PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.*

### A. RISK FACTORS RELATED TO CONFIRMATION, EFFECTIVENESS, AND IMPLEMENTATION

#### 1. Parties in Interest May Object to the Debtors' Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### 2. Failure to Satisfy Vote Requirement

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to accomplish an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims or Interests as those proposed in the Plan.

#### 3. The Debtors May Not Be Able to Secure Confirmation of the Plan

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (i) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (ii) confirmation of such plan is not likely to be followed by a liquidation or a

need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (iii) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Company were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim or Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that this Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

The Liquidation Analysis for the Debtors is attached as <u>Exhibit B</u> to the Disclosure Statement. Parties in interest in these Chapter 11 Cases may oppose Confirmation of the Plan by alleging that the liquidation value of the Debtors is higher than reflected on the Liquidation Analysis and that the Plan thereby improperly limits or extinguishes their rights to recoveries under the Plan. At the Confirmation hearing, the Bankruptcy Court may hear evidence regarding the views of the Company and opposing parties, if any, with respect to valuation of the Debtors. Confirmation of the Plan is also subject to certain conditions as described in Article X of the Plan. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as other Classes, than the treatment currently provided in the Plan. Such a less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

### 4. Parties in Interest May Object to the Releases Contained in the Plan

Confirmation is also subject to the Bankruptcy Court's approval of the settlement, release, injunction, and related provisions described in Article VIII of the Plan. Certain parties in interest may assert that the Debtors cannot demonstrate that they meet the standards for approval of releases, exculpations, and injunctions under applicable law.

### 5. Nonconsensual Confirmation

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not

accepted, or is deemed to have rejected, the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtors believe that the Plan satisfies these requirements and the Debtors will request such nonconsensual Confirmation, if necessary, in accordance with section 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.

### 6. A Party in Interest May Object to the Amount or Classification of a Claim

Any party in interest with standing may object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated Distributions described in this Disclosure Statement.

### 7. Risk of Non-Occurrence of the Effective Date

The occurrence of the Effective Date is subject to the conditions precedent listed in the Plan. Although the Debtors believe that the Effective Date will occur as soon as reasonably practicable after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### 8. Contingencies Not to Affect Votes of Impaired Classes to Accept or Reject the Plan

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

### B. RISK FACTORS RELATED TO THE SECURITIES TO BE ISSUED UNDER THE PLAN AND RECOVERIES UNDER THE PLAN

### 1. The Debtors May Not Be Able to Achieve Their Projected Financial Results or Meet Their Post-Restructuring Debt Obligations

The Financial Projections represent management's best estimate of the future financial performance of the Debtors or the Reorganized Debtors, as applicable, based on currently known facts and assumptions about future operations of the Debtors or the Reorganized Debtors, as applicable, as well as the U.S. and world economy in general and the industry segments in which the Debtors operate in particular. There is no guarantee that the Financial Projections will be realized, and actual financial results may differ significantly from the Financial Projections. To the extent the Reorganized Debtors do not meet their projected financial results or achieve projected revenues and cash flows, the Reorganized Debtors may lack sufficient liquidity to continue operating as planned after the Effective Date, may be unable to service their debt obligations as they come due, or refinance the New Senior Debt or New PIK Notes, or may not

be able to meet their operational needs, all of which may negatively affect the value of the securities issued under the Plan. Further, a failure of the Reorganized Debtors to meet their projected financial results or achieve projected revenues and cash flows could lead to cash flow and working capital constraints, which constraints may require the Debtors to seek additional working capital. The Reorganized Debtors may be unable to obtain such working capital when it is required, or may only be able to obtain such capital on unreasonable or cost prohibitive terms. For example, the Reorganized Debtors may be required to take on additional debt, the interest costs of which could adversely affect the results of the operations and financial condition of the Reorganized Debtors, and also have a negative effect on the value of the New Equity Interests. In addition, if any such required capital is obtained in the form of equity, the SH 130 Equity Interests to be issued under the Plan could be diluted.

### 2. Estimated Recoveries Are Not Intended to Represent Potential Market Values.

The Debtors' estimated recoveries to Holders of Allowed Claims are not intended to represent the market value of the Debtors' securities. The estimated recoveries are based on numerous assumptions (the realization of many of which will be beyond the control of the Debtors), including: (i) the successful reorganization of the Debtors; (ii) an assumed date for the occurrence of the Effective Date; (iii) the Debtors' ability to achieve the operating and financial results included in the Financial Projections; (iv) the Debtors' ability to maintain adequate liquidity to fund operations; and (v) the assumption that capital and equity markets remain consistent with current conditions.

### 3. Certain Tax Implications of the Debtors' Bankruptcy and Reorganization May Increase the Tax Liability of the Reorganized Debtors

Holders of Allowed Claims and Allowed Interests should carefully review Article XIX of this Disclosure Statement, entitled "Certain U.S. Federal Tax Consequences of the Plan," to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Debtors.

### 4. Uncertain Trading Market and Uncertain Value

The Debtors have no present intention to register the New Equity Interests under the Exchange Act, or to apply to list the New Equity Interests on any national securities exchange. It is anticipated that there will be no active trading market for the New Equity Interests, and there can be no assurance as to the liquidity of any market that may develop for the securities. Any lack of liquidity may adversely affect the price at which New Equity Interests may be sold, if at all. Furthermore, holders of New Equity Interests may have difficulty selling or obtaining timely and accurate quotations with respect to such securities. The Reorganized Debtors will not be required to file periodic reports with the SEC or otherwise provide any other financial or other information to the public which may further impair liquidity and prevent brokers or dealers from publishing quotations. There cannot be any assurances as to the degree of price volatility in any market that develops for the New Equity Interests. Some holders who receive New Equity Interests may not elect to hold equity on a long-term basis. Sales by future shareholders of a substantial number of shares after the Effective Date could significantly reduce the market price

of the New Equity Interests. Moreover, the perception that these shareholders might sell significant amounts of the New Equity Interests could depress the trading price of the shares for a considerable period. Sales of the New Equity Interests, and the possibility thereof, could make it more difficult for the Reorganized SH 130 to sell equity, or equity-related securities, in the future at a time and price that they consider appropriate.

The valuation of the Reorganized Debtors is not intended to represent the trading value of the New Equity Interests in public or private markets.

### 5. Restrictions on Transfer

In addition to the "Uncertain Trading Market" described above, the New Corporate Governance Documents will contain certain restrictions on transfers, including with respect to compliance with applicable securities laws, and transfers the result of which would require the Company to become subject to the reporting requirements of the Securities Exchange Act of 1934, as amended (the "***Exchange Act***"). All certificates for shares of New Equity Interests will conspicuously bear legends with respect to the restrictions on transfer in respect thereof.

## C.    RISK FACTORS RELATED TO THE BUSINESS OF SH 130

### 1. Liquidity Risk

Liquidity is essential to the Debtors' businesses. The Debtors fund working capital requirements and necessary capital expenditures with cash flow from operation of the Toll Road. The Debtors' ability to generate cash flows from operations and to make scheduled payments on or refinance the Debtors' indebtedness, and to fund working capital needs and planned capital expenditures will depend on the Debtors' future financial performance and the Debtors' ability to generate cash in the future. The Debtors cannot assure you that the Debtors' operations will provide cash in sufficient amounts to maintain planned or future levels of capital expenditures.

The Plan provides for post-Effective Date liquidity through the maintenance of an Exit Facility. However, liquidity risks could arise from the Reorganized Debtors' inability to anticipate and provide for unforeseen events related to these funding sources. Such unforeseen events could have adverse consequences on the Reorganized Debtors' ability to meet its obligations under the Plan.

### 2. Retention of Key Management/Employees

The Debtors' ability to maintain its business operations in a timely and efficient manner will depend, to some extent, on its ability to retain highly experienced and qualified management personnel which are primarily responsible for the day-to-day oversight of company's operations. There can be no assurances that SH 130 will continue to be able to retain such experienced and qualified personnel, or be able to find suitable replacements. The inability to retain key personnel or attract suitable and qualified replacements may have a material adverse effect on the value of SH 130's business.

### 3.     Economic Conditions That Are Beyond the Debtors' Control

The Debtors' business depends on drivers' willingness to pay to travel on the Toll Road. A driver's willingness to travel on the Toll Road depends largely upon prevailing economic and traffic conditions that are influenced by numerous factors over which the Debtors' management has no control. If future economic conditions result in lower than expected customer traffic on the Toll Road, the Debtors' business, financial condition, liquidity, and results of operations could be adversely affected.

### 4.     Toll Road Maintenance Risks

Maintenance issues on the Toll Road may result in additional required capital expenditures which could further impact the Debtors' liquidity.

### 5.     Traffic Risk

Traffic levels on the Toll Road could fall below forecasts and as a result, the Debtors' business, financial condition, liquidity, and results of operations could be adversely affected. Additionally, drivers' potential use of other roadways could further impact the result of operations.

### 6.     Catastrophic Events

The Debtors face the risk that unforeseen catastrophic events may occur. Such events include, among others, severe car crashes, natural catastrophic events, and unexpected military or terrorist attacks occurring on or around the Toll Road. Should any such event occur, it could have a material adverse effect on the Debtors' businesses.

### 7.     Information System Risks

The Debtors' businesses may be adversely affected by disruptions in its information systems. The Debtors' operations are dependent upon its back office system to process raw data collected from the electronic toll collection system and transmit such data to TxDOT in a format that it can use to collect tolls from drivers. A substantial disruption in the Debtors' information systems for a prolonged period may have an adverse effect on the Debtors' financial condition, results of operations or cash flows.

### 8.     Extreme Weather Events

The Debtors' results of operations may be affected by weather conditions and may fluctuate substantially on a seasonal basis as the weather changes. In addition, the Debtors could be subject to the effects of extreme weather. Extreme weather events, including sustained cold temperatures, hurricanes, storms, floods, or other natural disasters, could be destructive and result in increased capital expenditures or costs. Moreover, an extreme weather event could cause disruption in service to customers due to downed wires and poles or damage to other operating equipment, which could result in lost revenue from toll collection by diverting customers to other roads.

D.    **MISCELLANEOUS RISK FACTORS AND DISCLAIMERS**

1.    **The Financial Information Is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit Was Performed**

In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to assure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtors believe that such financial information fairly reflects their financial condition, the Debtors are unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

2.    **Financial Projections or Other Forward Looking Statements Are not Assured and May Vary**

This Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtors' operations, including the Projections, that are, by their nature, forward looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtors may turn out to be different from the financial projections.

Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning (i) the timing of Confirmation and Consummation of the Plan in accordance with its terms; (ii) the anticipated future performance of the Reorganized Debtors, including, without limitation, the Debtors' ability to maintain or increase revenue and gross margins, control future operating expenses or make necessary capital expenditures; (iii) general business and economic conditions; and (iv) overall industry performance and trends.

Due to the inherent uncertainties associated with projecting financial results generally, the projections contained in this Disclosure Statement will not be considered assurances or guarantees. While the Company believes that the financial projections contained in this Disclosure Statement are reasonable, there can be no assurance that they will be realized.

3.    **No Legal or Tax Advice Is Provided by This Disclosure Statement**

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult its own legal counsel and accountant with regard to any legal, tax, and other matters concerning its Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to Confirmation.

4.      **No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (i) constitute an admission of any fact or liability by any entity (including the Debtors) nor (ii) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, the Reorganized Debtors, Holders of Allowed Claims, or any other parties in interest.

5.      **Failure to Identify Litigation Claims or Projected Objections**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Debtors may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

6.      **Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

7.      **No Representations outside This Disclosure Statement are Authorized**

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure voting Holders' acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by voting Holders in arriving at their decision. Voting Holders should promptly report unauthorized representations or inducements to counsel to the Debtors.

E.      **LIQUIDATION UNDER CHAPTER 7**

If no plan can be Confirmed, the Debtors' Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate the assets of the Company for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and the Debtors' liquidation analysis is set forth in Article XVII herein, "Confirmation Procedures" and the Liquidation Analysis is attached hereto as Exhibit B.

## XIX.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

The following discussion is a summary of certain material U.S. federal income tax consequences expected to result from the implementation of the Plan.  This discussion is based on the Internal Revenue Code of 1986, as amended and as in effect on the date of this Disclosure Statement (the "***Tax Code***"), and on U.S. Treasury Regulations in effect (or in certain cases, proposed) on the date of this Disclosure Statement, as well as judicial and administrative interpretations thereof available on or before such date.  Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims (including Claims within the same Class) and Interests, the Holder's status and method of accounting (including Holders within the same Class) and the potential for disputes as to legal and factual matters with the Internal Revenue Service (the "***IRS***"), the tax consequences described herein are subject to significant uncertainties.  The Tax Code, U.S. Treasury Regulations, and judicial or administrative interpretations thereof are subject to change, which change could apply retroactively and could affect the tax consequences described below.  There can be no assurance that the IRS will not take a contrary view with respect to one or more of the issues discussed below, and no opinion of counsel or ruling from the IRS has been or will be sought with respect to any issues which may arise under the Plan.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Claims or Interests in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, traders that mark-to-market their securities, mutual funds, insurance companies, other financial institutions, real estate investment trusts, tax-exempt organizations, small business investment companies, regulated investment companies, foreign taxpayers, persons whose functional currency is not the U.S. dollar, persons subject to the alternative minimum tax, and persons holding Claims or Interests as part of a "straddle," "hedge," "constructive sale" or "conversion transaction" with other investments).  This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue.  No aspect of foreign, state, local or estate and gift taxation is addressed.

The U.S. federal income tax consequences of the Plan to the Holders of Claims and Interests that are U.S. Persons will depend upon a number of factors.  For purposes of the following discussion, a "U.S. Person" is any person or entity (i) who is a citizen or resident of the United States, (ii) that is a corporation or partnership created or organized in or under the laws of the United States or any state thereof, (iii) that is an estate, the income of which is subject to U.S. federal income taxation regardless of its source or (iv) that is a trust (a) the administration over which a United States person can exercise primary supervision and all of the substantial decisions of which one or more U.S. persons have the authority to control; or (b) that has in effect a valid election to continue to be treated as a U.S. Person for U.S. federal income tax purposes.  In the case of a partnership (including, for purposes of this discussion, any entity or arrangement treated as a partnership for U.S. federal income tax purposes), the tax treatment of its partners will depend on the status of the partner and the activities of the partnership.  U.S. Persons who are partners in a partnership should consult their tax advisors.  A "Non-U.S. Person" is any person or entity that is not a U.S. Person or a partnership.  For purposes of the

following discussion and unless otherwise noted below, the term "Holder" shall mean a Holder of a Claim or Interest that is a U.S. Person.

Except where otherwise indicated, this discussion assumes that the Claims and Interests are held as capital assets within the meaning of section 1221 of the Tax Code.

THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE SPECIFIC CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

IRS CIRCULAR 230 NOTICE. TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (I) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS AND INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE TAX CODE; (II) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTORS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (III) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

A.    **CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES TO U.S. HOLDERS**

[To Come]

B.    **CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES TO NON-U.S. HOLDERS**

[To Come]

## XX.    CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interest of all Creditors and Holders of Interests and urge the Holders of Claims and Interests entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Debtors' Balloting and Claims Agent no later than [_]**:00 p.m. (Prevailing U.S. Central Time) on [_____], 2016.**

Dated: August 12, 2016

Respectfully submitted,

**SH 130 CONCESSION COMPANY, LLC**

By:         /s/ *Alfonso Orol*
              Name:   Alfonso Orol
              Title:    Authorized Signatory

**ZACHRY TOLL ROAD 56 – LP**

By:         /s/ *Timothy A. Watt*
              Name:   Timothy A. Watt
              Title:    Authorized Signatory

**CINTRA TX 56 LLC**

By:         /s/ *Antonio Resines*
              Name:   Antonio Resines
              Title:    Authorized Signatory

**AS DEBTORS AND DEBTORS IN POSSESSION**

**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
Alan Moskowitz (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com
Email address: AMoskowitz@gibsondunn.com

**JACKSON WALKER L.L.P.**
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX
By: /s/ *Jennifer F. Wertz*
Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jennifer F. Wertz
State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

**EXHIBIT A**
**PLAN**

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST.  THIS PLAN IS SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) BEFORE THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SH 130 CONCESSION COMPANY, LLC | § | CASE NO. 16-10262 |
| ZACHRY TOLL ROAD – 56 LP | § | CASE NO. 16-10263 |
| CINTRA TX 56 LLC | § | CASE NO. 16-10264 |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| 10800 N US 183 HWY | § | JOINTLY ADMINISTERED UNDER |
| BUDA, TEXAS 78610-9460 | § | CASE NO. 16-10262 |

## JOINT PLAN OF REORGANIZATION
## OF SH 130 CONCESSION COMPANY, LLC, *ET AL.*,
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
Alan Moskowitz (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com
Email address: AMoskowitz@gibsondunn.com

*Counsel to the Debtors and
Debtors in Possession*

Dated:  August 12, 2016

**JACKSON WALKER L.L.P.**
Patricia B. Tomasco (State Bar No. 01797600)
Jennifer F. Wertz (State Bar No. 24072822)
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX
Email address: ptomasco@jw.com
Email address: jwertz@jw.com

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
    GOVERNING LAW ........................................................................................................1

    A.    Defined Terms. ...........................................................................................1
    B.    Rules of Interpretation. ............................................................................12
    C.    Computation of Time. ..............................................................................12
    D.    Governing Law. ........................................................................................12
    E.    Reference to Monetary Figures. ...............................................................12

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ........................13

    A.    Administrative Claims. ............................................................................13
    B.    Professional Compensation. .....................................................................13
    C.    Priority Tax Claims. .................................................................................13
    D.    Claims in Connection with Debtor-in-Possession Financing. ...................13
    E.    Secured Party Fees. .................................................................................14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..........14

    A.    Classification of Claims and Interests. .....................................................14
    B.    Treatment of Claims and Interests. ..........................................................14
    C.    Special Provision Governing Unimpaired Claims. ....................................17
    D.    Acceptance or Rejection of the Plan. ........................................................17
    E.    Elimination of Vacant Classes. ................................................................17
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................17
    G.    Controversy Concerning Impairment. ......................................................17
    H.    Subordinated Claims. ...............................................................................17

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................18

    A.    No Substantive Consolidation. .................................................................18
    B.    Formation of New Holdco; Issuance of New Equity Interests ...................18
    C.    Continued Organizational Existence and Vesting of Assets in the Reorganized Debtors;
        Continued Operations ..............................................................................18
    D.    Restructuring Transactions. ......................................................................19
    E.    New Debt Documents. ..............................................................................20
    F.    Sources of Cash for Plan Distributions. ....................................................20
    G.    Governance, Directors and Officers; Employment-Related Agreements and
        Compensation Programs; Other Agreements. ...........................................20
    H.    Section 1145 Exemption. ..........................................................................22
    I.    General Settlement of Claims and Interests. .............................................22
    J.    Cancellation of Existing Securities and Agreements. .................................22
    K.    Corporate, Limited Liability Company and Partnership Action. ................22
    L.    Effectuating Documents; Further Transactions. ........................................23
    M.    Section 1146 Exemption. ..........................................................................23
    N.    Preservation of Causes of Action. ............................................................23
    O.    Payment of Certain Fees and Expenses. ....................................................24

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................24

    A.    Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases. .................................................................................................................24
    B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases. ...................25
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................25
    D.    Insurance Policies. ..........................................................................................................26
    E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........26
    F.    Reservation of Rights. .....................................................................................................26
    G.    Nonoccurrence of Effective Date. ...................................................................................26
    H.    Contracts and Leases Entered Into After the Petition Date. ............................................26

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................26

    A.    Disbursing Agent. ...........................................................................................................26
    B.    Rights and Powers of Disbursing Agent. .........................................................................27
    C.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ......................27
    D.    Compliance with Tax Requirements. ................................................................................27
    E.    Allocations. .....................................................................................................................27
    F.    No Post-Petition Interest on Claims. ................................................................................28
    G.    Setoffs and Recoupment. .................................................................................................28
    H.    Applicability of Insurance Policies. .................................................................................28

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND DISPUTED CLAIMS ................................................................................................................28

    A.    Disputed Claims. .............................................................................................................28
    B.    Objections to Claims and Interests. .................................................................................28
    C.    Compromises and Settlements. ........................................................................................28
    D.    No Distributions Pending Allowance. ..............................................................................28
    E.    Distributions After Allowance. ........................................................................................29

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............................29

    A.    Discharge of Claims and Termination of Interests. ..........................................................29
    B.    Releases. ..........................................................................................................................29
    C.    Exculpation. ....................................................................................................................30
    D.    Injunction. .......................................................................................................................31
    E.    Protections Against Discriminatory Treatment. ...............................................................31
    F.    Setoffs. ............................................................................................................................32
    G.    Recoupment. ....................................................................................................................32
    H.    Subordination Rights. ......................................................................................................32
    I.    Document Retention. .......................................................................................................32

ARTICLE IX. EFFECT OF CONFIRMATION OF THE PLAN ...........................................................32

ARTICLE X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...........................................32

    A.    Conditions Precedent to the Confirmation Date. ..............................................................32
    B.    Conditions Precedent to the Effective Date. .....................................................................32
    C.    Waiver of Conditions. .....................................................................................................33
    D.    Effect of Failure of Conditions. .......................................................................................33

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ......................................34

    A.     Modification and Amendments. ........................................................................................34
    B.     Effect of Confirmation on Modifications. ......................................................................34
    C.     Revocation or Withdrawal of Plan. ................................................................................34

ARTICLE XII. RETENTION OF JURISDICTION ................................................................................34

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................................35

    A.     Immediate Binding Effect. ..............................................................................................35
    B.     Additional Documents. ...................................................................................................36
    C.     Payment of Statutory Fees. .............................................................................................36
    D.     Reservation of Rights. ....................................................................................................36
    E.     Successors and Assigns. .................................................................................................36
    F.     Disallowed Claims. ........................................................................................................36
    G.     Notices. ...........................................................................................................................36
    H.     Term of Injunctions or Stays. .........................................................................................38
    I.     Entire Agreement. ...........................................................................................................38
    J.     Exhibits. ..........................................................................................................................38
    K.     Nonseverability of Plan Provisions. ...............................................................................38
    L.     Votes Solicited in Good Faith. .......................................................................................38
    M.     Closing of Chapter 11 Cases. .........................................................................................39
    N.     Waiver or Estoppel. ........................................................................................................39
    O.     Conflicts. .........................................................................................................................39

*[Remainder of page intentionally left blank.]*

SH 130 Concession Company, LLC, CINTRA TX 56 LLC, and Zachry Toll Road–56 LP, as debtors and debtors in possession (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") propose this joint plan of reorganization for the resolution of the outstanding claims against and interests in the Debtors pursuant to chapter 11 of title 11 of the United States Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A of the Plan.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, projections of future operations, and a summary and description of the Plan and certain related matters.  The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A.  Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.  "<u>Accrued Professional Compensation Claims</u>" means, at any given moment, all Claims for accrued fees and expenses for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been paid pursuant to any order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.  For the avoidance of doubt, Accrued Professional Compensation Claims shall include the aggregate holdback (if any) of those Professional fees billed to the Debtors during the Chapter 11 Cases that are held back pursuant to any other order of the Bankruptcy Court.  For the avoidance of doubt, the Secured Party Fees shall not constitute Accrued Professional Compensation Claims.

2.  "<u>Administrative Agent</u>" means BNP Paribas (as successor to Fortis Bank S.A./N.V., UK Branch), in its capacity as administrative agent under the Senior Loan Agreement, and/or its successors in such capacity.  The term "Administrative Agent" shall also include BNP Paribas (as successor to Fortis Bank S.A./N.V., UK Branch), in its role as Instructing Agent (as such term is defined in the Collateral Agency Agreement).

3.  "<u>Administrative Claim</u>" means any Claim for costs and expenses of administration of the Estates pursuant to section 503(b) or 507(a)(2) of the Bankruptcy Code, including any Cure Claim and the Secured Party Fees, other than any Accrued Professional Compensation Claim.

4.  "<u>Affiliate</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.  "<u>Allowed</u>" means with respect to any Claim, except as otherwise provided herein: (a) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (b) a Claim that is allowed (i) pursuant to the terms of the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith; (c) a Claim relating to a rejected Executory Contract or Unexpired Lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; (d) a Claim as to which a Proof of Claim has been timely Filed and as to which no objection has been Filed by the deadline established in Article VII.B; or (e) in the case of an Administrative Claim, such Administrative Claim (i) to the extent that it is based on liabilities incurred by a Debtor in the ordinary course of its business after the Petition Date and is payable by such Debtor in the ordinary course of business without the necessity of Bankruptcy Court approval, or (ii) if it is for fees payable pursuant to section 1930(a) of the Judicial Code; *provided*

1

that the Pre-Petition Secured Claims and the Secured Party Fees shall be deemed Allowed in the absence of the filing of Proofs of Claim.

6.        "Assumed Executory Contract and Unexpired Lease List" means the list (as may be amended from time to time prior to the Effective Date with the consent of the Required Consenting Senior Lenders pursuant to Article XI of the Plan) of Executory Contracts and Unexpired Leases that will be assumed by the Debtors pursuant to Article V of the Plan, which shall be filed twenty (20) Business Days prior to the Confirmation Hearing.

7.        "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101−1532.

8.        "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, or such other court exercising jurisdiction over all or any part of the Chapter 11 Cases, as applicable.

9.        "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10.        "Bar Date" means the deadline for filing Proofs of Claim, which unless established otherwise by Final Order of the Bankruptcy Court for a particular Claim, shall be (i) July 5, 2016 at 4:00 p.m. Central Standard Time for all Entities other than Governmental Units, or (ii) one hundred eighty (180) days after the Petition Date for Governmental Units.

11.        "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.        "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

13.        "Causes of Action" means any claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14.        "Certificate" means any instrument evidencing a Claim or an Interest.

15.        "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.        "Cintra" means Cintra Infraestructuras S.A. and its affiliates.

17.        "CINTRA TX" means CINTRA TX 56 LLC, a Delaware limited liability company and a Debtor in the Chapter 11 Cases.

18.        "Claim" means any "claim"(as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

19.        "Claims and Balloting Agent" means Prime Clerk LLC, located at 830 3rd Avenue, 9th Floor, New York, New York 10022.

20.        "Class" means a class of Claims or Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

21.     "<u>Collateral Agency Agreement</u>" means that certain Collateral Agency and Account Agreement, dated as of March 7, 2008 (as amended, supplemented or otherwise modified from time to time), among the Concessionaire, the Administrative Agent, the Hedging Banks, TIFIA, and the Collateral Agent.

22.     "<u>Collateral Agent</u>" means Deutsche Bank Trust Company Americas (as successor to Wells Fargo Bank, National Association), in its capacity as collateral agent and securities intermediary under the Collateral Agency Agreement.

23.     "<u>Concession Agreement</u>" means that certain Facility Concession Agreement, dated as of March 22, 2007, by and between TxDOT and the Concessionaire, as amended, modified, or supplemented from time to time.

24.     "<u>Concessionaire</u>" means SH 130 Concession Company, LLC, a Delaware limited liability company and a Debtor in the Chapter 11 Cases.

25.     "<u>Confirmation</u>" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

26.     "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

28.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court, which shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

29.     "<u>Confirmation Order Findings of Fact and Conclusions of Law</u>" means the proposed findings of fact and conclusions of law made by the Bankruptcy Court, each of which shall be: (a) reasonably acceptable to the Debtors and the Required Consenting Senior Lenders; (b) deemed to have been made and issued pursuant to Bankruptcy Rule 7052; and (c) made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014. Upon entry of the Confirmation Order, the Confirmation Order Findings of Fact and Conclusions of Law shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

30.     "<u>Consummation</u>" means the occurrence of the Effective Date.

31.     "<u>Contractor</u>" means Central Texas Highway Constructors LLC and its predecessors, successors, and assigns.

32.     "<u>Cure Claim</u>" means a Claim based upon a Debtor's default under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

33.     "<u>Debtors</u>" has the meaning ascribed to it in the preamble to the Plan.

34.     "<u>DIP Credit Agreement</u>" means [_____].

35.     "<u>DIP Facility</u>" means [_____].

36.     "<u>DIP Parties</u>" means [_____].

37.     "<u>Disallowed Claim</u>" means any Claim which has (i) not been scheduled by the Debtors in a liquidated, non-contingent and undisputed amount in the Schedules filed by the Debtors in the Chapter 11 Cases

pursuant to Bankruptcy Rule 1007, (ii) not been evidenced by a Proof of Claim filed in the Chapter 11 Cases by the applicable Bar Date, or (iii) been disallowed by a Final Order of the Bankruptcy Court.

38.    "Disbursing Agent" means, as the context requires, the Debtors, the Reorganized Debtors, or the Entity or Entities selected by the Debtors or Reorganized Debtors, as applicable, to make or facilitate distributions pursuant to the Plan.

39.    "Disclosure Statement" means the *Disclosure Statement Relating to the Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated August 12, 2016, including all exhibits and schedules thereto and references therein that relate to the Plan (as amended, modified, or supplemented from time to time), that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

40.    "Disclosure Statement Order" means an order entered by the Bankruptcy Court, approving, among other things, the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, authorizing the transmittal of the Disclosure Statement and the Plan to Holders of Claims and Interests, authorizing the solicitation of votes on the Plan, and approving related solicitation materials.

41.    "Disputed" means (a) in relation to Claims, such Claim if a Proof of Claim is required to be filed and (i) no Proof of Claim has been timely filed, (ii) an objection has been timely interposed, or (iii) the time for filing an objection to such Claim has not expired and no order of the Bankruptcy Court allowing such Claim has been entered, or (b) in relation to Claims and Interests, such Claim (other than a Pre-Petition Secured Claim) or Interest with respect to which the Debtors otherwise dispute its amount, enforceability or validity, or their liability.

42.    "Distribution Record Date" means the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the later of (a) five (5) Business Days prior to the Effective Date, or (b) with respect to Claims for which the applicable Bar Date has not expired as of such date, the earlier of (i) such applicable Bar Date, or (ii) the date on which a Proof of Claim evidencing such Claim is Filed.

43.    "Effective Date" means, with respect to the Plan, the date that is a Business Day selected by the Debtors with the consent of the Required Consenting Senior Lenders on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article X of the Plan have been satisfied or waived (in accordance with Article X.C of the Plan); (c) the Plan is declared effective by the Debtors; and (d) the Debtors shall have Filed notice of the Effective Date with the Bankruptcy Court.

44.    "Entity" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

45.    "Equity Security" means any "equity security" (as defined in section 101(16) of the Bankruptcy Code) in a Debtor.

46.    "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

47.    "Exculpated Claim" means any claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of the Plan or Restructuring Transactions, the formulation, preparation, dissemination, negotiation of any document in connection with the Plan, the Restructuring Documents, the Plan Supplement or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property pursuant to the Plan.

48.    "Executory Contract" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

49.    "Existing Equity Interests" means the existing Interests in the Debtors.

4

50.     "Exit Facility" means the new money senior capital expenditure facility which shall be used, among other things, to refinance the DIP Facility and for any extraordinary capital expenditures, including any amounts necessary for pavement remediation, as necessary or required.

51.     "Exit Facility Credit Agreement" means the credit agreement to be entered into with respect to the Exit Facility, as of the Effective Date, the form of which shall be included in the Plan Supplement and the terms of which shall be substantially in accordance with the terms set forth in the New Debt Term Sheet.

52.     "Exit Facility Documents" means the other documents and agreements ancillary to the Exit Facility Credit Agreement.

53.     "File" or "Filed" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

54.     "Final Order" means an order or judgment of the Bankruptcy Court, or court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided however*, that the filing of a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, relating to such order shall not cause such order to not be a "Final Order."

55.     "First Lien Lenders" means the banks and other financial institutions from time to time party to the Senior Loan Agreement.

56.     "General Unsecured Trade Claims" means any Unsecured Claim for payment for goods and services provided in the ordinary course of business, but excluding payment for any amounts incidental thereto, including payment for indemnification, contribution or reimbursement.  General Unsecured Trade Claims shall not include: (a) intercompany obligations among the Debtors; (b) Administrative Claims; (c) Accrued Professional Compensation Claims; (d) Priority Tax Claims; (e) Other Priority Claims; or (f) Other General Unsecured Claims.

57.     "Governance Term Sheet" means that term sheet describing the material terms of the New Holdco LLC Agreement, the form of which is attached hereto as **Exhibit 1**.

58.     "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

59.     "Hedging Agreements" means those certain ISDA Master Agreements and respective Schedules and Confirmations, between the Concessionaire and the hedge counterparties thereto, described in the Collateral Agency Agreement, pursuant to which, among other things, the Concessionaire hedged certain interest rate payment obligations under the Senior Loans, as amended, modified, or supplemented from time to time.

60.     "Hedging Banks" means the banks and other financial institutions from time to time parties to the Hedging Agreements.

61.     "Hedging Early Termination Date" means March 9, 2016, which is the date on which the Hedging Banks exercised their early termination rights under their respective Hedging Agreements.

62.     "Hedging Obligations" means, collectively, (a) all scheduled amounts payable to the Hedging Banks by the Concessionaire under the Hedging Agreements (including interest accruing after the Petition Date), net of all scheduled amounts payable to the Concessionaire by such Hedging Banks, and (b) all other indebtedness, fees,

indemnities and other amounts payable by the Concessionaire to the Hedging Banks under such Hedging Agreements net of all other indebtedness, fees, indemnities and other amounts payable by the Hedging Banks to the Concessionaire under such Hedging Agreements; *provided*, that Hedging Obligations shall not include Hedging Termination Obligations.

63.    "Hedging Termination Obligations" means the aggregate amount payable to the Hedging Banks by the Concessionaire upon the early unwind of the Hedging Agreements on the Hedging Early Termination Date, net of all amounts payable to the Concessionaire by such Hedging Banks upon the early unwind of such Hedging Agreements on the Hedging Early Termination Date.

64.    "Holder" means an Entity holding a Claim or an Interest, as applicable.

65.    "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

66.    "Implementation Memorandum" means the memorandum describing the restructurings, transfers, and other corporate transactions that the Debtors determine to be necessary or appropriate to effectuate the Restructuring Transactions in compliance with the Bankruptcy Code and other applicable United States law and, to the maximum extent possible, in a tax efficient manner. A non-final form of the Implementation Memorandum is attached to the Disclosure Statement as **Exhibit E**. The Plan Supplement will include a substantially final form of the Implementation Memorandum.

67.    "Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

68.    "Interest" means any: (a) Equity Security; or (b) issued, unissued, authorized, or outstanding shares of capital stock, partnership and limited liability company interests, or similar interests in the Debtors together with any warrants, options, or contractual rights to purchase or acquire such capital stock or interests at any time, and all rights arising with respect thereto.

69.    "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

70.    "Key Employee Incentive Plan" means the Debtors' incentive plan for key employees, substantially in the form filed in the Plan Supplement.

71.    "Key Employee Retention Plan" means the Debtors' retention plan for key employees, substantially in the form filed in the Plan Supplement.

72.    "Lien" means a "lien" as defined in section 101(37) of the Bankruptcy Code.

73.    ["New Collaboration Agreement" means, collectively, the agreement or agreements pursuant to which the applicable Cintra affiliate shall provide the services of certain secondees to the Reorganized Concessionaire, the form of which shall be acceptable to the applicable Cintra affiliate and shall be included in the Plan Supplement.]

74.    "New Concessionaire LLC Agreement" means the amended and restated limited liability company agreement for Reorganized Concessionaire that will become effective as of the Effective Date, the form of which shall be included in Plan Supplement and the terms of which shall be reasonably acceptable to the Debtors and the Required Consenting Senior Lenders**.**

75.    "New Debt Documents" means the Exit Facility Credit Agreement, the New Senior Credit Agreement, the New PIK Notes, the New Security Documents and the other documents and agreements ancillary to such agreements.

76.    "New Debt Term Sheet" means the term sheet attached hereto as **Exhibit 2**.

77.    "New Equity Interests" means the limited liability membership interests in New Holdco to be issued pursuant to the Plan and in accordance with the New Holdco LLC Agreement, and if the New Equity Interests will be distributed in certificated form, the form of such certificate shall be included in the Plan Supplement.

78.    "New Holdco" means [SH130 Holdings, LLC], a new Delaware limited liability company that (a) will be formed on or prior to the Effective Date pursuant to the filing of the New Holdco Certificate with the Secretary of State of the State of Delaware and (b) will hold, as of the Effective Date, 100% of the membership interests in Reorganized Concessionaire.

79.    "New Holdco Board" means the board of directors of New Holdco, from and after the Effective Date.

80.    "New Holdco Certificate" means the certificate of formation of New Holdco that will be filed with the Secretary of State of the State of Delaware on or after the Confirmation Date and on or prior to the Effective Date, the form of which shall be included in the Plan Supplement.

81.    "New Holdco LLC Agreement" means the limited liability company agreement for New Holdco that will become effective as of the Effective Date, the form of which shall be included the Plan Supplement and the terms of which shall be substantially in accordance with the terms set forth in the Governance Term Sheet.

82.    "New Operator" means the entity (and any personnel thereof) selected (or which may be selected following the Effective Date) by the Required Consenting Senior Lenders to provide services under the New Operator Agreement and to operate the Toll Road on behalf of Reorganized Concessionaire in accordance with the terms of the New Operator Agreement.

83.    "New Operator Agreement" means, collectively, the agreement or agreements pursuant to which the New Operator shall operate the Toll Road on behalf of Reorganized Concessionaire, the form of which may be included in the Plan Supplement, and the form and substance of which shall be acceptable to the New Operator and the Required Consenting Senior Lenders.

84.    "New Organizational Documents" means, collectively, the following documents, the forms of which agreements shall be included in the Plan Supplement:  (a) the New Holdco LLC Agreement; (b) the New Holdco Certificate; (c) the New Concessionaire LLC Agreement; and (d) the certificates or articles of incorporation, by-laws, or such other applicable formation documents of Reorganized Concessionaire.

85.    "New PIK Notes" means the subordinated PIK Notes due [December 2061], to be issued by Reorganized Concessionaire as of the Effective Date, in the initial principal amount of $[_____],[1] with an interest rate of [Adjusted LIBOR + 1.75%], which shall be subordinated in right of payment to the Exit Facility and the New Senior Debt, the form of which shall be included in the Plan Supplement and the terms of which shall be substantially in accordance with the terms set forth in the New Debt Term Sheet.

86.    "New Security Documents" means the collateral agency and accounts agreement, intercreditor agreement, security agreements and other related documents required by the Required Consenting Senior Lenders or TIFIA, as applicable, to grant, perfect and/or implement the Liens provided by the Reorganized Concessionaire pursuant to the New Debt Documents, the forms of which shall be included in the Plan Supplement.

87.    "New Senior Credit Agreement" means the credit agreement to be entered into by Reorganized Concessionaire and the Holders of Allowed Senior Secured Claims on the Effective Date, the form of which shall be included in the Plan Supplement and the terms of which shall be substantially in accordance with the terms set forth in the New Debt Term Sheet.

---

[1] Amount to equal $[1,682,398,000] (the respective total Claim amount) minus the aggregate principal amount of New Senior Debt.

88. "New Senior Debt" means the indebtedness to be issued by Reorganized Concessionaire under the New Senior Credit Agreement as of the Effective Date, with an initial principal amount of $[_____] and an interest rate of [Adjusted LIBOR plus __%].[2]

89. ["New Services Agreement" means the agreement pursuant to which the applicable Cintra affiliate shall provide general administrative services to the Reorganized Concessionaire, the form of which shall be acceptable to the applicable Cintra affiliate and shall be included in the Plan Supplement.]

90. "Operator" means the applicable Cintra affiliate that has provided the Operator Services.

91. "Operator Services" means the pre-petition, post-petition, and/or post-Effective Date operation and maintenance services provided by Cintra to the Concessionaire or Reorganized Concessionaire, as applicable, including: (a) back office tolling services, (b) disaster recovery services, (c) general administrative services (post-Effective Date general administrative services to be provided pursuant to the New Services Agreement), and (d) employee secondment services (post-Effective Date employee secondment services to be provided pursuant to the New Collaboration Agreement).

92. "Other General Unsecured Claim" means any Unsecured Claim that is not (i) an Accrued Professional Compensation Claim; (ii) an Administrative Claim; (iii) a General Unsecured Trade Claim; (iv) an intercompany obligation; (v) an Other Priority Claim; or (vi) a Priority Tax Claim.

93. "Other Priority Claims" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

94. "Other Secured Claims" means any Claim that is Secured, other than the Pre-Petition Secured Claims.

95. "Petition Date" means March 2, 2016, the date on which the Debtors commenced the Chapter 11 Cases.

96. "PIK Note Agreement" means the Note Agreement to be entered into between the Reorganized Concessionaire and the Holders of the Senior Secured Claims.

97. "Plan" means this *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, including the Plan Supplement, which is incorporated herein by reference.

98. "Plan Supplement" means the compilation of documents and forms of documents, schedules, and exhibits, each of which shall be reasonably acceptable to Debtors and the Required Consenting Senior Lenders, except as provided herein, to be Filed by the Debtors, no later than five (5) Business Days prior to the Confirmation Hearing, including the following: (a) the forms of the New Organizational Documents; (b) to the extent identified, a list of retained Causes of Action; (c) the forms of the New Debt Documents; (d) to the extent known, the names of the directors, managers, and executive officers for each of the Reorganized Debtors; (e) to the extent available, the form of the New Operator Agreement; (f) form of New Services Agreement (which also shall be acceptable in form and substance to the applicable Cintra affiliate); (g) form of New Collaboration Agreement (which also shall be acceptable in form and substance to the applicable Cintra affiliate); (h) the form of the New Equity Interests; (i) the New Security Documents; (j) the Assumed Executory Contract and Unexpired Lease List; (k) the Confirmation Order Findings of Fact and Conclusions of Law; and (l) the Implementation Memorandum. Any reference to the Plan Supplement in the Plan shall include each of the documents identified above. The Debtors shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date in accordance with Article XI of the Plan.

---

[2] Subject to further modeling upon finalization of the Exit Facility.

99.     "Plan Support Agreement" means any plan support agreement entered into by and among the Debtors, the Administrative Agent, the Senior Lenders, and/or TIFIA.

100.     "Pre-Petition Secured Claims" means, collectively: (a) the Senior Lender Secured Claims; and (b) the TIFIA Claims.

101.     "Priority Lender Claims" means, collectively:  (a) all fees due and payable to the First Lien Lenders, the Hedging Banks, and TIFIA, other than the Secured Party Fees, (b) all accrued and unpaid interest due and payable in respect of the Senior Loans and the TIFIA Loans, and (c) all Hedging Obligations due and payable to the Hedging Banks.

102.     "Priority Tax Claim" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

103.     "Pro Rata" means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of the Claims or Interests in that Class, or to the aggregate amount of the Claims or Interests in a particular Class and other Classes entitled to share in the same recovery as such Claim or Interest, under the Plan.

104.     "Professional" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered on or prior to the Effective Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

105.     "Proof of Claim" means a proof of Claim Filed by a Holder on account of such Claim; *provided* that Holders of Pre-Petition Secured Claims and Entities to which all or a portion of the Secured Party Fees are owed shall not be required to file a proof of any such Claims.

106.     "Reinstated" or "Reinstatement" means:  notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than a Debtor or an Insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder such that the applicable Claim or Interest is Unimpaired.

107.     "Released Party" means each of the following in its respective capacity as such:  (a) the Administrative Agent; (b) the Collateral Agent; (c) the DIP Parties; (d) the Senior Lenders; (e) TIFIA; (f) the Steering Committee and the members thereof; (g) with respect to each of the Entities in clauses (a) through (f), each such Entity's current and former Affiliates and subsidiaries and each such Entity's, Affiliate's, and subsidiary's respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (h) with respect to the Debtors and Reorganized Entities, their respective current and former officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

108.     "Reorganized Concessionaire" means the Concessionaire, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

109.    "Reorganized Debtors" means, collectively:  (a) the Reorganized Concessionaire; (b) New Holdco, from and after the Effective Date; and (c) any Affiliates of the Debtors or any of the foregoing entities, as applicable, existing or formed to effectuate the Restructuring Transactions.

110.    "Reorganized Entities" means the Reorganized Debtors and each of Cintra TX and Zachry Toll Road, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

111.    "Required Consenting Senior Lenders" means the Senior Lenders representing at least a majority of the outstanding principal amount of Senior Lender Secured Claims held by all Senior Lenders.

112.    "Restructuring Documents" means the Plan, Disclosure Statement, Plan Supplement, New Organizational Documents, New Debt Documents, the Implementation Memorandum and the other agreements and documentation effectuating the Plan.

113.    "Restructuring Transactions" means, collectively, (a) the formation of New Holdco, (b) the issuance to New Holdco of 100% of the membership interests in Reorganized Concessionaire, (c) the issuance of the New Equity Interests, (d) the issuance of the New Senior Debt and the New PIK Notes pursuant to the New Debt Documents, (e) the other transactions described in Article III.B (Treatment of Claims and Interests) of the Plan, (f) the entry into the Exit Facility, (g) to the extent applicable, the execution of the New Operator Agreement, (h) the execution of the New Organizational Documents, (i) the vesting of the assets of the Debtors and their respective Estates in the Reorganized Debtors, in each case in accordance with the Plan; and (j) any other arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or similar transactions that either (x) the Debtors and the Required Consenting Senior Lenders, or (y) the Reorganized Debtors, as applicable, determine are necessary or appropriate to implement the foregoing, in each case in accordance with the Plan, including, for the avoidance of doubt, all steps set forth in the Implementation Memorandum.

114.    "Secured" means when referring to a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

115.    "Secured Party Fees" means, as of the Effective Date, collectively, all accrued and unpaid reasonable, actual, and documented fees and out-of-pocket expenses of each of:  (a) the Administrative Agent; (b) the Collateral Agent (including fees and expenses of its counsel, Drinker Biddle & Reath LLP); (c) the Fronting Bank; (d) TIFIA (including fees and expenses of its counsel, Shearman & Sterling LLP); and (e) the professionals retained by the Administrative Agent and/or the Steering Committee (Munsch Hardt Kopf & Harr, P.C., Milbank, Tweed, Hadley & McCloy LLP, RPA Advisors, LLC and Louis Berger Group (Domestic), Inc.).

116.    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder.

117.    "Security" means a "security" as defined in section 2(a)(1) of the Securities Act.

118.    "Senior Lender Secured Claims" means, collectively:  (a) any Claims on account of the Senior Loans or other obligations owed to the First Lien Lenders under the Senior Loan Agreement and any related documents; and (b) any Claim on account of the Hedging Agreements (including any Claim on account of Hedging Obligations and Hedging Termination Obligations) which shall be deemed Allowed or other obligations owed to the Hedging Banks under the Hedging Agreements.

119.    "Senior Lenders" means, collectively, the First Lien Lenders and the Hedging Banks.

120.    "Senior Loan Agreement" means that certain Initial Senior Loan Agreement, dated as of March 7, 2008, among the Concessionaire, the Administrative Agent, and the First Lien Lenders, as amended, modified, or supplemented from time to time.

121.    "Senior Loans" means the loans in the outstanding aggregate principal amount, as of the Petition Date, of $[720,750,000.00] (exclusive of unpaid interest, whether or not such interest was accrued but unpaid as of the Petition Date), arising under the Senior Loan Agreement.  For the avoidance of doubt, the Senior Loans shall not include any amounts due under the Hedging Agreements.

122.    "Senior Secured Claims" means the Allowed Claims of the Senior Secured Parties, except for any Priority Lender Claims.

123.    "Senior Secured Parties" means, collectively: (a) the First Lien Lenders; (b) the Hedging Banks; (c) TIFIA; (d) the Collateral Agent; and (e) the Administrative Agent.

124.    "Steering Committee" means the group of certain Holders of Senior Lender Secured Claims.

125.    "TIFIA" means the United States Department of Transportation, acting by and through the Federal Highway Administrator.

126.    "TIFIA Agreement" means that certain TIFIA Loan Agreement, dated as of March 7, 2008, between the Concessionaire and TIFIA.

127.    "TIFIA Claims" means, as of the Effective Date, any Claims on account of the TIFIA Loans, except for any Priority Lender Claims.

128.    "TIFIA Loans" means the loans in the outstanding aggregate principal amount, as of the Petition Date, of $[550,875,000] (exclusive of unpaid interest, whether or not such interest was accrued but unpaid as of the Petition Date), arising under the TIFIA Agreement.

129.    "Toll Road" means segments five and six of Texas State Highway 130, which the Concessionaire was formed to finance, develop, design, construct, operate and maintain.

130.    "Toll Road Lease" means that certain Facility Lease, dated as of March 22, 2007, by and between TxDOT and the Concessionaire, as amended, modified, or supplemented from time to time.

131.     "TxDOT" means the Texas Department of Transportation.

132.    "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.    "Unimpaired" means, solely with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

134.    "Unsecured Claim" means any Claim that is not a Senior Secured Claim or an Other Secured Claim.

135.    "U.S. Trustee" means the Office of the United States Trustee for the Western District of Texas.

136.    "Zachry Toll Road" means Zachry Toll Road–56 LP, a Delaware limited partnership and a Debtor in the Chapter 11 Cases.

B.      *Rules of Interpretation.*

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented from time to time; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's Case Management and Electronic Case Filing system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended, modified, or supplemented from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any immaterial effectuating provisions may be interpreted by the Debtors or Reorganized Debtors, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan, subject to the approval of the Required Consenting Senior Lenders, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (15) the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation."

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.     *Administrative Claims.*

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment of its Allowed Claim, each Holder of an Allowed Administrative Claim will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either: (1) on the Effective Date, or as soon as practicable thereafter, (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Administrative Claim is Allowed by a Final Order, or as soon as reasonably practicable thereafter, or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims.

B.     *Professional Compensation.*

1.     Final Fee Applications and Payment of Accrued Professional Compensation Claims.

All final requests for the allowance and payment of Accrued Professional Compensation Claims incurred during the period from the Petition Date through the Effective Date, shall be Filed no later than 30 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of each Accrued Professional Compensation Claim that is Allowed and owing to a Professional shall be paid in Cash to such Professional from funds held by the Debtors' Estates or the Reorganized Debtors, as applicable, when such Claim is Allowed by a Final Order.

2.     Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking compensation for services rendered after such date shall terminate, and the Reorganized Debtors may pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.     *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, the Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

D.     *Claims in Connection with Debtor-in-Possession Financing.*

On the Effective Date, all advances, fees and expenses in connection with the DIP Facility provided to the Debtors and approved by the Bankruptcy Court shall be paid in Cash and any remaining Claims arising in connection with such debtor-in-possession financing shall be paid with the proceeds of the Exit Facility pursuant to the terms of the Exit Facility Credit Agreement.

E.      *Secured Party Fees.*

On the Effective Date, the Reorganized Debtors shall pay in Cash in full the Secured Party Fees to the extent not already paid.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Priority Tax Claims, and Accrued Professional Compensation Claims, are classified in the Classes set forth in this Article III of the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

1.  Class Identification.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Priority Lender Claims | Impaired | Entitled to Vote |
| Class 4 | Senior Secured Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Trade Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | Other General Unsecured Claims | Impaired | Not Entitled to Vote (Presumed to Reject) |
| Class 7 | Existing Equity Interests | Impaired | Not Entitled to Vote (Presumed to Reject) |

B.      *Treatment of Claims and Interests.*

1.  Class 1—Other Priority Claims.

(a)      *Classification*:  Class 1 consists of all Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Other Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive payment in full in Cash of the amount of such Holder's Allowed Other Priority Claim either: (i) on the Effective Date, or as soon as reasonably practicable thereafter, or (ii) if the Other Priority Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Other Priority Claim is Allowed by Final Order, or as soon as reasonably practicable thereafter.

(c)      *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2—Other Secured Claims.

    (a)    *Classification*: Class 2 consists of all Other Secured Claims.

    (b)    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Other Secured Claim, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Secured Claim shall receive the following treatment at the option of the Reorganized Debtors: (i) such Allowed Other Secured Claim shall be Reinstated; (ii) payment in full (in Cash) of such Allowed Other Secured Claim; (iii) satisfaction of such Allowed Other Secured Claim by delivering the collateral securing such Allowed Other Secured Claim and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    Class 3—Priority Lender Claims.

    (a)    *Classification*:  Class 3 consists of the Priority Lender Claims.

    (b)    *Allowance*:  The Priority Lender Claims shall be Allowed in the aggregate amount of $[94,799,000].  For the avoidance of doubt, the Holders of the Priority Lender Claims shall not be required to File Proofs of Claim to assert or otherwise evidence their respective Priority Lender Claims.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Priority Lender Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Lender Claim, each such Holder shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV below, New Senior Debt in the face amount equal to the Allowed amount of such Holders' Priority Lender Claim.

    (d)    *Voting:*  Class 3 is Impaired under the Plan.  Therefore, Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.    Class 4—Senior Secured Claims.

    (a)    *Classification*:  Class 4 consists of all Senior Secured Claims.

    (b)    *Allowance*:  The Senior Secured Claims shall be Allowed in the aggregate principal amount of $[1,587,599,000].  For the avoidance of doubt, the Holders of the Senior Secured Claims shall not be required to File Proofs of Claim to assert or otherwise evidence their respective Senior Secured Claims.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Senior Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Secured Claim, each such Holder thereof shall receive, on the Effective Date or as soon as reasonably practicable thereafter, subject to the provisions of Article IV below, its Pro Rata share (based on the

face amount of the Allowed amount of such Holder's Senior Secured Claim) of the following:

(i)     The New Senior Debt (remaining after the amounts allocated to the Holders of the Priority Lender Claims, as described in Class 3 above);

(ii)    100% of the New PIK Notes; and

(iii)   100% of the New Equity Interests.

(d)  *Voting*: Class 4 is Impaired under the Plan. Therefore, Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5. Class 5—General Unsecured Trade Claims.

(a)  *Classification*: Class 5 consists of all General Unsecured Trade Claims.

(b)  *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Trade Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Trade Claim, each such Holder shall receive, at the option of the Reorganized Debtors:

(i)     payment in full in Cash of the Allowed amount of such Allowed General Unsecured Trade Claim;

(ii)    Reinstatement of such Allowed General Unsecured Trade Claim; or

(iii)   such other treatment rendering such Allowed General Unsecured Trade Claim Unimpaired.

(c)  *Voting*: Class 5 is Unimpaired under the Plan. Holders of Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6. Class 6—Other General Unsecured Claims.

(a)  *Classification*: Class 6 consists of all Other General Unsecured Claims.

(b)  *Treatment*: On the Effective Date, all Other General Unsecured Claims shall be cancelled and extinguished. Holders of Other General Unsecured Claims shall not receive any distribution pursuant to the Plan.

(c)  *Voting*: Class 6 is Impaired under the Plan. Each Holder of a Claim in Class 6 is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

7. Class 7—Existing Equity Interests.

(a)  *Classification*: Class 7 consists of all Existing Equity Interests.

(b)  *Treatment*: On the Effective Date, subject to the provisions of Article IV below, all Existing Equity Interests shall be cancelled and extinguished. Holders of Existing Equity Interests shall not receive any distribution or retain any property pursuant to the Plan.

(c)    *Voting*: Class 7 is Impaired under the Plan. Each Holder of an Allowed Interest in Class 7 is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Acceptance or Rejection of the Plan.*

1.    Voting Classes.

Classes 3 and 4 are Impaired under the Plan. The Holders of Claims in such Classes are entitled to vote to accept or reject the Plan.

2.    Presumed Acceptance of the Plan.

Classes 1, 2, and 5 are Unimpaired under the Plan. The Holders of Claims in such Classes are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.    Presumed Rejection of the Plan.

Classes 6 and 7 are Impaired under the Plan. The Holders of Claims and Interests in such Classes are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

E.    *Elimination of Vacant Classes.*

Any Class of Claims that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

F.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Provided Classes 3 and/or 4 votes to accept the Plan, the Debtors request Confirmation pursuant to section 1129(b) of the Bankruptcy Code.

G.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy at or before the hearing conducted by the Bankruptcy Court to consider confirmation of the Plan. Any dispute with respect to Impairment that is not raised in sufficient time to enable the Bankruptcy Court to determine such dispute on or prior to the Confirmation Date shall be deemed waived.

H.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable

subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and Reorganized Debtors, as applicable, reserve the right to reclassify any Allowed Claim or Allowed Interest, other than the Pre-Petition Secured Claims, in accordance with any contractual, legal, or equitable subordination relating thereto; *provided*, *however*, that any such reclassification must be approved by the Required Consenting Senior Lenders.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *No Substantive Consolidation.*

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

B.      *Formation of New Holdco; Issuance of New Equity Interests*

On or after the Confirmation Date and on or prior to the Effective Date, New Holdco will be formed as a new Delaware limited liability company, by filing the New Holdco Certificate with the Secretary of State of the State of Delaware. As of the Effective Date, among other things, (a) the Concessionaire shall be converted, merged or otherwise reorganized into Reorganized Concessionaire, (b) 100% of the membership interests in Reorganized Concessionaire will be issued to New Holdco, and (c) the New Equity Interests will be issued and distributed to Holders of Senior Secured Claims in Class 4, pursuant to and in accordance with the Plan, in each case, as provided in the Implementation Memorandum. Each such issuance and distribution of New Equity Interests shall be authorized without the need for any further limited liability company action and without the need for any further consent, approval or action by any Holders of Claims or Interests or any other Entity.

Each issuance and distribution of the New Equity Interests under the Plan shall be governed by the applicable terms and conditions set forth in the Plan and the Implementation Memorandum and by the terms and conditions of the New Holdco LLC Agreement, which terms and conditions shall bind each such recipient of New Equity Interests.

On the Effective Date, New Holdco and Reorganized Concessionaire will be authorized to and shall issue or execute and deliver, as applicable, in accordance with the Implementation Memorandum, the New Equity Interests and the New Concessionaire LLC Agreement, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

C.      *Continued Organizational Existence and Vesting of Assets in the Reorganized Debtors; Continued Operations*

1.      Continued Organizational Existence and Vesting of Assets in the Reorganized Debtors

Except as otherwise provided herein: (1) as of the Effective Date, New Holdco shall exist as a separate legal entity, with all powers in accordance with the laws of the state of Delaware and the New Holdco LLC Agreement; (2) as of the Effective Date, Reorganized Concessionaire shall exist as a separate legal entity, with all powers in accordance with the laws of the state of Delaware and the New Concessionaire LLC Agreement; and (3) on the Effective Date, all property of the Estate of a Debtor, and any property acquired by a Debtor or Reorganized Debtor under the Plan, shall vest, subject to the Restructuring Transactions, in Reorganized Concessionaire, free and clear of all Claims, Liens, charges, other encumbrances, Interests and other interests. On and after the Effective Date, Reorganized Concessionaire may operate its business and may use, acquire and dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, each of New Holdco and Reorganized Concessionaire

may pay the respective charges that it incurs on or after the Effective Date for appropriate Professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Bankruptcy Court.

2. Continued Operations

If a New Operator Agreement has not been entered into prior to the Effective Date, the Operator shall continue to perform its roles operating and maintaining the Toll Road after the Effective Date, under the contractual arrangements in effect as of the Confirmation Date; *provided, however*, that the Operator shall only continue to perform the Operator Services for a maximum of 18 months following the Effective Date, unless otherwise agreed to among the applicable parties. Notwithstanding anything to the contrary in the Plan, to the extent the Required Consenting Senior Lenders seek to enter into a New Operator Agreement prior to the Effective Date, such agreement will be subject to any rights of TxDOT under the Concession Agreement.

3. [Survival of Certain Indemnification Obligations

The obligations of the Debtors, pursuant to the Debtors' operating agreements, certificates of incorporation or formation, articles of association, by-laws, or equivalent corporate governance documents, applicable statutes, or employment agreements to indemnify their respective current and former directors, officers, managers, agents, employees, representatives, and professionals, in respect of all present and future actions, suits, and proceedings against any of such officers, directors, managers, agents, employees, representatives, and professionals, based upon any act or omission related to service with, for, or on behalf of the Debtors on or before the Effective Date, as such obligations were in effect at the time of any such act or omission, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Reorganized Entities regardless of such confirmation, consummation, and reorganization.]

D. *Restructuring Transactions.*

On or after the Confirmation Date and on or prior to the Effective Date, New Holdco will be formed as a new Delaware limited liability company by filing the New Holdco Certificate with the Secretary of State of the State of Delaware, absent an alternative structure determined by the Debtors and the Required Consenting Senior Lenders. On the Effective Date, among other things, (a) 100% of the membership interests in Reorganized Concessionaire will be issued to New Holdco, (b) the New Equity Interests, the New PIK Notes, and New Senior Debt will be issued and distributed to Holders of Claims in Classes 3 and 4 as provided in the Implementation Memorandum and (c) Reorganized Concessionaire will enter into the Exit Facility and repay the DIP Facility pursuant to and in accordance with the Plan and the Implementation Memorandum. Certain other Restructuring Transactions may be undertaken as necessary or appropriate to effect, in accordance with applicable non-bankruptcy law, a corporate restructuring of the Debtors' or the Reorganized Debtors' respective businesses or simplify the overall corporate structure of the Reorganized Debtors, all to the extent not inconsistent with any other terms of the Plan and in accordance with the Implementation Memorandum, including the dissolution of CINTRA TX and Zachry Toll Road. Notwithstanding anything to the contrary in the Plan, the means and timing for implementation of the Plan, including the formation of New Holdco, will be subject, in all respects, to the provisions of the Implementation Memorandum. The Implementation Memorandum will specify the sequence and timing of steps undertaken to effectuate the Plan, and will supersede any timing of events and structuring aspects noted in this Plan.

Without limiting the foregoing, unless otherwise provided by the terms of a Restructuring Transaction or the Implementation Memorandum, all such Restructuring Transactions will be deemed to occur on the Effective Date and may include one or more mergers, conversions, consolidations, restructurings, dispositions, liquidations or dissolutions, as may be determined by the Debtors or the Reorganized Debtors and the Required Consenting Senior Lenders to be necessary or appropriate. Subject to the immediately preceding sentence, the actions to effect these transactions may include: (a) the execution and delivery of appropriate agreements or other documents of merger, conversion, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable state law and such other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment,

assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree; (c) the filing of appropriate certificates or articles of merger, conversion, consolidation, dissolution or change in corporate form pursuant to applicable state law; and (d) the taking of all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. Any such transactions may be effected on or subsequent to the Effective Date without any further action by the members, partners, stockholders, directors or managers of any of the Debtors or the Reorganized Debtors. All documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan shall become and shall remain effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

E.      *New Debt Documents.*

On the Effective Date, Reorganized Concessionaire shall be authorized to incur or issue, as applicable, the indebtedness under the Exit Facility, the New Senior Debt, and the New PIK Notes, and to execute, deliver and enter into the New Debt Documents, and any related agreements or filings without the need for any further corporate, limited liability company or partnership action and without further action by or approval of the Bankruptcy Court, and the New Debt Documents and any related agreements or filings shall be executed and delivered and the applicable Reorganized Debtors may incur or issue the indebtedness available thereunder in accordance with the Implementation Memorandum.

F.      *Sources of Cash for Plan Distributions.*

The Debtors or Reorganized Debtors, as applicable, are authorized to execute and deliver any documents necessary or appropriate to obtain Cash for funding the Plan, including pursuant and subject to the Exit Facility Credit Agreement. All consideration necessary for the Reorganized Debtors to make payments or distributions pursuant hereto shall be obtained through a combination of one or more of the following: (a) Cash on hand of the Debtors and their Estates, including Cash from business operations; (b) proceeds of the Exit Facility; (c) the proceeds of any tax refunds; (d) the proceeds of any Causes of Action; and (e) any other means of financing or funding that the Debtors or the Reorganized Debtors determine is necessary or appropriate, subject to the terms of the New Debt Documents.

G.      *Governance, Directors and Officers; Employment-Related Agreements and Compensation Programs; Other Agreements.*

1.      The New Holdco LLC Agreement and Other New Organizational Documents

Forms of the New Holdco LLC Agreement, the New Concessionaire LLC Agreement and the other New Organizational Documents will be included in the Plan Supplement and shall be in form and substance consistent in all material respects with the Governance Term Sheet. The New Holdco LLC Agreement, the New Concessionaire LLC Agreement and the certificate of incorporation and bylaws, limited liability company agreement or comparable constituent documents of the other Reorganized Debtors shall, among other things, prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the limited liability company agreement of Concessionaire will be amended and restated as the New Concessionaire LLC Agreement of Reorganized Concessionaire, and the New Holdco LLC Agreement will be executed by New Holdco and become effective as the limited liability company agreement of New Holdco. As of the Effective Date, New Holdco and all recipients of New Equity Interests issued pursuant to the Plan shall be deemed to be parties to and bound by the New Holdco LLC Agreement, without the need for execution by any such Entity other than New Holdco. In addition, the New Holdco LLC Agreement shall be binding on all transferees and other holders of New Equity Interests, regardless of whether they execute the New Holdco LLC Agreement. Notwithstanding the foregoing, a Holder of an Allowed Senior Secured Claim will not be entitled to receive their respective distribution of New Equity Interests pursuant to the Plan unless and until such Holder delivers to New Holdco a duly executed counterpart signature page to the New Holdco LLC Agreement.

At any time after the Effective Date, any one or more of the Reorganized Debtors may amend its respective certificate of formation, limited liability company agreement, certificate of incorporation, bylaws or comparable constituent documents, as applicable, to the extent permitted by applicable non-bankruptcy law and subject to the terms and conditions set forth in the applicable constituent documents.  On the Effective Date, or as soon thereafter as is practicable, each Reorganized Debtor shall file any such certificate of formation or certificate of incorporation (or comparable constituent documents) with the secretary of state or jurisdiction or similar office of the state or jurisdiction in which such Reorganized Debtor is incorporated or organized, to the extent required by and in accordance with the applicable corporate, limited liability company or partnership law, as applicable, of such state or jurisdiction.

2.    Directors and Officers of the Reorganized Debtors

In accordance with section 1129(a)(5) of the Bankruptcy Code, to the extent known, the initial members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors, as of the Effective Date and subject to the rights of TxDOT under the Concession Agreement, shall be identified in a disclosure to be included in the Plan Supplement.

3.    Employment-Related Agreements and Compensation Programs

Except as otherwise provided herein, as of the Effective Date, the Reorganized Debtors shall have authority to:  (i) maintain, Reinstate, amend or revise existing employment, retirement, welfare, incentive, severance, indemnification and other agreements with its active and retired directors, officers and employees, subject to the terms and conditions of any such agreement and applicable non-bankruptcy law; and (ii) enter into new employment, retirement, welfare, incentive, severance, indemnification and other agreements for active and retired employees, including the Key Employee Incentive Plan and the Key Employee Retention Plan; *provided, however*, that any amendments or revisions to employment or related agreements of any employees seconded to the Debtors by Cintra, whether such employment or related agreements were entered into prior to or after the Effective Date, shall be subject to the consent of the applicable Cintra affiliate.

4.    Other Matters

Notwithstanding anything to the contrary in the Plan, no provision in any contract, agreement or other document with the Debtors that is rendered unenforceable against the Debtors or the Reorganized Debtors pursuant to sections 541(c), 363(*l*) or 365(e)(1) of the Bankruptcy Code, or any analogous decisional law, shall be enforceable against the Debtors or Reorganized Debtors as a result of the Plan.

5.    Transactions Effective as of the Effective Date

Pursuant to section 1142 of the Bankruptcy Code and section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation law of any other applicable jurisdiction, the following shall occur and be effective as of the Effective Date, if no such other date is specified in such other documents, including the Implementation Memorandum, and shall be authorized and approved in all respects and for all purposes without any requirement of further action by the stockholders, members, managers or directors of the Debtors or any of the Reorganized Debtors:  (a) the Restructuring Transactions; (b) the adoption of the New Organizational Documents; (c) the election or appointment, as applicable, of the initial members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors as of the Effective Date; (d) the distribution of Cash and other property pursuant to the Plan, subject to Article VI; (e) the authorization and issuance of the Exit Facility, the New Senior Debt and the New PIK Notes pursuant to the Plan; (f) the authorization and issuance of New Equity Interests pursuant to the Plan; (g) the entry into and performance under the New Debt Documents; (h) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents related to any of the foregoing; (i) the adoption, execution and implementation of employment, retirement and indemnification agreements, incentive compensation programs, including the Key Employee Incentive Plan and the Key Employee Retention Plan, retirement income plans, welfare benefit plans and other employee plans and related agreements; and (j) any other matters provided for under the Plan involving the corporate structure of the Debtors or Reorganized Debtors or any corporate, limited liability company or partnership action to be taken by or required of a Debtor or Reorganized Debtor.

H.      *Section 1145 Exemption.*

To the maximum extent provided by section 1145(a) of the Bankruptcy Code, the offering, issuance and distribution under the Plan of the New Equity Interests and the New PIK Notes (collectively, the "<u>New Securities</u>") shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable federal, state or local law requiring the registration of any offering, issuance, distribution or sale of securities.  The exemptions provided for in section 1145 of the Bankruptcy Code do not apply to an entity that is deemed an "underwriter" as such term is defined in section 1145(b) of the Bankruptcy Code. To the extent that such exemption under section 1145(a) is not available with respect to the offering, issuance and distribution of any of the New Securities, the offering, issuance and/or distribution, as applicable, of such New Securities will be made pursuant to the exemption set forth in section 4(a)(2) of the Securities Act or another exemption thereunder.  The New Securities issued and distributed under the Plan shall be authorized without the need for further limited liability company action with respect to New Holdco or any of the Reorganized Debtors or without any further action by any Entity, and once issued, all such New Securities shall be duly authorized and validly issued.

Resales of the New Securities issued and distributed under the Plan will be subject to (i)  the contractual restrictions on transfer contained in the New Holdco LLC Agreement (with respect to the New Equity Interests) and the New Debt Documents (with respect to the New PIK Notes); and (iii) applicable regulatory approval, if any.  In addition, to the extent that any New Securities distributed under the Plan are not covered by section 1145(a), such New Securities will be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and may not be transferred or resold except as permitted under the Securities Act and other applicable securities laws, pursuant to registration or exemption therefrom.

I.      *General Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

J.      *Cancellation of Existing Securities and Agreements.*

On the Effective Date, except to the extent otherwise provided in the Plan or the Implementation Memorandum, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including the Pre-Petition Secured Claims and the Existing Equity Interests, shall be deemed cancelled and surrendered without any need for a Holder to take further action with respect thereto and the obligations of the Debtors or Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable.  Notwithstanding anything to the contrary in the Plan, including this paragraph, the Liens of the Senior Secured Parties shall be deemed to become Liens under the New Security Documents and New Debt Documents, and shall not be discharged hereby.

K.      *Corporate, Limited Liability Company and Partnership Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (1) selection of the members of the New Holdco Board and the other directors, managers, and officers of the Reorganized Debtors; (2) implementation of the Restructuring Transactions; (3) the entry by the applicable Reorganized Debtors into the New Debt Documents, and, to the extent applicable, the New Operator Agreement; (4) the issuance of the New Equity Interests, the New PIK Notes and the New Senior Debt and the incurrence of the Exit Facility; (5) the dissolution of CINTRA TX and Zachry Toll Road, as necessary and in the discretion of the Debtors and the Senior Secured Parties; (6) with respect to all intercompany obligations among the Debtors, the Debtors, with the consent of the Required Consenting Senior Lenders, shall either (a) extinguish, (b)

compromise by distribution, contribution or otherwise, or (c) Reinstate such intercompany obligations; and (7) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date), without the need for any further corporate, limited liability company or partnership action and without the need for any further consent, approval or action by any Holders of Claims or Interests or any other Entity. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate, limited liability company or partnership action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Debt Documents and any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Article IV.K of the Plan shall be effective notwithstanding any requirements that would otherwise apply under applicable nonbankruptcy law.

L.      *Effectuating Documents; Further Transactions.*

From and after the Effective Date, the Debtors and the Reorganized Debtors and the officers and members of the boards of managers thereof, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan in the name of and on behalf of the Debtors and the Reorganized Debtors, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Section 1146 Exemption.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or interests pursuant to the Plan, including the recording of any amendments to such transfers, or any new mortgages or liens placed on the property in connection with such transfers, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

N.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Debtors and the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement and any actions related to claims in connection with the design, construction, operation, maintenance, reconstruction or remediation of the Toll Road (including, for the avoidance of doubt, any actions against the Contractor), and the rights of the Debtors and Reorganized Debtors, as applicable, to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date[, other than the following Causes of Action, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date: all Causes of Action that arise under (a) sections 544, 547, and 548 of the Bankruptcy Code and (b) state fraudulent conveyance law, in each case, solely related to payments made in the 90 days prior to the Petition Date]. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as**

**otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled pursuant to the Plan or a Final Order, the Debtors and Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors and the Reorganized Debtors, as applicable, reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, any Causes of Action that a Debtor or its Estate may hold against any Entity shall vest in the Debtors or the Reorganized Debtors, as applicable. The applicable Debtors or the Reorganized Debtors through their respective authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  On or after the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

O.      *Payment of Certain Fees and Expenses.*

On the Effective Date, the Reorganized Debtors shall pay in Cash in full the Secured Party Fees to the extent not already paid.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption, Assumption and Assignment, and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except any Executory Contract or Unexpired Lease (1) identified on the Assumed Executory Contract and Unexpired Lease List (which shall be included in the Plan Supplement) as an Executory Contract or Unexpired Lease designated for assumption, (2) which is the subject of a separate motion or notice to assume or reject Filed by the Debtors and pending as of the Confirmation Hearing, (3) that previously expired or terminated pursuant to its own terms or (4) that was previously assumed by any of the Debtors.  Any objection to the assumption, assumption and assignment, or rejection of an Executory Contract or Unexpired Lease, as applicable, must be Filed, served, and actually received by the counsel to the Debtors, counsel to the Steering Committee, the clerk of the Bankruptcy Court, and the United States Trustee on or before the later of (i) the commencement of the Confirmation Hearing and (ii) ten (10) Business Days following receipt of notice of such proposed assumption, assumption and assignment, or rejection.  Any such objection will be scheduled to be heard by the Bankruptcy Court as soon as reasonably practicable after such objection is Filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or rejection will be deemed to have assented to such assumption, assumption and assignment, or rejection, as applicable.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumption of Executory Contracts identified on the Assumed Executory Contract and Unexpired Lease List and rejection of all other Executory Contracts and Unexpired Leases, subject to the exceptions noted above, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, and not assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision

shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors or Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contract and Unexpired Lease List prior to the Confirmation Date on no less than three (3) days' notice to any counterparty to an Executory Contract or Unexpired Lease affected thereby.

B.      *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be Filed with the Claims and Balloting Agent no later than the later of 30 days after the Effective Date or the effective date of rejection. Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be classified as a General Unsecured Trade Claim and shall be treated in accordance with Article III, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned, as applicable, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

No later than twenty (20) Business Days prior to the Confirmation Hearing, the Debtors shall serve notices of proposed assumption or (if applicable) assumption and assignment and the proposed cure amounts to the applicable counterparties to Executory Contracts and Unexpired Leases, and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection to a proposed cure amount by a counterparty to an Executory Contract or Unexpired Lease must be Filed, served, and actually received by the counsel to the Debtors, counsel to the Steering Committee, the clerk of the Bankruptcy Court, and the U.S. Trustee on or before the later of (1) the commencement of the Confirmation Hearing and (2) ten (10) Business Days following receipt of notice of such proposed assumption or assumption and assignment and the proposed cure amounts. Any such objection will be scheduled to be heard by the Bankruptcy Court as soon as reasonably practicable after such objection is Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount applicable to an Executory Contract or Unexpired Lease to be assumed or assumed and assigned will be deemed to have assented to such cure amount. **Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

In the event of a dispute regarding: (1) the amount of any payments to cure a default in connection with a proposed assumption or assumption and assignment of an Executory Contract or Unexpired Lease; (2) the ability of the Debtors, the Reorganized Debtors, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or to be assumed and assigned; or (3) any other matter pertaining to assumption or assumption and assignment, as applicable, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or Final Orders resolving the dispute and approving the assumption or assumption and assignment, as applicable.

Assumption, rejection, or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

D.       *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

E.       *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or assumed and assigned, as applicable, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to pre-petition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the pre-petition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.       *Reservation of Rights.*

Nothing contained in the Plan, including identification in the Assumed Executory Contract and Unexpired Lease List, shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease subject to assumption or rejection pursuant to section 365(a) of the Bankruptcy Code, or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, if necessary.

G.       *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

H.       *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor shall be assumed or assumed and assigned by such Debtor in accordance with the Plan.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.       *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on or after the Effective Date, except as otherwise provided in the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

B.    *Rights and Powers of Disbursing Agent.*

    1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary or appropriate to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

    2.    Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

C.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

    1.    Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on such Holder's Proof of Claim, or if no Proof of Claim has been filed, as reflected in the Debtors' books and records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the sole discretion of the Reorganized Debtors.

    2.    Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

D.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary or appropriate to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

E.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

*F.      No Post-Petition Interest on Claims.*

Post-petition interest shall not accrue or be paid on any Claims against the Debtors, and no Holder of a Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Claim.

*G.      Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the Holder of any such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors, as applicable, of any such Claim it may have against the Holder of such Claim.

*H.      Applicability of Insurance Policies.*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, their Estates or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

*A.      Disputed Claims.*

Holders of Allowed Claims, Interests, and Administrative Claims need not file a Proof of Claim with the Bankruptcy Court.  On and after the Effective Date, except as otherwise provided in the Plan, all Allowed Claims shall be paid in accordance with the terms of the Plan and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced.  Nothing in this paragraph shall in any way limit the Debtors' or Reorganized Debtors' rights to contest the validity, amount or enforceability of any Claim regardless of whether a Proof of Claim is required for such Claim.

*B.      Objections to Claims and Interests.*

Unless a different time is set by an order of the Bankruptcy Court or otherwise established pursuant to the Plan, all objections to Claims and Interests must be Filed within six months of the Effective Date; *provided*, that no such objection may be Filed with respect to any Claim or Interest after a Final Order has been entered Allowing such Claim or Interest.

*C.      Compromises and Settlements.*

From and after the Effective Date, and without any further approval by the Bankruptcy Court, the Reorganized Debtors, as applicable, may compromise and settle all Claims and Causes of Action, without the necessity of Bankruptcy Court approval or any further notice.

*D.      No Distributions Pending Allowance.*

If a Claim or Interest, or any portion of a Claim or Interest, is Disputed, no payment or distribution provided hereunder shall be made on account of such Disputed Claim or Interest, unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

E.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims and Interests of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, or whether asserted or unasserted, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.  Notwithstanding anything to the contrary in the Plan, including this paragraph, (a) the Liens of the Senior Secured Lenders and TIFIA shall be retained and supplemented by Liens granted by Reorganized Concessionaire under the New Security Documents and the New Debt Documents, and such retained and granted Liens shall not be discharged under the Plan, and (b) the terms of the Plan shall not discharge, release or otherwise adversely affect the New Equity Interests, or the membership interests in Reorganized Concessionaire that are issued to New Holdco.

B.      *Releases.*

1.      Releases by the Debtors

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacities and as debtors in possession will be deemed to release and forever waive and discharge the Released Parties from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Entities, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, including, without limitation, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Debtors or their Estates at any time on or prior to the Effective Date against the Released Parties, except that the Debtors will not be deemed to release, waive, or discharge the Released**

29

Parties from and against any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

    2.    Releases by Certain Third Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Senior Secured Parties in their individual capacities will be deemed to have released and forever waived and discharged each Debtor, each Reorganized Entity, each Estate, and each Released Party from and against all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date (including prior to the Petition Date) in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Entities, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, the Reorganized Entities, and any Released Party, including, without limitation, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or any other act, omission, transaction, agreement, event, or other occurrence taking place before the Effective Date and that could have been asserted by or on behalf of the Senior Secured Parties at any time on or prior to the Effective Date against each Debtor, each Estate, or each Released Party, except that the Senior Secured Parties will not be deemed to release, waive, or discharge a Debtor, a Reorganized Entity, an Estate, or a Released Party, as applicable, from and against any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities arising out of or relating to any act or omission of a Debtor, a Reorganized Entity, an Estate, or a Released Party, as applicable, that constitutes willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any post-Effective Date obligations of any party under the Plan, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

    3.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Reorganized Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns in accordance with the Plan.

C.    *Exculpation.*

Except as otherwise specifically provided in the Plan, each Debtor, each Reorganized Entity, each Estate, and each Released Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any Exculpated Claim, except to the extent such claim, obligation, Cause of Action, or liability arises from willful misconduct or gross negligence or the breach of the Plan Support Agreement, but in all respects (other than with respect to any breach of the Plan Support Agreement) such released Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtors, the Reorganized Entities, the Estates, and the Released Parties have, and

upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with applicable law with regard to the restructuring and treatment of Claims and Interests in the Chapter 11 Cases and in connection with the Restructuring Transactions, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments, or other documents (including the New Debt Documents and documents and instruments related thereto, and any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Entity on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Plan, and the distribution of and the solicitation of votes on the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.  Without limiting the generality of the foregoing, each Debtor, each Reorganized Entity, each Estate, and each Released Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.  Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or any Executory Contract or Unexpired Lease assumed during the Chapter 11 Cases or under the Plan.

D.     *Injunction.*

Except as otherwise expressly provided in the Plan, the Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan (including any obligations under the Plan, the New Debt Documents and documents and instruments related thereto), all Entities who have held, hold, or may hold any claims, Causes of Action or interests that have been discharged pursuant to Article VIII.A of the Plan or are subject to exculpation pursuant to Article VIII.C of the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Entities or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Entities or the Released Parties on account of or in connection with or with respect to any such claims, Causes of Action or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Entities, the Released Parties, or their respective property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Reorganized Entities or the Released Parties or against their respective property or estates on account of or in connection with or with respect to any such claims, Causes of Action or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim, Cause of Action or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims, Causes of Action or interests released or settled pursuant to the Plan.

E.     *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

F.    *Setoffs.*

Except as otherwise expressly provided for in the Plan, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Debtor or Reorganized Debtor may possess against such Holder.

G.    *Recoupment.*

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless (1) such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date or (2) such Claim is Reinstated under the Plan.

H.    *Subordination Rights.*

The classification and treatment of all Claims and Interests under the Plan shall conform to and with the respective contractual, legal, and equitable subordination rights of such Claims and Interests, and, subject to the provisions of Article III.H. of the Plan, any such subordination rights shall be settled, compromised, and released pursuant to the Plan.

I.    *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

Upon entry of the Confirmation Order, the Bankruptcy Court shall be deemed to have made and issued pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014, the Confirmation Order Findings of Fact and Conclusions of Law.  Upon entry of the Confirmation Order, the Confirmation Order Findings of Fact and Conclusions of Law shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law in the Plan shall constitute conclusions of law even if they are stated as findings of fact.

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Confirmation Date.*

It shall be a condition to the Confirmation Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C of the Plan:

1.    The Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders;

2.    All documents to be provided in the Plan Supplement are in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders and have been filed with the Bankruptcy Court;

3.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders and must provide for the confirmation of the Plan with respect to each Debtor; and

4.    The Debtors shall have received a binding commitment for the Exit Facility, in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, in an amount sufficient to satisfy (i) all Effective Date Cash requirements, including, without limitation, satisfaction of all Allowed Cure Claims and (ii) feasibility requirements as required pursuant to section 1129 of the Bankruptcy Code.

B.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C of the Plan:

1.    all Restructuring Documents shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders;

2.    the Confirmation Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, in full force and effect, and not be subject to any stay or injunction;

3.    all actions, documents, Certificates, and agreements necessary or appropriate to implement the Plan, including documents contained in the Plan Supplement, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws;

4.    all authorizations, consents, regulatory approvals (including approvals and consents from TxDOT), rulings, or documents that are necessary or appropriate to implement and effectuate the Plan shall have been received;

5.    the Concession Agreement, Toll Road Lease and all operation and maintenance contracts and services contracts, as agreed to by the Required Consenting Senior Lenders, shall have been assumed by the Debtors;

6.    the Exit Facility shall have been consummated; and

7.    all Secured Party Fees shall have been paid.

C.      *Waiver of Conditions.*

The conditions set forth in Article X.A. and X.B of the Plan may be waived only by written consent of the Debtors and the Required Consenting Senior Lenders.  Such waiver may be effectuated without notice to or entry of an order of the Bankruptcy Court and without notice to any other parties in interest.

D.      *Effect of Failure of Conditions.*

If Consummation does not occur on or prior to [December 31, 2016], the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by the Debtors, Holders of Claims, or Holders of Interests or any Causes of Action; (2) prejudice in any manner the rights of the Debtors, any Holders, the Required Consenting Senior Lenders, TIFIA or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, the Required Consenting Senior Lenders, TIFIA or any other Entity in any respect, including with respect to substantive consolidation and similar arguments.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.  *Modification and Amendments.*

Except as otherwise provided in the Plan and subject to the consent of the Required Consenting Senior Lenders, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Such modification may be material or immaterial, and may include material modifications to the economic terms of the Plan, provided, however, that any such material modification to the economic terms of the Plan may only be made subject to the consent of the Required Consenting Senior Lenders.  Further, subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to exercise its reasonable discretion to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary or appropriate may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary or appropriate to carry out the purposes and intent of the Plan.  Any such revocation, withdrawal, alteration, amendment, modification, or supplement contemplated by this paragraph shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders.  Additionally, any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI of the Plan.

B.  *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof made in accordance with Article XI of the Plan are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.  *Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims, Interests or Causes of Action; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity, including with respect to substantive consolidation and similar arguments.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

34

2.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.   resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.   enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

6.   issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

7.   determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

8.   enter an order or Final Decree concluding or closing the Chapter 11 Cases;

9.   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

10.  determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

11.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

12.  hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII of the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

13.  enforce all orders previously entered by the Bankruptcy Court; and

14.  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Subject to Article X.B of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, as of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests, as applicable, have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases,

discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents, which agreements and other documents shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting Senior Lenders, as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) on the Effective Date, and following the Effective Date, the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Disallowed Claims.*

No distribution shall be made under this Plan on account of or in relation to Disallowed Claims.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors, the Administrative Agent, or the Steering Committee to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the Debtors, to:

    SH 130 Concession Company, LLC
    10800 N US 183 Highway NB, Buda, TX 78610
    Attn: Alfonso Orol, Steven J. Thoreson, and Paul Harris
    Email:   aorol@sh130cc.com, sthoreson@sh130cc.com, and pharris@SH130cc.com

36

with copies to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Attn: David M. Feldman, Matthew K. Kelsey, and Alan Moskowitz
Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com, and
AMoskowitz@gibsondunn.com

2.    if to the Administrative Agent, to:

BNP Paribas
787 Seventh Avenue
New York, NY 10019
Attn: Barbara Eppolito
Email: Barbara.eppolito@us.bnpparibas.com

with copies to:

Munsch Hardt Kopf & Harr, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201-6659
Attn: E. Lee Morris and Kevin M. Lippman
Email: lmorris@munsch.com and klippman@munsch.com

and:

Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, New York 10005
Facsimile: (212) 530-5219
Attn.: Gerard Uzzi and Mary Doheny
Email:  guzzi@milbank.com and mdoheny@milbank.com

3.    if to TIFIA, to:

Build America Bureau Credit Office
United States Department of Transportation
Room W12-447
1200 New Jersey Avenue, SE
Washington, DC  20590
Attn:  Duane Callender
Email:  BureauOversight@dot.gov

with copies to:

U.S. Department of Justice
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Attn: Rodney A. Morris
Email: Rodney.Morris2@usdoj.gov

and:

Shearman & Sterling LLP
599 Lexington Ave # 16
New York, NY 10022
Attn: Douglas P. Bartner and Cynthia Urda Kassis
Email: dbartner@shearman.com and curdakassis@shearman.com

After the Effective Date, the Reorganized Debtors shall have authority to send a notice to Entities providing that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.     *Entire Agreement.*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Plan Supplement.

J.     *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://cases.primeclerk.com/sh130/ or the Bankruptcy Court's website at http://www.txwb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.     *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

L.     *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith

and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of a conflict between the terms of the Plan, Disclosure Statement, Plan Supplement and, in each case, all documents, attachments, and exhibits thereto, on the one hand, and the terms of the Confirmation Order, on the other hand, the terms of the Confirmation Order shall control.

Dated:  August 12, 2016

Respectfully submitted,

**SH 130 CONCESSION COMPANY, LLC**

By: _/s/ Alfonso Orol_
Name:  Alfonso Orol
Title:  Authorized Signatory

**ZACHRY TOLL ROAD – 56 LP**

By: _/s/ Timothy A. Watt_
Name:  Timothy A. Watt
Title:  Authorized Signatory

**CINTRA TX 56 LLC**

By: _/s/ Antonio Resines_
Name:  Antonio Resines
Title:  Authorized Signatory

Prepared by:

David M. Feldman
Matthew K. Kelsey
Alan Moskowitz
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Patricia B. Tomasco
Jennifer F. Wertz
**JACKSON WALKER L.L.P.**
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX

_Counsel to the Debtors and_
_Debtors in Possession_

**<u>Exhibit 1</u>**

**Governance Term Sheet**

## SH 130 CONCESSION COMPANY, LLC
### TERM SHEET FOR POST-RESTRUCTURING EQUITY AND GOVERNANCE

This term sheet (this "Governance Term Sheet") sets forth the principal terms of (a) the common equity interests (the "New Equity Interests") to be issued by the Company (as defined below) in the Restructuring (as defined below) of SH 130 Concession Company, LLC ("SH130"), and (b) the post-Restructuring governance of the Company.  As used herein, "Restructuring" means the financial restructuring of SH130 pursuant to the Chapter 11 Plan of Reorganization of SH130 (the "Plan") described in the Disclosure Statement to which this Governance Term Sheet is attached (the "Disclosure Statement").  This Governance Term Sheet does not constitute (nor shall it be construed as) an offer to sell or buy, nor the solicitation of an offer to sell or buy, any securities of the Company or of SH130 or any of its subsidiaries, it being understood that any such offer or solicitation will only be made in compliance with applicable provisions of securities, bankruptcy and/or other applicable laws.  The transactions described herein will be subject to the completion of definitive documents incorporating the terms set forth herein and the closing of any transaction shall be subject to the terms and conditions set forth in such definitive documents. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

| | |
|---|---|
| **The Company** | The New Equity Interests will be issued by a newly-formed Delaware limited liability company (the "Company") that upon consummation of the Plan (the "Effective Date"), will be the sole owner of 100% of the equity interests in reorganized SH 130.  The Company will [elect to be treated as a corporation] / [be treated as a partnership][1] for U.S. federal, state and local income tax purposes. |
| **Operating Agreement; Units** | The Company will be governed, from and after the Effective Date, by a limited liability company agreement to be entered into in the form to be filed with the Plan Supplement (as amended, the "Operating Agreement").  Each Person that receives a distribution of New Equity Interests under the Plan will be required, as a condition to receiving such distribution, to become a party to the Operating Agreement by executing a counterpart signature page thereto. The New Equity Interests will be issued in the form of common membership interest units in the Company ("Units"). The Operating Agreement will provide for only one class of Units at the Effective Date.  It shall be a condition precedent to the effectiveness of any issuance or Transfer (to be defined in the Operating Agreement) of Units that the recipient thereof execute and deliver a joinder, in the form attached to the Operating Agreement (a "Joinder"), pursuant to which the recipient agrees to become a member of the Company (a "Member") and a party to the Operating Agreement.  The New Equity Interests issued to any particular Person under the Plan may, if requested by such Person, be issued subject to percentage ownership and voting restrictions and restrictions on certain business arrangements with the Company, to the extent necessary for |

---

[1] Note to Draft:  To be revised accordingly, to reflect whether the Company will be taxed as a corporation or treated as a partnership / disregarded entity for tax purposes.

compliance with regulatory requirements applicable to such Person.

**Board of Directors**

Board Composition: The Company shall be managed by a Board of Directors (the "Board") consisting of three (3) directors (collectively, the "Directors"). The names of the three (3) initial Directors, to be seated as of the Effective Date, shall be set forth in the Plan Supplement. The initial term of each of the initial Directors shall expire on the first anniversary of the Effective Date, and thereafter all Directors shall be subject to election each year and shall be elected for a term expiring one year after the date of his or her election. Each Director shall hold office until his or her successor is duly elected and qualified or until the Director's earlier death, resignation, disqualification or removal.

Vacancies; Removal: Any Director may be removed at any time, with or without cause, by any Member or group of Members holding, in the aggregate, a majority of the total number of Units then outstanding. Board vacancies may be filled by the affirmative vote (whether by written consent or at a meeting of the Members called for such purpose) of Members holding a majority of the total number of Units then outstanding.

Chairman: The initial Chairman of the Board shall be selected at the initial Board meeting by a majority vote of the Directors.

Meetings: The Board shall meet no less frequently than once per calendar quarter. Board meetings may be called by the Chairman of the Board, the Chief Executive Officer of the Company, or by any two (2) Directors with the lesser of one Business Day or forty-eight (48) hours' prior notice in writing or by email.

Board Action /Quorum: Board action shall require the affirmative vote of a majority of the Directors present at a duly called meeting at which a quorum is present, or the written consent of all of the Directors. A quorum shall consist of a majority of the total Directors then in office.

**Member Consent Rights**

The Company shall not, and shall not permit any of its subsidiaries to, take any of the following actions without the prior written consent of Members holding at least 66-2/3% of the total number of Units then outstanding:

- Any dissolution, winding-up or liquidation of the Company or any of its subsidiaries;

- Removing, replacing or filling a vacancy with respect to the operator of the toll road project owned by SH130;

- Any election to terminate the Facility Concession Agreement, dated as of March 22, 2007, by and between the Texas Department of Transportation and SH130 (the "Concession Agreement") in

2

accordance with its terms;

- Any material amendment, modification or waiver of any of the terms of the Concession Agreement;
- Any change in the tax status of the Company;
- Any material amendments to the Operating Agreement; and
- Approval of any affiliate transactions.

The Company shall not, and shall not permit any of its subsidiaries to, take any of the following actions without the prior written consent of Members holding at least a majority of the total number of Units then outstanding:

- Any sale by the Company of its membership interests in SH130 or any authorization to SH130 to sell all or substantially all of its assets in connection with a Sale of the Company (as defined below);
- Any issuance of preferred interests or other securities other than Units;
- Any incurrence of indebtedness in excess of an amount to be specified; and
- Any authorization to SH130 to engage in any business other than as currently conducted and activities reasonably related thereto.

|  |  |
|---|---|
| **Affiliate Transactions** | The entry by the Company or any of its subsidiaries into, or material modification of, any agreement or transaction with any Member or any affiliate of any Member, or any portfolio company of any Member or affiliate thereof, shall require the written consent of Members holding 66-2/3% of the total number of Units then outstanding held by all Members other than such interested Member and its affiliates. |
| **Pre-emptive Rights** | If the Company or any of its subsidiaries proposes to issue Units or other equity interests or securities convertible into or exercisable or exchangeable therefor, the Company shall (or shall cause such subsidiary to) first offer to each Member the right to purchase, for cash, at a price equal to the price at which the Company (or such subsidiary) proposes to issue such Units or other interests or securities, such Member's pro rata portion based on its respective ownership of the Units outstanding immediately prior to such issuance (or, as applicable, its indirect ownership in such subsidiary) of such Units or other securities, subject to customary exceptions for Unit dividends, issuances under employee incentive plans, and issuances in connection with acquisition transactions. |
| **Transfers of Units** | The ability of any Member to directly or indirectly Transfer (to be defined in the Operating Agreement) all or any portion of its Units shall be subject to the conditions and restrictions set forth below; provided, however, that a bona-fide sale, transfer, assignment, exchange, |

conveyance or other disposition of equity interests in any entity that directly or indirectly owns Units shall not constitute a Transfer of such Units (and accordingly shall not be subject to the restrictions set forth below) if the aggregate number of Units directly or indirectly owned by such entity represents 25% or less of such entity's total assets:

- The transferee shall have executed a Joinder.

- All Transfers shall be made in compliance with all applicable federal and state securities laws.

- All Transfers shall, to the extent applicable, be subject to the Right of First Offer and Tag-Along provisions described below.

- No Transfer of Units will be permitted if, as a result of such Transfer, any class of equity securities of the Company would be held of record by a number of holders that exceeds the applicable threshold for registration under the Securities Exchange Act of 1934, as amended (the "Exchange Act") or if the Board otherwise determines that such Transfer could result in the Company's being required to file reports under the Exchange Act.

- In the event that the Company does not elect to be treated as a corporation for tax purposes, all Transfers may be subject to customary restrictions to avoid causing the Company to (i) be a "publicly traded partnership" within the meaning of Section 7704(d) of the Internal Revenue Code of 1986, as amended (the "Code"), (ii) lose its status as a partnership for federal or state income tax purposes, or (iii) be terminated pursuant to Section 708 of the Code.

The foregoing requirements shall not apply to any Transfer of Units by any Member, together with a proportionate amount of the New PIK Notes held by such Member, (a) pursuant to any Drag-Along Sale, or (b) pursuant to the exercise of tag-along rights with respect to any Tag-Along Sale, and shall be subject to customary exceptions for Transfers to affiliates and other permitted transferees.

All New PIK Notes distributed to any Person under the Plan (including any additional New PIK Notes issued to reflect the accrual of interest thereon) shall be deemed to be permanently "stapled" to the Units distributed to such Person under the Plan (including in the case of any Drag-Along Sale or Tag-Along Sale), such that (a) no such Units may be Transferred to any Person unless a proportionate amount of such New PIK Notes are included in such Transfer and (b) no such New PIK Notes may be Transferred to any Person unless a proportionate number of such Units are included in such Transfer. As used herein, "Stapled PIK Notes" shall mean, with respect to any Unit(s), the amount of New PIK Notes that are deemed stapled to such Unit(s) pursuant to the immediately preceding sentence.

Any purported transfer of Units or New PIK Notes that does not comply with the foregoing requirements shall be void *ab initio* and shall not be

given any force or effect.

**Right of First Offer**   In the event that any Member proposes to Transfer all or any of its Units (the "Offered Units"), and the Stapled PIK Notes corresponding to such Units, in one or more transactions pursuant to the Operating Agreement's right of first offer provisions, then such Member (a "ROFO Seller") shall deliver to each of the other Members holding at least 5.0% of the total number of Units then outstanding (each, a "ROFO Offeree") written notice thereof, which notice (an "Offer Notice") shall specify the number of Offered Units, the price per Offered Unit, and any other material terms of such Transfer.

- Each ROFO Offeree may elect to purchase, by written notice given to the ROFO Seller at any time during the 10 Business Days following its receipt of the Offer Notice (the "Offer Period"), its *pro rata* share (based on its respective ownership of the Units held by all ROFO Offerees as of the date of the Offer Notice) of the Offered Units at the price and on the terms specified in the Offer Notice.

- Any Offered Units that ROFO Offerees do not elect to purchase will be re-offered *pro rata* to each ROFO Offeree who elected to purchase Offered Units.

- Any remaining Offered Units may be Transferred by the ROFO Seller, at any time during the 75 days following expiration of the Offer Period, to any one or more parties (each a "ROFO Transferee") on terms that in each case are no more favorable, in the aggregate, to the applicable ROFO Transferee than the terms specified in the Offer Notice (including a cash purchase price that, net of commissions or similar expenses, is no lower than the price specified therein); provided, however, that with respect to any such Transfer that constitutes a Tag-Along Sale, the consummation of such Transfer shall be deemed timely notwithstanding that it occurs after such 75-day period, if (a) the Tag-Along Notice for such Transfer is given within such 75-day period and (b) within 30 days after such notice is given, the Transfer is consummated in accordance with the Operating Agreement's tag-along provisions.

**Tag-along Rights**   In the event that any one or more Members proposes to Transfer to any unaffiliated Person or "group" of unaffiliated Persons (the "Tag-Along Buyer") Units that constitute more than 30% of the total number of Units then outstanding and the Stapled PIK Notes corresponding to such Units (a "Tag-Along Sale"), such Member (the "Selling Member") shall provide notice of the Tag-Along Sale to each of the other Members (the "Tag-Along Offerees") no later than 30 days prior to the proposed closing of such Tag-Along Sale (the "Tag Along Notice"). Each Tag-Along Offeree shall have "tag-along" rights to participate, on a *pro rata* basis (based on its respective ownership of the Units held by all Tag-Along Offerees as of the date of the Tag-Along Notice), in the Tag-

Along Sale, on the same terms, and subject to the same conditions as the Selling Member, with a corresponding reduction (except to the extent the Tag-Along Buyer agrees to purchase additional Units and the Stapled PIK Notes corresponding to such Units) in the number of Units and Stapled PIK Notes being sold by the Tag-Along Seller to reflect the number of Units (and the Stapled PIK Notes corresponding to such Units) that Tag-Along Offerees elect to sell in the Tag-Along Sale. It shall be a condition precedent to the effectiveness of any Tag-Along Sale that the Tag-Along Buyer concurrently purchase, pursuant to the terms hereof, all of the Units (and the Stapled PIK Notes corresponding to such Units) with respect to which Tag-Along Offerees timely elect to exercise tag-along rights in connection with such Tag-Along Sale.

**Drag-along Rights**  In the event that any one or more Members holding, in the aggregate, a majority of the total number of Units then outstanding proposes a Sale of the Company to one or more third parties (collectively, the "<u>Drag-Along Buyer</u>"), then such Member(s) (collectively, the "<u>Drag-Along Seller</u>") shall have the right to require all of the other Members to participate in such transaction (including, if applicable, by Transferring all of their Units and the Stapled PIK Notes corresponding to such Units to the Drag-Along Buyer), on the same terms, and subject to the same conditions as the Drag-Along Seller. In connection with any such Sale of the Company, each Member shall, if applicable, (i) vote in favor of the transaction pursuant to which the Transfer is effected, (ii) not exercise any appraisal or similar rights with respect to such transaction (iii) provide customary representations and warranties to the Drag-Along Buyer regarding its legal status and authority, and its ownership of the Units and New PIK Notes being transferred, and, to the extent permitted by applicable law, customary (several but not joint) indemnities regarding the same, (iv) to the extent permitted by applicable law, participate *pro rata* in any indemnification of the Drag-Along Buyer with respect to matters other than the representations and warranties described in clause (iii), <u>provided</u>, that each Member's liability shall be several and not joint and several, and (v) take all other actions reasonably requested in order to consummate such transaction. In no event shall any such Member be required to indemnify or contribute any amount in excess of the net cash amount received by such Member in any such Transfer. A Sale of the Company will not trigger any change of control provision under any applicable financing document.

"<u>Sale of the Company</u>" means a sale of the Company in a sale, merger or reorganization transaction pursuant to which the acquiring party or parties acquire (a) 100% of the outstanding New PIK Notes and (b) (i) 100% of the outstanding equity interests in SH130, (ii) 100% of the outstanding Units (whether by merger, consolidation, recapitalization or reorganization of the Company, or the sale or other Transfer of Units) or (iii) all or substantially all of the Company's or SH130's assets

determined on a consolidated basis.

**Information Rights**  The Company shall provide the following to each Member:

- audited annual consolidated financial statements within [120] days after the end of each fiscal year;

- unaudited quarterly consolidated financial statement within 45 days from the end of each quarter;

- unaudited monthly reports and consolidated financial statements within 30 days after the end of each month; and

- not less than 45 days prior to the beginning of each fiscal year, a budget and a business plan.

The Company shall provide the foregoing information in an electronic data room to which access is given to each Member and any potential transferee that enters into a customary confidentiality agreement in form and substance reasonably acceptable to the Company; provided, that access to the budgets and business plans may be restricted to Members entitled to receive such information and potential transferees of such Members.

In addition, each Member of the Company holding (including any Units held by its affiliates) at least 5% of the total number of Units then outstanding shall have the right, upon reasonable notice and at reasonable times, to meet with the officers of the Company and its subsidiaries and to have access to the officers of the Company and its subsidiaries.

In addition, upon reasonable notice from any Member of the Company holding (including any Units held by its affiliates) at least 5% of the total number of Units then outstanding, the Company shall, and shall cause its officers and employees to, afford such Member and its representatives reasonable access during normal business hours to the corporate, financial and similar records, reports and documents of the Company, including, without limitation, all books and records, minutes of proceedings, internal management documents, reports of operations, reports of adverse developments, copies of any management letters and communications with Members or Managers, and to permit such Member and its representatives to examine such documents and make copies thereof.

The Company's obligation to provide the foregoing information to any particular Member shall be subject to customary exceptions regarding attorney-client privileged information.

**Capital**  No Member shall be required to make any capital contributions to the

7

| | |
|---|---|
| **Contributions** | Company without the prior consent of such Member. |
| **Fiduciary Duties** | The Operating Agreement shall expressly provide that any duties (including fiduciary duties) of any Member in its capacity as such (but not the duties of any officer of the Company, in his or her capacity as such) that would otherwise apply at law or in equity (including the duty of loyalty and the duty of care) shall be waived and eliminated to the fullest extent permitted under Delaware law and any other applicable law; provided, however that the foregoing shall not eliminate (a) the obligation of each Member or any other Person to act in compliance with the express terms of this Agreement or (b) the implied contractual covenant of good faith and fair dealing.  In furtherance of the foregoing (but subject to the foregoing provisos), when any Member (but not the officers of the Company, in their capacity as such) takes any action under the Operating Agreement to give or withhold its consent or approval, such Member shall have no duty (fiduciary or otherwise) to consider the interests of the Company, its subsidiaries or the other Members, and may act exclusively in its own interest. |
| **Indemnity and Exculpation** | The Operating Agreement shall contain customary indemnification, to the extent permitted by applicable law, and exculpation provisions consistent with the foregoing and applicable Delaware law. The Directors shall have the benefit of customary Indemnification Agreements with the Company and the Company shall maintain customary D&O insurance. |
| **Confidentiality** | Customary confidentiality restrictions for a privately held company (including with respect to all information and documents described under "Information Rights" above), with carve-outs (i) allowing Members to share confidential information with any potential transferee that enters into a customary confidentiality agreement in form and substance reasonably acceptable to the Company and (ii) allowing TIFIA to comply with its statutory obligations. |
| **Amendments** | Any material amendment to the Operating Agreement shall require approval of Members holding 66-2/3% of the total number of Units then outstanding; provided, that any amendment that would reasonably be expected to materially adversely affect any Member's interest in the Company in a manner that is disproportionate to the effect on each other Member's interest in the Company shall require the consent of such Member. |

8

**<u>Exhibit 2</u>**

**New Debt Term Sheet**

**Summary Term Sheet**

**SH130 Concession Company, LLC**

**Exit Financing Documentation**

This term sheet (this "<u>Financing Term Sheet</u>") sets forth the principal terms of the debt financing facilities (the "<u>Financing Facilities</u>") to be incurred or issued in the Restructuring (as defined below) of SH 130 Concession Company, LLC ("<u>SH130</u>"). As used herein, "<u>Restructuring</u>" means the financial restructuring of SH130 pursuant to the Chapter 11 Plan of Reorganization of SH130 (the "<u>Plan</u>") described in the Disclosure Statement to which this Financing Term Sheet is attached (the "<u>Disclosure Statement</u>"). This Financing Term Sheet does not constitute (nor shall it be construed as) an offer to extend credit to SH130 or to restructure the SH130 indebtedness or to sell or buy, nor the solicitation of an offer to sell or buy, any securities of SH130 or any of its subsidiaries. The transactions described herein will be subject to the completion of definitive documents incorporating the terms set forth herein and the closing of any transaction shall be subject to the terms and conditions set forth in such definitive documents. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

The Financing Facilities shall comprise (a) a senior secured "first out" Exit Facility, (b) a senior secured Senior Debt Facility, and (c) a PIK Note Facility, as further described herein.

SH-130 Summary Term Sheet:
Exit Facility

| Borrower | SH130 |
|---|---|
| Lenders | To be determined. |
| Administrative Agent | A financial institution to be selected by the Lenders under the Exit Facility. |
| Finance Documents | • Credit Agreement among the Borrower, the Lenders and the Administrative Agent (the "Exit Facility Credit Agreement"). <br><br> • The Common Security Documents (as defined under "Intercreditor and Accounts Agreement" below) <br><br> • All ancillary financing documents referred to in the Exit Facility Credit Agreement. |
| Initial Principal Amount | $[___] million |
| Use of Proceeds / Availability | The proceeds of the Exit Facility will be used solely (a) for any extraordinary capital expenditures, including any amounts necessary for pavement remediation, as necessary or required (the "Extraordinary CapEx") and (b) to satisfy on the Effective Date referred to below all outstanding obligations under any DIP facility incurred by SH130. <br><br> The Exit Facility shall be available to the Borrower in one or more drawings during the period from the effective date of consummation of the Plan (the "Effective Date") until the earlier of completion of the Extraordinary CapEx or [December 31, 2017] (the "Availability Period"). If fully disbursed prior to incurrence of the Extraordinary CapEx, proceeds of the Exit Facility will be held in a designated collateral account. <br><br> During the Availability Period, the Borrower may draw on the proceeds of the Exit Facility no more than once per calendar month, subject to customary conditions for this type of facility, including: <br><br> (a) No default or event of default; <br> (b) Representations and warranties true and correct in all material respects; <br> (c) Except with respect to amounts drawn to repay outstanding obligations under the DIP Facility, evidence of payment of pavement remediation costs then due or anticipated to be due and payable during the next 30 days, together with confirmation |

| | |
|---|---|
| | thereof by the Lenders' technical advisor;<br>(d) Any required TxDOT approvals. |
| Interest Rate | Adjusted LIBOR + [____]%. |
| Maturity Date | [9] years from the Effective Date. |
| Interest Payments | Interest will be payable quarterly in arrears, in [March/June/September/December] of each year (each a "Quarterly Date"), beginning with the [first Quarterly Date] following the Effective Date. |
| Interest Rate Protection | Subject to market conditions, the Company will enter into interest rate hedges in a notional amount equal to the Exit Facility. |
| Mandatory Amortization | [Bullet maturity on the Maturity Date.] |
| Collateral | Subject to market conditions, the Exit Facility shall be secured on a pari passu basis with the Senior Debt Facility, as further described under "Intercreditor and Accounts Agreement" below. |
| Mandatory Prepayments | Mandatory prepayment of the Exit Facility with the proceeds of any claims against or settlement by the Contractor or any other party relating to the pavement remediation required to comply with the Concession Agreement.<br><br>Mandatory prepayments, on a ratable basis with the Senior Debt Facility, with respect to:<br><br>• casualty or condemnation or insurance proceeds; and<br>• any Concession Agreement refund.<br><br>Additional mandatory prepayment from Excess Cash Flow Sweep as provided under the "Waterfall" provisions under "Intercreditor and Accounts Agreement" below. |
| Representations and Warranties | As set forth below in the Summary Terms for the Senior Debt Facility below. |
| Affirmative Covenants | As set forth below in the Summary Terms for the Senior Debt Facility below. |
| Negative Covenants | As set forth below in the Summary Terms for the Senior Debt Facility below. |
| Informational Covenants | As set forth below in the Summary Terms for the Senior Debt Facility below. |

| | |
|---|---|
| Events of Default | As set forth below in the Summary Terms for the Senior Debt Facility below. |
| Required Lenders | Lenders holding more than 50% of total commitments or exposure under the Exit Facility, subject to usual and customary exceptions for unanimous or affected lenders.  The voting rights of defaulting Lenders will be subject to certain limitations to be specified in the Exit Facility Credit Agreement. |
| Assignments and Participations; Funding Protection; Indemnity and Expenses; Taxes; Sanctions: | The Exit Facility Credit Agreement will include provisions relating to assignments and participations, funding protection, indemnity, expense reimbursement and related matters, EU Bail-in and taxes that are usual and customary provisions for financings of this kind.<br><br>The Exit Facility Credit Agreement will contain conditions, representations, and covenants relating to the Borrower's compliance with US and EU sanctions regimes and anti-money laundering and anti-corruption laws. |
| Governing Law and Jurisdiction: | The laws of the State of New York (except for certain Common Security Documents), provided that, with respect to the rights and obligations of TIFIA (if a Lender), the federal laws of the United States, if and to the extent such federal laws are applicable, shall apply and the laws of the State of New York, if and to the extent such federal laws are not applicable, shall apply. The Finance Documents will provide that the Borrower will submit to the jurisdiction and venue of the federal and state courts of the State of New York and shall waive any right to trial by jury. |

SH-130 Summary Term Sheet:
Senior Debt Facility

| Borrower | SH130 |
|---|---|
| Lenders | (a)  Those lenders under that certain Initial Senior Loan Agreement, dated as of March 7, 2008 (as amended, supplemented, or otherwise modified from time to time, the "ISLA"), among SH 130, as borrower, the Senior Lenders party thereto from time to time, BNP Paribas (as successor to Fortis Bank S.A./N.V., UK Branch), as Administrative Agent, Banco Santander, S.A., New York Branch, as Fronting Bank, and the mandated lead arrangers party thereto.<br><br>(b)  The United States Department of Transportation, acting by and through the Federal Highway Administrator ("TIFIA"), as the lender under that certain TIFIA Loan Agreement, dated as of March 7, 2008 (as amended, the "TIFIA Loan Agreement") between SH 130, as borrower, and TIFIA.<br><br>(c) (i) Caixa – Banco de Investimento, S.A., (ii) Espírito Santo, plc, as successor to Banco Espírito Santo, S.A., New York Branch, (iii) Bank of America, N.A., as successor by way of assignment to Bankia S.A., as successor to Caja de Ahorros y Monte de Piedad de Madrid Miami Agency, (iv) BNP Paribas, as successor to Fortis Bank S.A./N.V., and (v) Banco Santander, S.A., which are parties to certain hedging agreements with SH 130. |
| Administrative Agent | [BNP Paribas] |
| Finance Documents | • Credit Agreement among the Borrower, the Lenders and the Administrative Agent (the "Senior Debt Facility Credit Agreement").<br><br>• The Common Security Documents.<br><br>• All ancillary financing documents referred to in the Senior Debt Facility Credit Agreement. |
| Initial Principal Amount | $[____] million |
| Interest Rate | Adjusted LIBOR + [____]% |
| Maturity Date | [9] years from the Effective Date |
| Interest Payment | Interest will be payable quarterly in arrears, on each Quarterly Date, beginning with the [first Quarterly Date] following the Effective Date. |

| | |
|---|---|
| Interest Rate Protection | Subject to market conditions, the Company will enter into interest rate hedges in a notional amount equal to the Senior Debt Facility. |
| Mandatory Amortization | The Senior Debt Facility will amortize in equal quarterly principal installments, on each Quarterly Date, in an amount equal to 0.5% annually, commencing on the [first Quarterly Date] following the Effective Date, with the remaining outstanding principal amount of the Senior Debt Facility payable in full on the Maturity Date. |
| Collateral | Subject to market conditions, the Senior Debt Facility shall be secured on a pari passu basis with the Exit Facility, as further described under "Intercreditor and Accounts Agreement" below. |
| Mandatory Prepayments | After prepayment in full of the Exit Facility, mandatory prepayment with the proceeds of any claims against or settlement by the Contractor or any other party relating to the pavement remediation required to comply with the Concession Agreement. Mandatory prepayments, on a ratable basis with the Exit Facility, with respect to: <ul><li>casualty or condemnation or insurance proceeds;</li><li>any Concession Agreement refund.</li></ul> Additional mandatory prepayment from Excess Cash Flow Sweep as provided under the "Waterfall" provisions under "Intercreditor and Accounts Agreement" below. |
| Representations and Warranties | Similar representations and warranties as contained in the ISLA (together with any other usual and customary representations and warranties for a facility of this type), including, without limitation, with respect to: <ul><li>organization, power and authority of the Borrower;</li><li>due authorization of all Finance Documents;</li><li>compliance with laws and contractual obligations;</li><li>no existence of adverse legal actions or proceedings;</li><li>good and valid title to collateral package;</li><li>no environmental claims against Borrower;</li><li>all required governmental approvals granted;</li><li>validity of all material project contracts (to be defined);</li><li>customary insurance matters;</li><li>no material adverse effect;</li><li>tax status of the Borrower;</li><li>no default or event of default;</li><li>customary ERISA matters;</li><li>continuing validity of Common Security Documents;</li><li>customary Investment Company Act matters;</li><li>accuracy of annual operating budget (updated).</li></ul> |

| | |
|---|---|
| | • accuracy of pavement remediation plan, schedule, budget and required funding; and<br>• funding of required reserve accounts. |
| Affirmative Covenants | Similar affirmative covenants as contained in the ISLA (together with any other usual and customary affirmative covenants for a facility of this type), including, without limitation, with respect to:<br><br>• books and records and inspections of the Borrower;<br>• conduct of business (including maintenance and operation of the Project);<br>• maintenance of and compliance with material project contracts;<br>• compliance with governmental rules and governmental approvals;<br>• continued legal existence and good standing;<br>• customary insurance matters;<br>• customary tax matters;<br>• existence of accounts;<br>• ranking of claims;<br>• validity of security, further assurances;<br>• authorization to auditors;<br>• Compensation Claims;<br>• Technical Advisor Services Agreement;<br>• payment of fees;<br>• Remedial Plan;<br>• funding of reserve accounts; approval and compliance with annual budget;<br>• use of Exit Facility proceeds;<br>• monthly progress reports with respect to pavement remediation; and<br>• completion of pavement remediation in accordance with relevant budget and schedule. |
| Negative Covenants | Similar negative covenants as contained in the ISLA (together with any other usual and customary negative covenants for a facility of this type), including, without limitation, with respect to:<br><br>• liens/negative pledge;<br>• no additional bank accounts;<br>• restrictions on disposals;<br>• conduct of business;<br>• mergers, sales, or corporate reorganizations;<br>• acquisition of assets;<br>• no investments other than Permitted Investments;<br>• termination, amendment, modification of the Concession Agreement or material project contracts;<br>• entering into material project contracts;<br>• restricted payments; |

|  | • affiliate transactions;<br>• tax election;<br>• permitted indebtedness;<br>• release of hazardous materials;<br>• name and financial year;<br>• compensation events; and<br>• Financial Covenants. |
|---|---|
| Informational Covenants | Similar informational covenants as contained in the ISLA (together with any other usual and customary informational covenants for a facility of this type), including, without limitation, with respect to:<br><br>• financial statements;<br>• Borrower's compliance certificate;<br>• auditor's compliance certificate;<br>• notices relating to the Concession Agreement;<br>• default notices;<br>• casualty notices;<br>• material notices;<br>• traffic and operating reports;<br>• monthly progress reports;<br>• permitted pari passu financial indebtedness;<br>• "Know Your Customer" requests;<br>• pavement remediation updates;<br>• toll collection reports; and<br>• budgets. |
| Events of Default | Similar Events of Default as contained in the ISLA (together with any other usual and customary Events of Default for a facility of this type), including, without limitation, with respect to:<br><br>• non-payment of scheduled principal and interest or fees;<br>• failure to comply with covenants;<br>• misrepresentation of representations and warranties;<br>• bankruptcy of the Borrower;<br>• abandonment of the Project;<br>• judgments against the Borrower which are likely to have a material adverse effect;<br>• any security document ceasing to be effective in granting a perfected lien on the collateral,<br>• any financing document ceasing to be in full force and effect prior to satisfaction of obligations thereunder;<br>• the termination of any Material Project Contract;<br>• the occurrence of any ERISA event that is likely to have a material adverse effect;<br>• the occurrence of an event that would entitle TxDOT to terminate |

8

| | |
|---|---|
| | the FCA;<br>• the use of funds in the Project Accounts or Operating Account for purposes other than those expressly permitted in the financing documents;<br>• the occurrence of a casualty, loss or damage event;<br>• failure to maintain any required governmental approval;<br>• the occurrence of any prohibited transfer; and<br>• cross-default provisions as to failure to pay the Exit debt as required. |
| Required Lenders | Lenders holding more than 50% of total commitments or exposure under the Senior Debt Facility, subject to usual and customary exceptions for unanimous or affected lenders. |
| Assignments and Participations; Funding Protection; Indemnity and Expenses; Taxes; Sanctions | The Senior Debt Facility Credit Agreement will include provisions relating to assignments and participations, funding protection, indemnity, expense reimbursement and related matters, EU Bail-in and taxes that are usual and customary provisions for financings of this kind.<br><br>The Senior Debt Facility Credit Agreement will contain conditions, representations, and covenants relating to the Borrower's compliance with US and EU sanctions regimes and anti-money laundering and anti-corruption laws. |
| Governing Law and Jurisdiction | The laws of the State of New York (except for certain Common Security Documents), provided that, with respect to the rights and obligations of TIFIA, the federal laws of the United States, if and to the extent such federal laws are applicable, shall apply and the laws of the State of New York, if and to the extent such federal laws are not applicable, shall apply. The Finance Documents will provide that the Borrower will submit to the jurisdiction and venue of the federal and state courts of the State of New York and shall waive any right to trial by jury. |

SH-130 Summary Term Sheet:
PIK Notes Facility

| Issuer | SH130 |
|---|---|
| Holders | Lenders under the Senior Debt Facility |
| Administrative Agent or Trustee | To be determined. |
| Finance Documents | <ul><li>Note Agreement between the Borrower and the Holders (the "PIK Note Agreement").</li><li>All ancillary financing documents referred to in the PIK Note Agreement.</li></ul> |
| Tranche: | PIK Notes: |
| Initial Principal Amount | $[_____]¹ |
| Interest Rate | Adjusted Libor + 1.75% |
| Maturity Date | Dec '61 |
| Interest Payment | None.  Interest to be paid in kind. |
| Mandatory Amortization | None |
| Collateral | The PIK Notes will be secured on a subordinated basis to the Exit Facility and Senior Debt Facility. |
| Mandatory Prepayments | Mandatory prepayment from Excess Cash Flow Sweep as provided under the "Waterfall" provisions under "Intercreditor and Accounts Agreement" below (after payment in full of the Exit Facility and Senior Debt Facility). |
| Representations and Warranties | Usual and customary. |
| Covenants | Usual and customary. |
| Events of Default | Usual and customary. |
| Required Holders | Holders holding more than 50% of the outstanding PIK Notes, subject to usual and customary exceptions for unanimous or affected Holders. |
| Payment Subordination | The PIK Notes shall be expressly subordinate in right of payment to the Exit Facility and the Senior Debt Facility. |

---

¹ NTD: Amount to equal $1,682,398,000 (the respective total claim amount) minus the aggregate principal amount of Senior Debt.

| | |
|---|---|
| Transferability | The PIK Notes (including additional PIK Notes issued to reflect the accrual of interest thereon) will be permanently stapled to the equity Units referred to and  as described in the Post-Restructuring Equity and Governance Summary Term Sheet.

No PIK Notes may be transferred unless a proportionate number of such Units are included in such transfer.

The PIK Notes shall also be subject to the Right of First Offer, Tag-along Rights and Drag-Along Rights as provided in the Post-Restructuring Equity and Governance Summary Term Sheet. |
| Governing Law and Jurisdiction | The laws of the State of New York (except for certain Common Security Documents), provided that, with respect to the rights and obligations of TIFIA, the federal laws of the United States, if and to the extent such federal laws are applicable, shall apply and the laws of the State of New York, if and to the extent such federal laws are not applicable, shall apply. The Finance Documents will provide that the Borrower will submit to the jurisdiction and venue of the federal and state courts of the State of New York and shall waive any right to trial by jury. |

SH-130 Summary Term Sheet:
Intercreditor and Accounts Agreement

| | |
|---|---|
| Collateral Agent | [Deutsche Bank Trust Company Americas], for the benefit of the Lenders party to the Exit Facility, Senior Debt Facility and, acting in a separate capacity as second lien collateral agent, the PIK Notes. |
| Security Package | To include a first priority pledge (or, in the case of the PIK Notes, second priority) of 100% of the equity interest in SH130 and all property and assets of SH130, including its rights under the Concession Agreement. To be evidenced by customary mortgages, security agreements and pledge agreements (the "Common Security Documents"). <br><br> The Exit Facility, the Senior Debt Facility and any related interest rate hedging agreements shall be secured by the collateral under the Common Security Documents on a pari passu basis, provided that subject to market conditions the Exit Facility [and any termination payments under such interest rate hedging agreements] shall be treated on a first out basis in respect of amounts received from the proceeds of such collateral (other than the Debt Service Reserve Accounts referred to below). <br><br> The PIK Notes shall be secured by the collateral on a subordinated basis to the Exit Facility and Senior Debt Facility. |
| Intercreditor Agreement | The Lenders under the Exit Facility and Senior Debt Facility (or the respective Administrative Agents) and parties to interest rate hedging agreements shall enter into an intercreditor agreement setting forth the relative voting rights and other creditor's rights issues in respect of the Common Security Documents. <br><br> The collateral agent under the Common Security Documents and PIK Note holders (or their representative) shall enter into an intercreditor agreement setting forth the subordination of the liens securing the PIK Notes and other related creditors' rights. |
| Debt Service Reserve Accounts | An amount equal to 6-months' projected debt service on the Exit Facility and Senior Debt Facility, available for such Facilities with drawings thereon to be shared ratably first among the Lenders under the Exit Facility and next among the Lenders under the Senior Debt Facility. |
| Major Maintenance Reserve Account | Funded based on next 36 months of scheduled capital expenditures (excluding capital expenditures related to the pavement remediation to the extent funded by the Exit Facility) based on the following: <br><br> -Next 12 Months (Year 1) – 100% of scheduled capex |

| | |
|---|---|
| | -Additional 12 Months (Year 2) − 66.6% of scheduled capex<br>-Additional 12 months (Year 3) − 33.3% of scheduled capex<br><br>The MMRA may be drawn to pay for Major Maintenance Costs (including any costs related to pavement remediation to the extent the Exit Facility is not sufficient to complete the pavement remediation) to the lesser of (i) Major Maintenance Costs required to be paid for the succeeding 6 month period and (ii) total balance in the MMRA. |
| Waterfall | 1. The Projected TxDOT Revenue Share Amount, Operating Expenses, costs and expenses, Major Maintenance Costs and Required Capital Expenditures (consistent with current clauses FIRST through SEVENTH of the first paragraph applicable to Transfers from the Proceeds Account, with appropriate changes to be agreed);<br><br>2. [Tax distributions to PIK Note/equity holders, ratably, in respect of taxes on operating income;]<br><br>3. Payment in cash, pro rata, of accrued interest and any fees due and payable in respect of the Exit Facility and the Senior Debt and ordinary course payments under any interest rate hedging agreement;<br><br>4. Payment in cash, pro rata, of principal due and payable in respect of the Exit Facility and the Senior Debt and any termination payments under interest rate hedging agreements;<br><br>5. Funding of the Major Maintenance Reserve Account;<br><br>6. Funding of the Debt Service Reserve Account;<br><br>7. [100% Excess Cash Flow sweep, to be applied to the Exit Facility and the Senior Debt, in inverse order of maturity];<br><br>8. 100% Excess Cash Flow sweep (after payment in full of the Exit Facility and the Senior Debt Facility), to be applied pro rata to the PIK Notes;<br><br>9. Restricted Payments. |
| Governing Law | New York |

# EXHIBIT B
# LIQUIDATION ANALYSIS


**[TO COME]**

# EXHIBIT C
# PROJECTIONS


**[TO COME]**

## EXHIBIT D
## _____ 2016 MONTHLY OPERATING REPORT


## [TO COME]

**EXHIBIT E**
**IMPLEMENTATION MEMORANDUM**


**[TO COME]**

# EXHIBIT C1

**(Proposed Priority Lender Claims Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION
OF SH 130 CONCESSION COMPANY, LLC, ET AL., PURSUANT TO
<u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

**CLASS 3: PRIORITY LENDER CLAIMS**

<div style="border:1px solid black">

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE
PLAN IS 5:00 P.M., CENTRAL TIME, ON [_____], 2016**

</div>

This Ballot is submitted to you to solicit your vote to accept or reject the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**"), which is being proposed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") and which is described in the accompanying disclosure statement, dated [_____], 2016 (the "**Disclosure Statement**").[1] On [_____], 2016, the Court entered an order approving the Disclosure Statement and certain procedures and materials for the solicitation of votes to accept or reject the Plan (the "**Disclosure Statement Approval Order**").

The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class of Claims who vote on the Plan; and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court

---

[1] Capitalized terms used in this Ballot that are not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement.

nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**To have your vote counted, you must complete, sign and return this Ballot to SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; so that it is received by the deadline indicated above.** *Ballots received after 5:00 p.m., Central Time, on [_____], 2016 will not be counted. Ballots submitted by e-mail or facsimile transmission will not be accepted. Ballots should not be sent to the Debtors or their attorneys.*

<div align="center">

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

</div>

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.

IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class 3 Vote.** The undersigned, the Holder, as of [_____], 2016, of a Priority Lender Claim in Class 3 of the Plan against the Debtors in the amount set forth below, votes as follows (check only one box):

☐  **ACCEPT** the Plan.          ☐  **REJECT** the Plan.

Creditor: _____

Claim Amount: $_____

**Item 2.   IF YOU VOTED IN ITEM 1 ABOVE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES BY CERTAIN THIRD PARTIES IN ARTICLE VIII.B.2 OF THE PLAN, WHICH PROVIDE AS FOLLOWS:**

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE SENIOR SECURED PARTIES IN THEIR INDIVIDUAL CAPACITIES WILL BE DEEMED TO HAVE RELEASED AND FOREVER WAIVED AND DISCHARGED EACH DEBTOR, EACH REORGANIZED ENTITY, EACH ESTATE, AND EACH RELEASED PARTY FROM AND AGAINST ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN**

**EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE (INCLUDING PRIOR TO THE PETITION DATE) IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN, OR THE DISCLOSURE STATEMENT, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED ENTITIES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR, THE REORGANIZED ENTITIES, AND ANY RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT, OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE AND THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE SENIOR SECURED PARTIES AT ANY TIME ON OR PRIOR TO THE EFFECTIVE DATE AGAINST EACH DEBTOR, EACH ESTATE, OR EACH RELEASED PARTY, EXCEPT THAT THE SENIOR SECURED PARTIES WILL NOT BE DEEMED TO RELEASE, WAIVE, OR DISCHARGE A DEBTOR, A REORGANIZED ENTITY, AN ESTATE, OR A RELEASED PARTY, AS APPLICABLE, FROM AND AGAINST ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A DEBTOR, A REORGANIZED ENTITY, AN ESTATE, OR A RELEASED PARTY, AS APPLICABLE, THAT CONSTITUTES WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE ASSUMED DURING THE CHAPTER 11 CASES OR UNDER THE PLAN.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the Claimant or has the power and authority to vote to accept or reject the Plan on behalf of the Claimant. The undersigned understands that, if this Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and  rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

4

## VOTING INFORMATION AND
## INSTRUCTIONS FOR COMPLETING THE BALLOT

1.    In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.

2.    **IF YOU VOTED IN ITEM 1 TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES AGAINST EACH DEBTOR, EACH REORGANIZED ENTITY, EACH ESTATE, AND EACH RELEASED PARTY, TO THE EXTENT SET FORTH IN ARTICLE VIII.B.2 OF THE PLAN.**

3.    Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to Prime Clerk LLC (the "***Claims and Balloting Agent***") at the following address:

> **SH 130 Ballot Processing**
> **c/o Prime Clerk LLC**
> **830 Third Avenue, 3rd Floor, New York, NY 10022**

**Ballots must be *received* by the Claims and Balloting Agent by 5:00 p.m., Central Time, on [____], 2016 (the "*Voting Deadline*").** If a Ballot is received after the Voting Deadline, it will not be counted. An envelope addressed to the Claims and Balloting Agent is enclosed for your convenience. *Ballots submitted by e-mail or facsimile transmission will not be accepted. Ballots should not be sent to the Debtors or their attorneys.*

4.    You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots will not be counted.

5.    The Ballot does not constitute and shall not be deemed a Proof of Claim or an assertion of a Claim.

6.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot received by the Claims and Balloting Agent before the Voting Deadline (as determined by the Claims and Balloting Agent) will be deemed to reflect your intent either to accept or reject the Plan.

7.    If you wish to withdraw a Ballot after you have delivered it to the Claims and Balloting Agent, you may do so by delivering a notice of written withdrawal to the Claims and Balloting Agent at the address above so that the Claims and Balloting Agent receives the notice prior to the Voting Deadline. In order to be valid, a notice of withdrawal must (i) specify the name of the creditor who submitted the Ballot to be withdrawn, (ii) contain a description of the Claim(s) to which it relates and (iii) be signed by the creditor in the same manner as on the Ballot.

**PLEASE RETURN YOUR BALLOT PROMPTLY.**
**BALLOTS SHOULD *NOT* BE SENT TO THE DEBTORS OR THEIR ATTORNEYS.**

**THE CLAIMS AND BALLOTING AGENT**
**WILL *NOT* ACCEPT BALLOTS BY E-MAIL OR FACSIMILE TRANSMISSION.**

# EXHIBIT C2

**(Proposed Senior Secured Claims Ballot)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION
OF SH 130 CONCESSION COMPANY, LLC, ET AL., PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4:  SENIOR SECURED CLAIMS**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE
> PLAN IS 5:00 P.M., CENTRAL TIME, ON [       ], 2016**

This Ballot is submitted to you to solicit your vote to accept or reject the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "***Plan***"), which is being proposed by the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") and which is described in the accompanying disclosure statement, dated [_____], 2016 (the "***Disclosure Statement***").[1] On [_____], 2016, the Court entered an order approving the Disclosure Statement and certain procedures and materials for the solicitation of votes to accept or reject the Plan (the "***Disclosure Statement Approval Order***").

The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you, whether or not you vote, if the Plan (i) is accepted by the Holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class of Claims who vote on the Plan; and (ii) otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court

---

[1] Capitalized terms used in this Ballot that are not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement.

nonetheless may confirm the Plan if it finds that the Plan (i) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan; and (ii) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**To have your vote counted, you must complete, sign and return this Ballot to SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; so that it is received by the deadline indicated above. *Ballots received after 5:00 p.m., Central Time, on [\_\_\_\_], 2016 will not be counted. Ballots submitted by e-mail or facsimile transmission will not be accepted. Ballots should not be sent to the Debtors or their attorneys.***

<div align="center">

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

</div>

PLEASE COMPLETE ITEM 1. IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE COUNTED AS HAVING BEEN CAST.

IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class 4 Vote.** The undersigned, the Holder, as of [\_\_\_\_], 2016, of a Senior Secured Claim in Class 4 of the Plan against the Debtors in the amount set forth below, votes as follows (check only one box):

☐ **ACCEPT** the Plan.          ☐ **REJECT** the Plan.

Creditor: _____

Claim Amount: $_____

**Item 2. IF YOU VOTED IN ITEM 1 ABOVE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES BY CERTAIN THIRD PARTIES IN ARTICLE VIII.B.2 OF THE PLAN, WHICH PROVIDE AS FOLLOWS:**

**AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE SENIOR SECURED PARTIES IN THEIR INDIVIDUAL CAPACITIES WILL BE DEEMED TO HAVE RELEASED AND FOREVER WAIVED AND DISCHARGED EACH DEBTOR, EACH REORGANIZED ENTITY, EACH ESTATE, AND EACH RELEASED PARTY FROM AND AGAINST ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN**

**EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE (INCLUDING PRIOR TO THE PETITION DATE) IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN, OR THE DISCLOSURE STATEMENT, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE REORGANIZED ENTITIES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR, THE REORGANIZED ENTITIES, AND ANY RELEASED PARTY, INCLUDING, WITHOUT LIMITATION, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, OR ANY OTHER ACT, OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE AND THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE SENIOR SECURED PARTIES AT ANY TIME ON OR PRIOR TO THE EFFECTIVE DATE AGAINST EACH DEBTOR, EACH ESTATE, OR EACH RELEASED PARTY, EXCEPT THAT THE SENIOR SECURED PARTIES WILL NOT BE DEEMED TO RELEASE, WAIVE, OR DISCHARGE A DEBTOR, A REORGANIZED ENTITY, AN ESTATE, OR A RELEASED PARTY, AS APPLICABLE, FROM AND AGAINST ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A DEBTOR, A REORGANIZED ENTITY, AN ESTATE, OR A RELEASED PARTY, AS APPLICABLE, THAT CONSTITUTES WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASE SET FORTH ABOVE DOES NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY UNDER THE PLAN, ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, OR ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE ASSUMED DURING THE CHAPTER 11 CASES OR UNDER THE PLAN.**

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the Claimant or has the power and authority to vote to  accept or reject the Plan on behalf of the Claimant. The undersigned understands that, if this Ballot is otherwise validly executed but is not timely submitted, does not indicate either acceptance or rejection of the Plan or indicates both an acceptance and  rejection of the Plan, this Ballot will not be counted as having been cast.

_____
Name

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

4

## VOTING INFORMATION AND
## INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate acceptance or rejection of the Plan.

2.      **IF YOU VOTED IN ITEM 1 TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES AGAINST EACH DEBTOR, EACH REORGANIZED ENTITY, EACH ESTATE, AND EACH RELEASED PARTY, TO THE EXTENT SET FORTH IN ARTICLE VIII.B.2 OF THE PLAN.**

3.      Complete the Ballot by providing all the information requested and sign, date and return the Ballot by mail, overnight courier or personal delivery to Prime Clerk LLC (the "*Claims and Balloting Agent*") at the following address:

> **SH 130 Ballot Processing**
> **c/o Prime Clerk LLC**
> **830 Third Avenue, 3rd Floor, New York, NY 10022**

**Ballots must be *received* by the Claims and Balloting Agent by 5:00 p.m., Central Time, on [ ], 2016 (the "*Voting Deadline*").** If a Ballot is received after the Voting Deadline, it will not be counted. An envelope addressed to the Claims and Balloting Agent is enclosed for your convenience. *Ballots submitted by e-mail or facsimile transmission will not be accepted. Ballots should not be sent to the Debtors or their attorneys.*

4.      You must vote all of your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, such Ballots will not be counted.

5.      The Ballot does not constitute and shall not be deemed a Proof of Claim or an assertion of a Claim.

6.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the last properly executed Ballot received by the Claims and Balloting Agent before the Voting Deadline (as determined by the Claims and Balloting Agent) will be deemed to reflect your intent either to accept or reject the Plan.

7.      If you wish to withdraw a Ballot after you have delivered it to the Claims and Balloting Agent, you may do so by delivering a notice of written withdrawal to the Claims and Balloting Agent at the address above so that the Claims and Balloting Agent receives the notice prior to the Voting Deadline. In order to be valid, a notice of withdrawal must (i) specify the name of the creditor who submitted the Ballot to be withdrawn, (ii) contain a description of the Claim(s) to which it relates and (iii) be signed by the creditor in the same manner as on the Ballot.

**PLEASE RETURN YOUR BALLOT PROMPTLY.**
**BALLOTS SHOULD *NOT* BE SENT TO THE DEBTORS OR THEIR ATTORNEYS.**

**THE CLAIMS AND BALLOTING AGENT**
**WILL *NOT* ACCEPT BALLOTS BY E-MAIL OR FACSIMILE TRANSMISSION.**

## EXHIBIT D1

**(Notice of Non-Voting Status to Unimpaired Classes)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**NOTICE OF NON-VOTING STATUS
TO HOLDERS OF CLAIMS IN UNIMPAIRED CLASSES[1]**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.    By order dated [      ], 2016 [Docket No. __] (the "***Disclosure Statement Approval Order***"), the United States Bankruptcy Court for the Western District of Texas (the "***Court***") approved the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time the "***Disclosure Statement***") as containing adequate information within the meaning of section 1125 of title 11 of the United States Code (the "***Bankruptcy Code***"). The Disclosure Statement Approval Order authorizes the Debtors to solicit votes to accept or reject the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time, the "***Plan***").[2]

2.    UNDER THE TERMS OF THE PLAN, YOUR CLAIM AGAINST THE DEBTORS IS NOT IMPAIRED AND THEREFORE, PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.

3.    Allowed Claims in Class 1 (Other Priority Claims) will be paid in full in Cash pursuant to Article III.B.1 of the Plan. Allowed Claims in Class 2 (Other Secured Claims) will be

---

[1]    Under the Plan, Unimpaired Classes include Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), and Class 5 (General Unsecured Trade Claims).

[2]    Capitalized terms used that are not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement.

(i) Reinstated; (ii) paid in full (in Cash); (iii) satisfied by delivering the collateral securing such Allowed Claims and paying any interest required to be paid under section 506(b) of the Bankruptcy Code; or (iv) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code pursuant to Article III.B.2 of the Plan. Allowed Claims in Class 5 (General Unsecured Trade Claims) will be (i) paid in full in Cash; (ii) Reinstated; or (iii) accorded such other treatment rendering such Allowed Claims Unimpaired pursuant to Article III.B.5 of the Plan.

4.     If you have any questions about the status of your Claim(s), or to request a copy of the Plan and Disclosure Statement, please contact the Debtors' Claims and Balloting Agent, Prime Clerk LLC, at (855) 252-4068 or by email at sh130ballots@primeclerk.com. Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.primeclerk.com/sh130. Please note that the Claims and Balloting Agent is not permitted to give legal advice.

Dated: _____, 2016

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – FAX

Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jennifer F. Wertz
State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

**<u>EXHIBIT D2</u>**

**(Notice of Non-Voting Status to Holders of Other General Unsecured Claims and Existing Equity Interests)**

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

</div>

| | | |
|---|---|---|
| **IN RE:** | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

<div align="center">

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF**
**OTHER GENERAL UNSECURED CLAIMS IN CLASS 6 AND**
**HOLDERS OF EXISTING EQUITY INTERESTS IN CLASS 7**

</div>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      By order dated [      ], 2016 [Docket No. __] (the "***Disclosure Statement Approval Order***"), the United States Bankruptcy Court for the Western District of Texas (the "***Court***") approved the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time the "***Disclosure Statement***") as containing adequate information within the meaning of section 1125 of title 11 of the United States Code (the "***Bankruptcy Code***"). The Disclosure Statement Approval Order authorizes the Debtors to solicit votes to accept or reject the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time, the "***Plan***").[1]

2.      **PURSUANT TO ARTICLES III.B.6 AND III.B.7 OF THE PLAN, HOLDERS OF OTHER GENERAL UNSECURED CLAIMS AND EXISTING EQUITY INTERESTS IN CLASSES 6 AND 7 SHALL NOT RECEIVE ANY DISTRIBUTIONS OR RETAIN ANY PROPERTY ON ACCOUNT OF SUCH CLAIMS OR INTERESTS AND SUCH CLAIMS OR INTERESTS SHALL BE CANCELLED AND EXTINGUISHED ON THE EFFECTIVE DATE. THEREFORE, PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE REJECTED THE PLAN AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]    Capitalized terms used that are not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement.

3.     If you have any questions about the status of your Other General Unsecured Claim(s) or Existing Equity Interest(s), or to request a copy of the Plan and Disclosure Statement, please contact the Debtors' Claims and Balloting Agent, Prime Clerk, LLC, at (855) 252-4068 or by email at sh130ballots@primeclerk.com. Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.primeclerk.com/sh130. Please note that the Claims and Balloting Agent is not permitted to give legal advice.

Dated: _____, 2016

# EXHIBIT E

## (Proposed Confirmation Hearing Notice)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) DEADLINE FOR**
**VOTING ON THE PLAN, (III) CONFIRMATION HEARING DATE,**
**AND (IV) DEADLINE FOR FILING OBJECTIONS TO THE**
**CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

2.      On [_____], 2016, the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") filed: (i) the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time, the "*Plan*"); and (ii) the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time the "*Disclosure Statement*").

3.      By order dated [___], 2016 [Docket No. __] (the "*Disclosure Statement Approval Order*"),[1] the United States Bankruptcy Court for the Western District of Texas (the "*Court*") approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of title 11 of the United States Code (the "*Bankruptcy Code*"). The Disclosure Statement Approval Order authorizes the Debtors to solicit votes to accept or reject the Plan.

4.      Copies of the Disclosure Statement Approval Order, the Plan and the Disclosure Statement are available upon request to Prime Clerk LLC at the following address, telephone number or email address:  SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; (855) 252-4068; sh130ballots@primeclerk.com or, free of charge, on https://cases.primeclerk.com/sh130.

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Disclosure Statement Approval Order.

5.      A hearing to consider confirmation of the Plan (the "***Confirmation Hearing***") will be held before the Honorable Tony M. Davis, United States Bankruptcy Judge, in Courtroom No. 1, at the United States Bankruptcy Court for the Western District of Texas, Austin Division, Homer J. Thornberry Federal Judiciary Building, 903 San Jacinto Blvd., Austin Texas 78701, on **[_____], 2016, at [____] (prevailing Central Time)**.

6.      Pursuant to the Disclosure Statement Approval Order, the Court approved certain procedures for the solicitation and tabulation of votes to accept or reject the Plan.

(a)      Under the terms of the Plan, Class 3 (Priority Lender Claims) and Class 4 (Senior Secured Claims) are entitled to vote on the Plan.

(b)      If you are the Holder of a Claim against the Debtors as of [_____], 2016 (the Record Date established by the Court in the Disclosure Statement Approval Order) in a Class entitled to vote on the Plan (*i.e.*, Class 3 and Class 4), you have received with this Notice a Solicitation Package. The Solicitation Package includes, among other things, (i) a copy of the Plan; (ii) a copy of the Disclosure Statement; (iii) the appropriate Ballot, Ballot Instructions, and Ballot return envelope; and (iv) a cover letter from the Debtors.

(c)      The deadline to return completed Ballots is **5:00 p.m., Central Time, on [_____], 2016 (the "*Voting Deadline*")**. Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Voting Deadline may disqualify the Ballot.

(d)      Under the terms of the Plan, Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Trade Claims), Class 6 (Other General Unsecured Claims), and Class 7 (Existing Equity Interests) are **not** entitled to vote on the Plan.

(e)      If you are the Holder of a Claim against or Interest in the Debtors in a Class not entitled to vote on the Plan, you have not received a Solicitation Package.

(f)      Objections, if any, to confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim of such party; (iii) state with particularity the basis and nature of such Objection (and, if practicable, a proposed modification to the Plan that would resolve such Objection); (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court and served on the following parties so that they are received no later than **5:00 p.m., Central Time, on [____], 2016**:

(i)      Counsel to the Debtors, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166-0193, Attn: David M. Feldman and Matthew K. Kelsey, Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com;

(ii)      The Office of the United States Trustee, Attn: Deborah A. Bynum and Henry Hobbs, 903 San Jacinto Blvd., Room 230, Austin TX 78701, Email: deborah.a.bynum@usdoj.gov, henry.g.hobbs@usdoj.gov;

(iii)      Counsel to the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP Attn: Gerard Uzzi, Jonathan Green and Mary Doheny 28 Liberty Street, New

2

York, NY 10005-1413, Email: GUzzi@milbank.com, JGreen@milbank.com, MDoheny@milbank.com;

       (iv)    Counsel to the Administrative Agent, Munsch Hardt Kopf & Harr, P.C. Attn: E. Lee Morris and Kevin M. Lippman 500 N. Akard Street, Suite 3800 Dallas, TX 75201-6659 Email: lmorris@munsch.com, klippman@munsch.com;

       (v)    Counsel to the Collateral Agent, Drinker Biddle & Reath LLP Attn: Kristin K. Going and Heath D. Rosenblat, 1500 K Street, NW, Suite 1100 Washington DC 20005-1209 Email: Kristin.Going@dbr.com, Heath.Rosenblat@dbr.com;

       (vi)    The U.S. Department of Justice, Civil Division, Attn: Rodney Morris, P.O. Box 875, Ben Franklin Station, Washington, DC 20044 E-mail: rodney.morris2@usdoj.gov

       (vii)    Counsel to TIFIA Lender, Shearman & Sterling LLP Attn: Douglas P. Bartner, 559 Lexington Avenue, New York, NY 10022-6069 Email: dbartner@shearman.com; and

       (viii)    Counsel to TxDOT, Texas Attorney General's Office Attn: Hal F. Morris & Charlie Shelton Bankruptcy & Collections Division PO Box 12548-MC 008 Austin TX, 7811-2548 Email: hal.morris@texasattorneygeneral.gov, charlie.shelton@texasattorneygeneral.gov.

       7.    The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the adjourned date at the Confirmation Hearing or any continued hearing.

Dated: [ ___ ] , 2016

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – FAX

Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jennifer F. Wertz
State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

## EXHIBIT F

**(Proposed Confirmation Hearing Notice—Publication Version)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| EIN: 20-8490258; 20-8596022; 20-8059105 | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) DEADLINE FOR VOTING ON THE PLAN, (III) CONFIRMATION HEARING DATE, AND (IV) DEADLINE FOR FILING OBJECTIONS TO THE <u>CONFIRMATION OF THE PLAN</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [_____], 2016, the above-captioned debtors and debtors in possession (collectively, the "*Debtors*") filed: (i) the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time, the "*Plan*"); and (ii) the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (including all exhibits thereto and as it may be amended, modified, or supplemented from time to time the "*Disclosure Statement*").

2.      By order dated [___], 2016 [Docket No. __] (the "*Disclosure Statement Approval Order*"),[1] the United States Bankruptcy Court for the Western District of Texas (the "*Court*") approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of title 11 of the United States Code (the "*Bankruptcy Code*"). The Disclosure Statement Approval Order authorizes the Debtors to solicit votes to accept or reject the Plan.

3.      Copies of the Disclosure Statement Approval Order, the Plan and the Disclosure Statement are available upon request to Prime Clerk LLC at the following address, telephone number or email address:  SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; (855) 252-4068; sh130ballots@primeclerk.com or, free of charge, on https://cases.primeclerk.com/sh130.

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Disclosure Statement Approval Order.

4.      A hearing to consider confirmation of the Plan (the "***Confirmation Hearing***") will be held before the Honorable Tony M. Davis, United States Bankruptcy Judge, in Courtroom No. 1, at the United States Bankruptcy Court for the Western District of Texas, Austin Division, Homer J. Thornberry Federal Judiciary Building, 903 San Jacinto Blvd., Austin, Texas 78701, on **[_____], 2016, at [_____], (prevailing Central Time)**.

5.      Pursuant to the Disclosure Statement Approval Order, the Court approved certain procedures for the solicitation and tabulation of votes to accept or reject the Plan.

(a)      Under the terms of the Plan, Class 3 (Priority Lender Claims) and Class 4 (Senior Secured Claims) are entitled to vote on the Plan.

(b)      If you are the Holder of a Claim against the Debtors as of [_____], 2016 (the Record Date established by the Court in the Disclosure Statement Approval Order) in a Class entitled to vote on the Plan (*i.e.*, Class 3 and Class 4), you have received with this Notice a Solicitation Package. The Solicitation Package includes, among other things, (i) a copy of the Plan; (ii) a copy of the Disclosure Statement; (iii) the appropriate Ballot, Ballot Instructions, and Ballot return envelope; and (iv) a cover letter from the Debtors.

(c)      The deadline to return completed Ballots is **5:00 p.m., Central Time, on [_____], 2016 (the "*Voting Deadline*")**. Any failure to follow the voting instructions included with the Ballot or to return a properly completed Ballot so that it is received by the Voting Deadline may disqualify the Ballot.

(d)      Under the terms of the Plan, Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Trade Claims), Class 6 (Other General Unsecured Claims), and Class 7 (Existing Equity Interests) are **not** entitled to vote on the Plan.

(e)      If you are the Holder of a Claim against or Interest in the Debtors in a Class not entitled to vote on the Plan, you have not received a Solicitation Package.

(f)      Objections, if any, to confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim of such party; (iii) state with particularity the basis and nature of such Objection (and, if practicable, a proposed modification to the Plan that would resolve such Objection); (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court and served on the following parties so that they are received no later than **5:00 p.m., Central Time, on [_____], 2016**:

(i)      Counsel to the Debtors, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166-0193, Attn: David M. Feldman and Matthew K. Kelsey, Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com;

(ii)      The Office of the United States Trustee, Attn: Deborah A. Bynum and Henry Hobbs, 903 San Jacinto Blvd., Room 230, Austin TX 78701, Email: deborah.a.bynum@usdoj.gov, henry.g.hobbs@usdoj.gov;

(iii)      Counsel to the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP Attn: Gerard Uzzi, Jonathan Green and Mary Doheny 28 Liberty Street, New

York, NY 10005-1413, Email: GUzzi@milbank.com, JGreen@milbank.com, MDoheny@milbank.com;

        (iv)    Counsel to the Administrative Agent, Munsch Hardt Kopf & Harr, P.C. Attn: E. Lee Morris and Kevin M. Lippman, 500 N. Akard Street, Suite 3800 Dallas, TX 75201-6659 Email: lmorris@munsch.com, klippman@munsch.com;

        (v)    Counsel to the Collateral Agent, Drinker Biddle & Reath LLP Attn: Kristin K. Going and Heath D. Rosenblat, 1500 K Street, NW, Suite 1100 Washington DC 20005-1209 Email: Kristin.Going@dbr.com, Heath.Rosenblat@dbr.com;

        (vi)    The U.S. Department of Justice, Civil Division, Attn: Rodney Morris, P.O. Box 875, Ben Franklin Station, Washington, DC 20044 E-mail: rodney.morris2@usdoj.gov

        (vii)    Counsel to TIFIA Lender, Shearman & Sterling LLP Attn: Douglas P. Bartner, 559 Lexington Avenue, New York, NY 10022-6069 Email: dbartner@shearman.com; and

        (viii)    Counsel to TxDOT, Texas Attorney General's Office Attn: Hal F. Morris & Charlie Shelton Bankruptcy & Collections Division PO Box 12548-MC 008 Austin TX, 7811-2548 Email: hal.morris@texasattorneygeneral.gov, charlie.shelton@texasattorneygeneral.gov.

    6.    The Confirmation Hearing may be continued from time to time without further notice other than the announcement of the continued date at the Confirmation Hearing or any continued hearing.

Dated: [ ____ ] , 2016

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – FAX

Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jennifer F. Wertz
State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

**EXHIBIT G**

**(Proposed Solicitation Package and General Procedures)**

## THE SOLICITATION PACKAGE AND GENERAL NOTICE PROCEDURES[1]

1.　By not later than the Solicitation Deadline, the Debtors will complete mailing Solicitation Packages by regular U.S. mail solely to (i) Holders of Claims in the Classes entitled to vote on the Plan, (ii) the U.S. Trustee, and (iii) any other necessary or appropriate agencies and/or representatives of the United States federal government (the "*Federal Government*") at the locations required by Bankruptcy Rule 2002(j).

2.　The Solicitation Packages will contain copies of, among other things:

(a)　A cover letter describing the contents of the Solicitation Package;[2]

(b)　The Confirmation Hearing Notice;

(c)　The Disclosure Statement Order (excluding the exhibits thereto);

(d)　A copy of the Disclosure Statement together with the exhibits thereto, including the Plan;[3] and

(e)　The appropriate Ballot, Ballot Instructions, and Ballot return envelope.

3.　All Creditors and parties who have filed notices of appearance in the Chapter 11 Cases will receive, by regular U.S. mail or electronic mail, the Confirmation Hearing Notice.

4.　The addresses to be used when mailing the Solicitation Packages will be as follows:

(a)　For persons or entities that have filed Proofs of Claim that are entitled to a Ballot under the Tabulation Rules, (i) at the address provided on the face of the filed Proof of Claim or (ii) in the case of the Proofs of Claim filed by the Administrative Agent on behalf of the First Lien Lenders and the Hedging Banks, at the addresses for the First Lien Lenders and Hedging Banks supplied to the Debtors and Prime Clerk by the Administrative Agent by no later than ten days prior to the deadline for the mailing of Solicitation Packages;

---

[1]　Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the Plan, as applicable.

[2]　In addition to the service procedures outlined above: (a) the Plan, the Disclosure Statement and, once they are filed, all exhibits to both documents will be made available at no charge via the internet at https://cases.primeclerk.com/sh130; (b) the Debtors will provide parties in interest (at no charge) with hard copies of the Plan and/or Disclosure Statement upon request to Prime Clerk LLC at the following address, telephone number or email address: SH 130 Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022; (855) 842-4124; sh130ballots@primeclerk.com; and (c) to the extent not filed earlier, the Debtors will separately file copies of all exhibits to the Plan with the Court prior to the Confirmation Hearing.

[3]　In their discretion, the Debtors reserve the right to provide the Disclosure Statement, the Plan (including exhibits) and any related documents in an electronic format (*e.g.*, flash drive or CD-ROM) if the Debtors determine that this will reduce the administrative costs associated with printing and mailing voluminous paper documents.

(b)     For persons or entities that have not filed Proofs of Claim that are entitled to a Ballot under the Tabulation Rules, at the address on the Debtors' current service list;

(c)     At the address for a Claim transferee set forth in a valid notice of transfer of Claim; and

(d)     For the U.S. Trustee and the Federal Government, the addresses used for notice filed in accordance with Bankruptcy Rule 2002.

5.     Creditors that have filed or purchased duplicate Claims will only be provided with one Solicitation Package to the extent reasonably practicable.

6.     With respect to any Solicitation Packages and Confirmation Hearing Notices that are returned by the United States Postal Service as undeliverable as a result of incomplete or inaccurate addresses, the Debtors may in their discretion, but shall not be required to, attempt to determine a correct address and resend the applicable materials. Any delay in such redelivery, or the Debtors' determination not to attempt any such redelivery, shall <u>not</u> be deemed to be inadequate notice.

## EXHIBIT H

**(Proposed Tabulation Rules)**

# TABULATION RULES[1]

***Allowance and Disallowance of Claims for Voting Purposes***

1.    In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

    A.    In the case of the Proofs of Claim filed by the Administrative Agent on behalf of the First Lien Lenders and the Hedging Banks, each First Lien Lender and Hedging Bank identified on Schedule 1 to Exhibit A of such Proofs of Claim shall be treated as holding a Claim in the aggregate amount identified for such First Lien Lender or Hedging Bank on said schedule;

    B.    the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (ii) set forth in an order of the Court, or (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

    C.    the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Claims Bar Date (or deemed timely filed by the Court under applicable law); and

    D.    the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid and a Proof of Claim has not been filed with respect to such Claim as of the Voting Record Date (in which case, such scheduled claim would be disallowed for voting purposes).

2.    If a Claim is partially unliquidated, contingent, and/or in an unknown amount, such Claim shall be allowed for voting purposes only in the liquidated, non-contingent amount.

3.    If a Claim is wholly unliquidated, contingent, and/or in an unknown amount, such Claim shall be allowed for voting purposes only in the amount of $1.00.

4.    If a Claim is asserted in the amount of $0 in either a timely-filed Proof of Claim or in the Debtors' schedules of assets and liabilities, the Claim will not be allowed for voting purposes.

5.    Claims that are asserted against multiple Debtors will be aggregated and treated as one Claim against the Debtors.

6.    Duplicate Claims will be counted as one Claim against the Debtors that is entitled to a single vote, regardless of whether the Debtors have objected to such duplicate Claims.

---

[1]    Capitalized terms used that are not otherwise defined herein have the meanings given to them in the Motion or the Plan.

7.     To the extent that a Claim has been paid, it shall be disallowed for voting purposes.

### Rules for Counting Votes to Accept or Reject Plan

In tabulating the Ballots, the following procedures shall apply:

1.     Any Ballot received after the Voting Deadline shall not be counted, even if they are postmarked prior to the Voting Deadline, unless the Debtors elect, in their sole discretion, to count such Ballot.

2.     Any Ballot that is illegible or contains insufficient information to permit the identification of the Claimant shall not be counted.

3.     Any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan shall not be counted.

4.     Any Ballot submitted in a form other than the form approved by the Bankruptcy Court shall not be counted.

5.     Any Ballot that does not contain an original signature shall not be counted.

6.     Any Ballot that is submitted by facsimile, email or other electronic means shall not be counted.

7.     Any Ballot that is properly completed, executed and timely returned to Prime Clerk LLC but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and rejection of the Plan, will not be counted.

8.     If a Creditor casts more than one Ballot voting the same Claim before the Voting Deadline, the last properly executed Ballot received before the Voting Deadline will be deemed to reflect the voter's intent and, thus, will supersede any prior Ballots.

9.     If a Creditor simultaneously casts inconsistent duplicate Ballots with respect to the same Claim, such Ballots will not be counted.

10.     Creditors will be required to vote all of their Claims within their Class under the Plan either to accept or reject the Plan and may not split their votes.

11.     For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code and based on the reasonable efforts of Prime Clerk, separate Claims held by a single Creditor in a particular Class will be aggregated as if such Creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims will be treated as a single vote to accept or reject the Plan.

12.     In the event that a Ballot or a group of Ballots within a Class received from a single Creditor partially rejects and partially accepts the Plan, such Ballots shall not be counted.

13.     The Debtors, in their discretion, may waive any defect in any Ballot.

## EXHIBIT I

**(Proposed Cure Notice)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| **SH 130 CONCESSION COMPANY, LLC** | § | **CASE NO. 16-10262** |
| **ZACHRY TOLL ROAD – 56 LP** | § | **CASE NO. 16-10263** |
| **CINTRA TX 56 LLC** | § | **CASE NO. 16-10264** |
| | § | |
| **DEBTORS.** | § | **CHAPTER 11** |
| | § | |
| **EIN: 20-8490258; 20-8596022; 20-8059105** | § | |
| | § | |
| **10800 N US 183 HWY** | § | **JOINTLY ADMINISTERED UNDER** |
| **BUDA, TEXAS 78610-9460** | § | **CASE NO. 16-10262** |

**NOTICE OF (I) POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN, (II) FIXING OF CURE CLAIMS RELATED THERETO, AND (III) DEADLINE TO OBJECT THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [_____], 2016, SH 130 Concession Company, LLC and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "***Debtors***") filed the *Debtors' Motion for an Order (I) Approving the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. __] (the "***Disclosure Statement Motion***") for the Bankruptcy Court to approve the *Disclosure Statement for Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (the "***Disclosure Statement***") with the United States Bankruptcy Court for the Western District of Texas (the "***Bankruptcy Court***"). The Disclosure Statement Motion sought, among other things, entry of an order approving and authorizing: (a) procedures for determining Cure Claims for the Executory Contracts and Unexpired Leases that may be assumed or assumed and assigned pursuant to the *Joint Plan of Reorganization of SH 130 Concession Company, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (the "***Plan***") and (b) the deadline to object to such Cure Claims and such assumptions or assumptions and assignments (the "***Cure Procedures***"). On [ ], 2016 the Bankruptcy Court entered an order [Docket No. __] (the "***Disclosure Statement Approval Order***")[1] approving the Disclosure Statement and the Cure Procedures.

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement Approval Order or the Plan.

2.      Attached hereto as *Exhibit 1* is a list (the "*Cure Schedule*") of Executory Contracts and Unexpired Leases that the Debtors may seek to assume and the Cure Claim amount, if any, necessary to assume each such Executory Contract or Unexpired Lease. The Debtors reserve all rights to delete items from, supplement and modify the Cure Schedule at any time up to 10 business days prior to the Confirmation Hearing, provided that to the extent that the Debtors add any Executory Contracts or Unexpired Lease to the Cure Schedule or modify a Cure Claim amount, the affected party shall receive a separate notice and an opportunity to object to such addition or modification. **Parties receiving this notice should locate their name and their Executory Contracts and/or Unexpired Leases and the related Cure Claims on *Exhibit 1*. Please be advised that the inclusion of any Executory Contract or Unexpired Lease on the Cure Schedule shall not be construed as an admission by the Debtors that such document is an executory contract or unexpired lease as such terms are used in section 365 of the Bankruptcy Code, and all rights of the Debtors and their estates with respect thereto are expressly reserved.**

3.      Objections, if any, **only to the proposed assumption or assumption and assignment of any of the Executory Contracts and/or Unexpired Leases on *Exhibit 1* and/or the Cure Claims listed on *Exhibit 1* for such Executory Contracts and Unexpired Leases** must:  (i) be in writing, (ii) set forth the basis for the objection as well as any Cure Claim that the objector asserts to be due (in all cases with appropriate documentation in support thereof), and (iii) be filed with the Bankruptcy Court and served on the following parties so as to be **actually received** no later than [    ] (prevailing Central Time) on [_____], 2016 (the "*Objection Deadline*")**:

     (i)     Counsel to the Debtors, Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166-0193, Attn: David M. Feldman and Matthew K. Kelsey, Email: DFeldman@gibsondunn.com, MKelsey@gibsondunn.com;

     (ii)    The Office of the United States Trustee, Attn: Deborah A. Bynum and Henry Hobbs, 903 San Jacinto Blvd., Room 230, Austin TX 78701, Email: deborah.a.bynum@usdoj.gov, henry.g.hobbs@usdoj.gov;

     (iii)   Counsel to the Steering Committee, Milbank, Tweed, Hadley & McCloy LLP Attn: Gerard Uzzi, Jonathan Green and Mary Doheny 28 Liberty Street, New York, NY 10005-1413, Email: GUzzi@milbank.com, JGreen@milbank.com, MDoheny@milbank.com;

     (iv)   Counsel to the Administrative Agent, Munsch Hardt Kopf & Harr, P.C. Attn: E. Lee Morris and Kevin M. Lippman 500 N. Akard Street, Suite 3800 Dallas, TX 75201-6659 Email: lmorris@munsch.com, klippman@munsch.com;

     (v)    Counsel to the Collateral Agent, Drinker Biddle & Reath LLP Attn: Kristin K. Going and Heath D. Rosenblat, 1500 K Street, NW, Suite 1100 Washington DC 20005-1209 Email: Kristin.Going@dbr.com, Heath.Rosenblat@dbr.com;

     (vi)   The U.S. Department of Justice, Civil Division, Attn: Rodney Morris, P.O. Box 875, Ben Franklin Station, Washington, DC 20044 E-mail: rodney.morris2@usdoj.gov

(vii) Counsel to TIFIA Lender, Shearman & Sterling LLP Attn: Douglas P. Bartner, 559 Lexington Avenue, New York, NY 10022-6069 Email: dbartner@shearman.com; and

(viii) Counsel to TxDOT, Texas Attorney General's Office Attn: Hal F. Morris & Charlie Shelton Bankruptcy & Collections Division PO Box 12548-MC 008 Austin TX, 7811-2548 Email: hal.morris@texasattorneygeneral.gov, charlie.shelton@texasattorneygeneral.gov.

If any objections are timely received and not otherwise resolved, such objections will be heard at the Confirmation Hearing scheduled for **[_____], 2016 at [   ] (prevailing Central Time)** at the United States Bankruptcy Court for the Western District of Texas, Austin Division, before the Honorable Tony M. Davis, or at a later hearing as determined by the Debtors.

4.     To the extent that any person or entity does not timely object as set forth above, such person or entity shall be (i) forever barred from objecting to the assumption or assumption and assignment of any of the Executory Contracts or Unexpired Leases listed on the Cure Schedule, including, without limitation, asserting any additional cure payments or requesting additional adequate assurance of future performance; (ii) deemed to have consented to the applicable Cure Claim amount, if any, and to the assumption and assignment of the applicable Assumed Contract; (iii) bound to such corresponding Cure Claim, if any; (iv) deemed to have agreed that the Debtors have provided adequate assurance of future performance within the meaning of section 365(b)(1)(C) of the Bankruptcy Code; (v) deemed to have agreed that all defaults under the applicable Executory Contract or Unexpired Lease arising or continuing prior to the effective date of the assumption have been cured as a result or precondition of the assumption, such that the Debtors, the Debtors' estates, the Reorganized Debtors, and the Reorganized Entities shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the applicable Executory Contract or Unexpired Lease shall remain in full force and effect for the benefit of the Reorganized Debtors, the Reorganized Entities and such entity in accordance with its terms; and (vi) deemed to have waived any right to terminate the applicable Executory Contracts or Unexpired Leases or designate an early termination date under the applicable Executory Contracts or Unexpired Leases as a result of any default that occurred and/or was continuing prior to the assumption date.

5.     Any request for adequate assurance information regarding the Reorganized Debtors or Reorganized Entities (a "***Request for Adequate Assurance***") must include an email address, postal address and/or facsimile number to which a response to such request will be sent. Upon receiving a Request for Adequate Assurance, the Debtors, shall promptly provide such party with any non-confidential information reasonably related to adequate assurance by email, facsimile or overnight delivery.

6.     The inclusion of an Executory Contract or Unexpired Lease on the Cure Schedule is without prejudice to the Debtors' right to modify their election to assume or to reject such Executory Contract or Unexpired Lease, or to modify the related Cure Claim, in accordance with the Disclosure Statement Approval Order (including, without limitation, Paragraph [   ] thereof) or the Plan, and inclusion of an Executory Contract or Unexpired Lease herein is not a final determination that such Executory Contract or Unexpired Lease will, in fact, be assumed.

7.     Assumption, rejection, or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assumed and assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

8.     If you agree with assumption of your Executory Contract and/or Unexpired Lease and the Cure Claim indicated on *Exhibit 1* attached hereto, you need <u>not</u> take any further action.

Dated: [_____], 2016

David M. Feldman (admitted *pro hac vice*)
Matthew K. Kelsey (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
Email address: DFeldman@gibsondunn.com
Email address: MKelsey@gibsondunn.com

JACKSON WALKER L.L.P.
100 Congress Ave., Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 - FAX

By: /s/_____
Patricia B. Tomasco
State Bar No. 01797600
(512) 236-2076 – Direct Phone
(512) 691-4438 – Direct Fax
Email address: ptomasco@jw.com

Jennifer F. Wertz
State Bar No. 24072822
(512) 236-2247 – Direct Phone
(512) 391-2147 – Direct Fax
Email address: jwertz@jw.com

**COUNSEL FOR THE DEBTORS**

**Exhibit 1**

**Cure Schedule**